IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BETTY HARKEY, individually and on behalf of herself and all others similarly situated, | Case No. |
| Plaintiffs, | (JURY TRIAL DEMANDED) |
| v. | |
| GENERAL ELECTRIC COMPANY, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Betty Harkey on behalf of herself and all others similarly situated, brings this Class Action Complaint against defendant General Electric Company ("GE") and in support alleges as follows:

### NATURE OF THIS ACTION

1.  GE is one of the largest technology, media, and financial services companies in the world.  Its Industrial Division produces and sells a variety of technological products, including consumer appliances.

2.  GE participated in the marketing, sale, manufacturing and/or design of microwave ovens branded with the "General Electric" name.  GE-branded microwave oven model numbers JVM1540, JEB1095, ZMC1090, and ZMC1095 (the "Models") contain defects that make them unreasonably dangerous and unsuitable for their intended use.  More specifically, the Models are defectively designed and/or manufactured such that the glass on the doors to these microwave ovens will shatter.  GE has known, or reasonably should have known, that the Models were defective since at least September 2002.

3. Plaintiff alleges that GE has undertaken a deliberate and willful pattern of conduct (including taking active measures) aimed at hiding the defects in the Models from its consumers, including the Plaintiff.

## THE PARTIES

4. Plaintiff Betty Harkey is a citizen of the United States of America residing at 2044 Ferncliff Road, Charlotte, North Carolina 28211.

5. Defendant General Electric Company is a New York corporation with its principal place of business at 3135 Easton Turnpike, Fairfield, Connecticut 06828.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this civil action under 28 U.S.C. § 1332(d) because this action is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, the amount in controversy exceeds $5,000,000 and there are members of the Class who are citizens of a different state than the Defendant GE.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because GE is a resident of the State in which this District is located.

## CLASS ACTION ALLEGATIONS

8. Plaintiff brings this action on behalf of herself and the members of a class comprising of:

> All persons residing in the United States who purchased a GE-branded microwave oven model number JVM1540, JEB1095, ZMC1090, and ZMC1095 since September 2002 for primarily personal, family or household purposes, and not for resale (the "Nationwide Class").

9. In the alternative, Plaintiff brings this action on behalf of herself and members of a subclass comprised of:

>All persons residing in the State of North Carolina who purchased a GE-branded microwave oven model number JVM1540, JEB1095, ZMC1090, and ZMC1095 since September 2002 for primarily personal, family or household purposes, and not for resale (the "North Carolina Subclass").

10. Members of the class and subclass are so numerous that joinder is impracticable. While the exact number of class and subclass members is unknown to Plaintiff, it is believed that the class and subclass are comprised of thousands of members geographically disbursed throughout the United States and the State of North Carolina. The class and subclass are readily identifiable from information and records in the possession of GE and third parties.

11. Common questions of law and fact exist as to all members of the class and subclass. These questions predominate over questions that may affect only individual class and subclass members because GE has acted on grounds generally applicable to the class and subclass. Such common legal or factual questions include:

  (a) Whether the Models are defective;

  (b) Whether the Models are defectively designed and/or manufactured;

  (c) Whether the defects in the Models resulted from GE's negligence;

  (d) Whether GE knew or reasonably should have known about the defects prior to distributing the Models to Plaintiff and the class and subclass;

  (e) Whether GE concealed from and/or failed to disclose to Plaintiff and the class and subclass the problems with the Models;

  (f) Whether GE knew or reasonably should have known about the defects after distributing the Models to Plaintiff and the class and subclass;

  (g) Whether GE breached express warranties relating to the Models;

  (h) Whether GE breached the implied warranty of merchantability relating to the Models;

  (i) Whether GE was unjustly enriched by receiving moneys in exchange for Models that were defective;

(j)  Whether GE should be ordered to disgorge all or part of the ill-gotten profits it received from the sale of the defective Models;

(k)  Whether Plaintiff and the class and subclass are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

(l)  Whether GE should be enjoined from selling and marketing its defective Models; and

(m)  Whether GE engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing defective Models.

12. Plaintiff's claims are typical of the members of the class and subclass as all members of the class and subclass are similarly affected by GE's actionable conduct. Plaintiff and all members of the class and subclass purchased the Models with defects that make the Models inherently dangerous. In addition, GE's conduct that gave rise to the claims of Plaintiff and members of the class and subclass (*i.e.* delivering a defective microwave oven, concealing the defect and breaching warranties respecting the microwave oven) is the same for all members of the class and subclass.

13. Plaintiff will fairly and adequately protect the interests of the class and subclass because she has no interests antagonistic to, or in conflict with, the class and subclass that Plaintiff seeks to represent. Furthermore, Plaintiff has retained counsel experienced and competent in the prosecution of complex class action litigation.

14. Class action treatment is a superior method for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or

entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

15. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

16. GE has acted or refused to act on grounds generally applicable to the class and subclass, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class and subclass as a whole.

## FACTUAL BACKGROUND

17. The Models are branded with the "GE" logo and are sold as GE model microwave ovens with the following model numbers: JVM1540, JEB1095, ZMC1090, and ZMC1095.

18. Each of the Models has an outer door with a glass surface.

19. Each of the Models has a door assembly that contains a hinge spring.

20. Each of the Models contains common design and/or manufacturing defects that cause glass on their doors to shatter. More specifically, the cause of the glass shattering is interference between the inside surface of the glass and the hinge spring inside the door assembly.

21. On or about January 2011, Ms. Harkey purchased a GE-branded microwave oven, model number JVM1540DMWW, for her rental home. Ms. Harkey used her microwave oven as it was intended to be used. However, on or about May 13, 2013, the glass door to Ms. Harkey's microwave oven shattered and shards of glass flew across her entire kitchen and into her laundry room and dining room.

22. Prior to the time of this incident, Ms. Harkey acted in a diligent and reasonable manner as an owner of an appliance. Because GE fraudulently concealed the defects from her, Ms. Harkey did not suspect (and had no reason to suspect) that there was anything wrong with her microwave oven until the glass shattered.

23. Ms. Harkey reported the incident to GE and GE sent a service technician to her rental house to examine her microwave oven. The GE technician determined that Ms. Harkey's door was defective. Ms. Harkey requested that GE provide her with a new microwave oven. GE refused and stated that it would only replace the defective door. Ms. Harkey allowed GE to replace the defective door, but ultimately purchased a new microwave oven because she was afraid the same problem would recur.

24. Ms. Harkey reimbursed her renters for one day of rent because they spent the day cleaning up the shattered glass.

25. GE expressly and impliedly warranted, via user manuals, advertisements, pamphlets, brochures, circulars, samples, and/or models that the Models are fit for the ordinary purpose for which such goods are used.

26. GE expressly warranted in its user manuals that it would replace and repair, free of charge, any part of the Models that failed due to a manufacturing defect within one year from the date of original purchase.

27. The defects in the glass doors rendered the Models unfit for the ordinary purpose for which they are used.

28. As a result of these defects, the Models pose an unreasonable risk of harm to consumers and their property.

29. As a direct, proximate, and foreseeable result of these defects, Plaintiff and

members of the class and subclass suffered damages, including, but not limited to: (i) the difference in value of the Models as warranted and the Models received, (ii) loss of use of the Models, (iii) property damage, and (iv) consequential damages.

30. Had the Models been properly manufactured and/or free from design defects, Plaintiff and the class and subclass would not have suffered the damages complained of herein.

## TOLLING AND ESTOPPEL OF STATUTES OF LIMITATION

31. GE had actual awareness, at least as early as September 2002, that the Models contained defects that caused the door glass to shatter.

32. Although GE was aware of the dangerous defects, it took no steps to warn Plaintiff or the class or subclass of such defects and the dangers the defects would pose.

33. In September 2002, GE received reports from consumers of incidents of shattered door glass associated with GE-branded microwave ovens model numbers JEB1095, ZMC1090, and ZMC1095. GE determined that the root cause of the problem was interference between the inside surface of the glass and the hinge spring inside the door assembly.

34. GE sent out service bulletins to its technicians alerting them of the problem and explaining how to fix it once the door shattered. These service bulletins were only available to service professionals and were not available, or disseminated, to members of the class, subclass, or the public at large. True and correct copies of the service bulletins are attached hereto as Exhibit 1.

35. GE also purportedly changed its manufacturing process to correct the problem on a going-forward basis for newly manufactured GE-branded microwave ovens.

36. GE did not, however, issue a recall, warn consumers, or take any other affirmative steps to correct the problem in the Models already in the field with glass that had not

yet shattered or to alert members of the class about the problem.

37. Despite its knowledge, GE concealed the fact that the Models were defective, even though it had a duty to disclose the defects. GE's concealment was material to Plaintiff and members of the class and subclass's decision to purchase the Models. GE's concealment was knowing, and GE had the intent to misleading Plaintiff and members of the class and subclass into relying upon it. Accordingly, Plaintiff and members of the class and subclass may be presumed to have relied upon GE's concealment of these material facts and suffered injury as a proximate cause of that justifiable reliance.

38. The defects in the design and/or manufacture of the Models were not detectible to Plaintiff and members of the class and subclass.

39. GE actively and intentionally concealed the existence of the defects and failed to inform members of the class and subclass of the existence of the defects. Accordingly, the ignorance of Plaintiff and members of the class and subclass was not attributable to lack of diligence on their part.

40. GE concealed the defects for the purpose of delaying Plaintiff and members of the class and subclass' filing a complaint on their causes of action.

41. As a result of GE's active concealment of the defects and/or failure to inform Plaintiff and members of the class and subclass of the defects, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled. Furthermore, GE is estopped from relying on any statutes of limitations in light of its active concealment of the defective nature of the Models.

**COUNT I**
**(Express Warranty, On Behalf Of The Nationwide Class)**

42. Plaintiff re-alleges and incorporates each and every allegation set forth above as

if fully written herein.

43. Defendant GE is a "seller" within the meaning of Conn. Gen. Stat. § 42a-2-103(1)(c).

44. The Models are "goods" within the meaning of Conn. Gen. Stat. § 42a-2-105(1).

45. Plaintiff and the members of the class are "buyers" within the meaning of Conn. Gen. Stat. § 42a-2-103(1)(a).

46. Defendant GE expressly warranted via its user manuals, advertisements, pamphlets, brochures, circulars, samples, and models that the Models are fit for the ordinary purpose in which such goods are used.

47. GE's express warranties were part of the basis of the bargain between GE and Plaintiff and members of the class.

48. GE breached its express warranty because the Models were not fit for the ordinary purpose in which such goods are used.  Specifically, the Models contained defects that caused their door glass to shatter, rendering the microwave ovens unusable for their ordinary purpose.  GE also breached its express warranty by refusing to repair the Models and/or replace microwave oven parts damaged by the defects for the class as a whole.

49. Plaintiff and members of the class may be presumed to have relied upon the representation and/or warranty that they would be supplied a microwave oven free of defects.

50. Plaintiff and members of the class sustained injuries and damages as a result of the breach.

## COUNT II
**(Implied Warranty Of Merchantability, On Behalf Of The Nationwide Class)**

51. Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

9

52. The Models are "goods" within the meaning of Conn. Gen. Stat. § 42a-2-105(1).

53. Plaintiff and the members of the class are "buyers" within the meaning of Conn. Gen. Stat. § 42a-2-103(1)(a).

54. A warranty that goods shall be merchantable and fit for the ordinary purposes for which such goods are used is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

55. GE is a "merchant" within the meaning of Conn. Gen. Stat. § 42a-2-104(1) with respect to the Models.

56. GE's implied warranty that the Models were merchantable was part of the basis of the bargain between GE and Plaintiff and members of the class.

57. GE breached the implied warranty of merchantability because the Models were not fit for the ordinary purpose in which such goods are used. Specifically, the Models contained defects that caused their door glass to shatter, rendering the Models unusable for their ordinary purpose.

58. Plaintiff and members of the class sustained injuries and damages as a result of the breach.

## COUNT III
**(In The Alternative, Express Warranty, On Behalf Of The North Carolina Subclass)**

59. Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

60. Plaintiff alleges Count III on behalf of the North Carolina Subclass in the alternative to Count I.

61. Defendant GE is a "seller" within the meaning of N.C. Gen. Stat. § 25-2-103(1)(d).

62. The Models are "goods" within the meaning of N.C. Gen. Stat. § 25-2-105.

63. Plaintiff and the members of the class are "buyers" within the meaning of N.C. Gen. Stat. § 25-2-103(1)(a).

64. Defendant GE expressly warranted via its user manuals, advertisements, pamphlets, brochures, circulars, samples, and models that the Models are fit for the ordinary purpose in which such goods are used.

65. GE's express warranties were part of the basis of the bargain between GE and Plaintiff and members of the subclass.

66. GE breached its express warranty because the Models were not fit for the ordinary purpose in which such goods are used. Specifically, the Models contained defects that caused their door glass to shatter, rendering the Models unusable for their ordinary purpose. GE also breached its express warranty by refusing to repair the Models and/or replace microwave oven parts damaged by the defects for the subclass as a whole.

67. Plaintiff and members of the subclass may be presumed to have relied upon the representation and/or warranty that they would be supplied a microwave oven free of defects.

68. Plaintiff and members of the subclass sustained injuries and damages as a result of the breach.

**COUNT IV**
**(In The Alternative, Implied Warranty Of Merchantability,**
**On Behalf Of The North Carolina Subclass)**

69. Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

70. Plaintiff alleges Count IV on behalf of the North Carolina Subclass in the alternative to Count II.

71. The Models are "goods" within the meaning of N.C. Gen. Stat. § 25-2-105.

72. Plaintiff and the members of the subclass are "buyers" within the meaning of N.C. Gen. Stat. § 25-2-103(1)(a).

73. A warranty that goods shall be merchantable and fit for the ordinary purposes for which such goods are used is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

74. GE is a "merchant" within the meaning of N.C. Gen. Stat. § 25-2-104(1) with respect to the Models.

75. GE's implied warranty that the Models were merchantable was part of the basis of the bargain between GE and Plaintiff and members of the subclass.

76. GE breached the implied warranty of merchantability because the Models were not fit for the ordinary purpose in which such goods are used.  Specifically, the Models contained defects that caused their door glass to shatter, rendering the Models unusable for their ordinary purpose.

77. Plaintiff and members of the subclass sustained injuries and damages as a result of the breach.

**COUNT V**
**(Violation of 15 U.S.C. § 2301 *et seq.*:  The Magnuson-Moss Warranty Act, On Behalf Of The Nationwide Class)**

78. Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

79. The Models are "consumer products" within the meaning of 15 U.S.C. § 2301.

80. Plaintiff and members of the class are "consumers" within the meaning of 15 U.S.C. § 2301.

81. GE is a "supplier" of the consumer products to consumers and a "warrantor" within the meaning of 15 U.S.C. § 2301.

82. GE made written and implied warranties regarding the Models to Plaintiff and members of the class within the meaning of 15 U.S.C. § 2301.

83. GE violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* by failing to comply with the written and implied warranties it made to Plaintiff and members of the class.

84. Plaintiff and members of the class sustained injuries and damages as a result of GE's violation of their written and/or implied warranties.

## COUNT VI
### (Unjust Enrichment, On Behalf Of The Nationwide Class)

105. Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

106. Plaintiff and members of the class conferred a benefit upon GE. Namely, Plaintiff and members of the class paid money to GE for the Models.

107. GE, however, retained that benefit under circumstances that make it unjust and inequitable for GE to retain it without paying Plaintiff and members of the class the value thereof. Specifically, GE retained that benefit despite the fact that the Models were defective.

108. GE's failure to pay for the benefits conferred upon it was detrimental to Plaintiff and members of the class.

## COUNT VII
### (In The Alternative, Unjust Enrichment, On Behalf Of The North Carolina Subclass)

109. Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

110. Plaintiff alleges Count VII on behalf of the North Carolina Subclass in the alternative to Count VI.

111. Plaintiff and members of the subclass conferred a benefit upon GE. Namely, Plaintiff and members of the subclass paid money to GE for ownership of the Models.

112. GE retained that benefit under circumstances that make it unjust and inequitable for GE to retain it without paying Plaintiff and members of the subclass the value thereof. Specifically, GE retained that benefit despite the fact that the Models were defective.

113. GE's failure to pay for the benefits conferred upon it was detrimental to Plaintiff and members of the subclass.

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully request that this Court:

A. Certify the class and/or subclass pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Award damages, including compensatory, exemplary, and statutory damages, to Plaintiff and the class and/or subclass in an amount to be determined at trial;

C. Grant restitution to Plaintiff and the class and/or subclass and require GE to disgorge its ill-gotten gains;

D. Permanently enjoin GE from engaging in the wrongful and unlawful conduct alleged herein;

E. Award Plaintiff and the class and/or subclass their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

F. Award Plaintiff and the class and/or subclass pre-judgment and post-judgment

interest at the highest legal rate to the extent provided by law; and

  G.  Award such further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands a jury trial in the instant action.


Dated: December 4, 2013          Respectfully submitted,


                 /s/ Robert A. Izard
                 Robert A. Izard (ct01601)
                 Jeffrey S. Nobel (ct04855)
                 Mark P. Kindall (ct13797)
                 **IZARD NOBEL LLP**
                 29 South Main Street, Suite 305
                 West Hartford, CT  06107
                 (860) 493-6202

                 Hassan A. Zavareei
                 TYCKO & ZAVAREEI, LLP
                 2000 L Street, N.W., Suite 808
                 Washington, D.C.  20036
                 (202) 973-0900
                 (202) 973-0950 *facsimile*
                 hzavareei@tzlegal.com

                 *Attorneys for Plaintiff Betty Harkey*