**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| GLEN GRAYSON and DOREEN MAZZANTI, individually and on behalf of themselves and all others similarly situated, | Case No. 3:13-cv-01799 (WWE) |
| Plaintiffs, | (JURY TRIAL DEMANDED) |
| v. | ORAL ARGUMENT REQUESTED |
| GENERAL ELECTRIC COMPANY, | |
| Defendant. | August 19, 2016 |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**
**AND APPOINTMENT OF CLASS COUNSEL**

**UNREDACTED VERSION FILED UNDER SEAL**
**PURSUANT TO PROTECTIVE ORDER**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........................................................................................ iii

INDEX OF EXHIBITS ........................................................................................ xiii

I. GE's Factual Characterizations are Incorrect and Highly Misleading ............................... 4

II. GE's Legal Arguments Against Class Certification Fail .................................................... 6

A. The Court Should Certify Plaintiffs' Proposed Rule 23(b)(2) Class .......................... 6

1. Certification of a Rule 23(b)(2) Class Would Provide Critical Relief ............... 6

2. Plaintiffs Have Standing to Represent a Rule 23(b)(2) Class ............................ 7

3. Certification of Both a Rule 23(b)(2) and 23(b)(3) Class is Proper .................... 8

B. The Court Should Certify Plaintiffs' Proposed Rule 23(b)(3) Classes...................... 10

1. GE's Rule 23(b)(3) Arguments are Fundamentally Flawed and Ignore the Indisputably Common Issues Here, All of Which Rely on Common Proof and Demonstrate the Superiority of a Class Action ............................... 10

2. The Court Should Certify the Consumer Protection Law Subclass or, in the Alternative, Individual Consumer Protection State Classes for California, Florida, Ohio, and New York ........................................................ 12

i. Reliance Does Not Bar Certification ........................................................ 15

ii. Injury and Causation Do Not Bar Certification ....................................... 18

iii. Scienter Does Not Bar Certification ....................................................... 19

3. The Court Should Certify a Texas Implied Warranty Class ............................ 20

4. GE's Affirmative Defenses Do Not Weigh Against 23(b)(3) Certification...... 22

C. Plaintiffs' Proposed Classes are Readily Ascertainable ........................................... 24

D. Plaintiffs are Adequate Class Representatives ......................................................... 28

1. Plaintiffs Harris and Mequet are Not Outside the Proposed Classes ................ 28

2. Harris is Not Only an Adequate, But an Exemplary Representative ................ 29

3. Plaintiff Mazzanti is Typical of the Class ........................................................ 31

4. GE's Affirmative Defenses are Not a Bar to Class Certification...................... 31

E. Plaintiffs Have Standing ......................................................................................... 33

## TABLE OF AUTHORITIES

**Cases**

*Amchem Products, Inc. v. Windsor*
521 U.S. 591 (1997) ........ 13, 21

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*,
133 S. Ct. 1184 (2013) ........ 11, 19

*Arabian v. Sony Elecs., Inc.*,
No. 05-CV-1741WQHNLS, 2007 WL 627977 (S.D. Cal. Feb. 22, 2007) ........ 26

*Arenson v. Whitehall Convalescent & Nursing Home, Inc.*,
164 F.R.D. 659 (N.D. Ill. 1996) ........ 17

*Attenborough v. Const. and Gen. Bldg. Laborers' Local 79*,
238 F.R.D. 82 (S.D.N.Y. 2006) ........ 22

*Ault v. J.M. Smucker Co.*,
No. 13 Civ. 3409 (PAC), 2015 WL 4692454 (S.D.N.Y. Aug. 6, 2015) ........ 28

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000) ........ 29

*Barden v. Hurd Millwork Conspiracy, Inc.*,
249 F.R.D. 316 (E.D. Wis. 2008) ........ 10

*Baughman v. State Farm Mut. Auto. Ins. Co.*,
727 N.E.2d 1265 (Ohio 2000) ........ 13, 16

*Belfiore v. Procter & Gamble Co.*,
311 F.R.D. 295 (E.D.N.Y 2015.) ........ 27

*Belfiore v. Procter & Gamble Co.*,
94 F. Supp. 3d 440 (E.D.N.Y. 2015) ........ 8

*Biediger v. Quinnipiac Univ.*,
No. 09 Civ. 621, 2010 WL 2017773 (D. Conn. May 20, 2010) ........ 24

*Blumenthal v. Medina Supply Co.*,
743 N.E.2d 923 (Ohio Ct. App. 2000) ........ 18

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559 (1996) ........ 14

*Bodner v. Oreck Direct, LLC*,
No. C 06-4756 MHP, 2007 WL 1223777 (N.D. Cal. Apr. 25, 2007) ........ 31

*Bostick v. St. Jude Med., Inc.*,
No. 03-2636 BV, 2004 WL 3313614 (W.D. Tenn. Aug. 17, 2004) ........ 26

*Bowerman v. Field Asset Servs., Inc.*,
No. 13-CV-00057-WHO, 2015 WL 1321883 (N.D. Cal. Mar. 24, 2015) ........ 28

*Boynton v. Headwaters, Inc.*,
No. 1:02-CV-01111 JPMEGB, 2010 WL 2430779 (W.D. Tenn. June 10, 2010) ........ 15

*Brecher v. Republic of Arg.*,
806 F.3d 22 (2d Cir. 2015) .......... 26, 27

*Butler v. Sears, Roebuck and Co*,
727 F.3d 796 (7th Cir. 2013) .......... 23

*Calkins v. Fidelity Bond and Mortg. Co.*,
No. 94C5971, 1998 WL 719569 (N.D. Ill., Oct. 8, 1998) .......... 13, 14

*Campbell-Ewald Co. v. Gomez*,
136 S. Ct. 663 (2016) .......... 7

*Carnegie v. Household Int'l, Inc.*,
376 F.3d 656 (7th Cir. 2004) .......... 1

*Cartwright v. Viking Industries, Inc.*,
No. 2:07-CV-02159 FCD EFB, 2009 WL 2982887 (E.D. Cal. Sept. 14, 2009 .......... 13

*Casavant v. Norwegian Cruise Line, Ltd.*,
919 N.E.2d 165 Mass. App. Ct. 2009) .......... 19

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007) .......... 31

*Chamberlan v. Ford Motor Co.*,
223 F.R.D. 524 (N.D. Cal. 2004) .......... 16

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) .......... 13, 16

*Chin v. Chrysler Corp.*,
182 F.R.D. 448 (D.N.J. 1998) .......... 14

*Clement v. Am. Honda Fin. Corp.*,
176 F.R.D. 15 (D. Conn. 1997) .......... 14

*Collins v. DaimlerChrysler Corp.*,
894 So.2d 988 (Fla. Dist. Ct. App. 2004) .......... 18

*Cordes & Co. Fin. Servs, Inc. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007) .......... 12, 19

*Craft v. Phillip Morris Cos., Inc.*,
No. 002-00406A, 2003 WL 23355745 (Mo. Cir. Ct. Dec. 31, 2003) .......... 26

*Curtis Lumber Co., Inc. v. Louisiana Pac. Corp.*,
618 F.3d 762 (8th Cir. 2010) .......... 17

*D'Aulouro v. GC Servs. Ltd. P'ship*,
168 F.R.D. 451 (E.D.N.Y 1996) .......... 12

*Daffin v. Ford Motor Co.*,
458 F.3d 549 (6th Cir. 2006) .......... 10, 21, 34

*Darvin v. Int'l Harvester Co.*,
610 F. Supp. 255 (S.D.N.Y. 1985) .......... 31

*Davis v. Powertel, Inc.*,
776 So. 2d 971 (Fla. Dist. Ct. App. 2000) .................... 16

*Denney v. Deutsche Bk. AG*,
443 F.3d 253 (2d Cir. 2006).................... 34

*Dix v. Am. Bankers Life Assur. Co. of Fla.*,
415 N.W.2d 206 (Mich. 1987).................... 17

*Doe v. Blum*,
729 F.2d 186 (2d Cir. 1984).................... 34

*Doyle v. Chrysler Grp. LLC*,
No. SACV 13-00620 JVS, 2014 WL 7690155 (C.D. Cal. Oct. 9, 2014) .................... 33

*Dupler v. Costco Wholesale Corp.*,
249 F.R.D. 29 (E.D. N.Y. 2008) .................... 13

*Ebin v. Kangadis Family Mgmt. LLC*,
45 F. Supp. 3d 395 (S.D.N.Y. 2014).................... 25

*Ebin v. Kangadis Food Inc.*,
297 F.R.D 561 (S.D. N.Y. 2014) .................... 27

*Edwards v. Zenimax Media Inc.*,
No. 12-CV-00411-WYD-KLM, 2012 WL 4378219 (D. Colo. Sept. 25, 2012).................... 35

*EQT Prod. Co. v. Adair*,
764 F.3d 347 (4th Cir. 2014) .................... 28

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011).................... 17

*Finch v. N.Y. State Office of Children & Family Servs.*,
252 F.R.D. 192 (S.D.N.Y. 2008) .................... 25

*Floyd v. City of N.Y.*,
283 F.R.D. 153 (S.D.N.Y. 2012) .................... 24, 32

*Forcellati v. Hyland's, Inc.*,
No. 12-1983, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) .................... 25, 29

*Fujitsu Ltd. v. Fed. Exp. Corp.*,
247 F.3d 423 (2d Cir. 2001).................... 33

*Fulkerson v. MHC Operating Ltd.*,
No. CIV.A. 01C-07-020, 2002 WL 32067510 (Del. Super. Ct. Sept. 24, 2002).................... 20

*Gariety v. Grant Thornton, LLP*,
368 F.3d 356 (4th Cir. 2004) .................... 17

*Gasperoni v. Metabolife, Int'l Inc.*,
No. 00-71255, 2000 WL 33365948 (E.D. Mich. Sept. 27, 2000).................... 17, 19, 20, 26

*Gonzalez v. Corning*,
No. 13-CV-1378, 2016 WL 1252988 (W.D. Pa. Mar. 31, 2016) .................... 12

*Gooch v. Life Inv'rs. Ins. Co. of Am.*,
672 F.3d 402 (6th Cir. 2012) .................................................................................... 9

*Grays Harbor Adventist Christian Sch. v. Carrier Corp.*,
242 F.R.D. 568 (W.D. Wash. 2007) ........................................................................ 10, 16

*Grodzitsky v. Am. Honda Motor Co. Inc.*,
No. 2:12-CV-01142-SVW PLAx, 2014 WL 718431 (C.D. Cal. Feb. 19, 2014)...................... 11

*Guido v. L'Oreal, USA, Inc.*,
284 F.R.D. 468 C.D. Cal. 2012) ................................................................................ 16

*Guth v. Allied Home Mortg. Cap. Corp.*,
No. CA2007-02-029, 2008 WL 2635521 (Ohio Ct. App. July 7, 2008) ................................. 16

*Hall v. Time Inc.*,
70 Cal. Rptr. 3d 466 (2008) ..................................................................................... 18

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .................................................................................. 15

*Helmer v. Goodyear Tire & Rubber Co.*,
No. 12-CV-00685 RBJ MEH, 2014 WL 1133299 (D. Colo. Mar. 21, 2014) .......................... 10

*Hicks v. Kaffman*,
89 Cal. App. 4th 908 (2001) ..................................................................................... 34

*Hickory Sec. Ltd. v. Rep. of Arg.*,
493 F. App'x. 156 (2d Cir. 2012) .............................................................................. 29

*Hilao v. Est. of Marcos*,
103 F.3d 767 (9th Cir.1996) ..................................................................................... 29

*Hovsepian v. Apple, Inc.*,
No. 08-5788 JF (PVT), 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009).................................. 35

*In re Abbott Labs. Norvir Anti-Tr. Litig.*,
Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899 (N.D. Cal., Jun. 11, 2007) ........... 13

*In re AEP ERISA Litig.*,
No. C2-03-67, 2008 WL 4210352 (S.D. Ohio Sept. 8, 2008) ................................................ 30

*In re Agent Orange Prod. Liab. Litig. MDL No. 381*,
818 F.2d 145 (2d Cir. 1987)....................................................................................... 11

*In re Agent Orange Prod. Liab. Litig.*, 9
96 F.2d 1425 (2d Cir. 1993)....................................................................................... 34

*In re Bridgestone/Firestone, Inc.*,
288 F.3d 1012 (7th Cir. 2002) .................................................................................. 14

*In re Comm. Bank of N. Va.*,
418 F.3d 277 (3d Cir. 2005)....................................................................................... 15

*In re ConAgra Foods, Inc.*,
No. CV 11-05379 MMM, 2015 WL 1062756 (C.D. Cal. Feb. 23, 2015) ................................ 19

*In re First Alliance Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) .................................................................................. 17

*In re Ford Motor Co. E–350 Van Prods. Liab. Litig. (No. II)*,
No. 03–4558, 2008 WL 4126264 (D.N.J. Sept. 2, 2008) ........................................ 19

*In re Ford Motor Co. Ignition Switch Products Liab. Litig.*,
194 F.R.D. 484 (D.N.J. 2000)................................................................................. 14

*In re Ford Motor Co. Vehicle Paint Litig.*,
182 F.R.D. 214 (E.D. La. 1998)............................................................................... 14

*In re Gen. Motors Type III Door Latch Litig.*,
No. 98 C 5836, 2001 WL 103434 (N.D. Ill. Jan. 31, 2001)

*In re IPOs Securities Litig.*,
471 F.3d 24 (2d Cir. 2006)...................................................................................... 22

*In re Kosmos Energy Ltd. Sec. Litig.*,
299 F.R.D. 133 (N.D. Tex. 2014) ............................................................................ 31

*In re Linerboard Anti-Tr. Litig.*,
305 F.3d 145 (3d Cir. 2002)..................................................................................... 24

*In re Mercedes-Benz Tele Aid Cont. Litig.*,
267 F.R.D. 113 (D. N.J. 2010)................................................................................. 16

*In re NASDAQ Mkt.-Makers Anti-Tr. Litig.*,
169 F.R.D. 493 (S.D.N.Y. 1996) ............................................................................. 24

*In re Omnicom Grp., Inc. Sec. Litig.*,
No. 02 CIV. 4483 (RCC), 2007 WL 1280640 (S.D.N.Y. Apr. 30, 2007) ................................ 32

*In re Pharm. Indus. Average Wholesale Price Litig.*,
252 F.R.D. 83 (D. Mass. 2008)................................................................................ 19

*In re Pharm. Indus. Average Wholesale Price Litig.*,
582 F.3d 156 (1st Cir. 2009).................................................................................... 29

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)..................................................................................... 17

*In re Relafen Anti-Tr. Litig.*,
221 F.R.D. 260 (D. Mass. 2004).............................................................................. 13

*In re Scotts EZ Seed Litig.*,
304 F.R.D. 397 (S.D. N.Y. 2015) ............................................................................ 14

*In re St. Jude Med., Inc.*,
425 F.3d 1116 (8th Cir. 2005) ................................................................................. 14

*In re Terazosin Hydrochloride*,
220 F.R.D. 672 (S.D. Fla. 2004).............................................................................. 13

*In re U.S. Foodservice Inc. Pricing Litig.*,
729 F.3d 108 (2d Cir. 2013)........................................................................... 14, 17, 18

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001)........................................................................ 22, 23, 28

*In re Vitamins Anti-Tr. Litig.*,
209 F.R.D. 251 (D.D.C. 2002)............................................................................... 17

*In re Warfarin Sodium Anti-Tr. Litig.*,
391 F.3d 516 (3d Cir. 2004)................................................................................... 27

*In re Whirlpool Corp. Front-Loading Washer Prods. Litig.*,
722 F.3d 838 (6th Cir. 2013) ...................................................................... 22, 34, 35

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
267 F.R.D. 549 (D. Minn. 2010)............................................................................ 10

*Indemnity Ins. Co. of N. Am. v. Liebert Corp.*,
No. 96 Civ. 6675(DC), 1998 WL 363834 (S.D.N.Y. June 29, 1998)...................................... 33

*Inman v. DaimlerChrysler Corp.*,
No. 00-61082-3, 2002 WL 31952969 (Tex. County Ct. July 3, 2002).................................... 21

*Jarrett v. Panasonic Corp. of N. Am.*,
8 F.Supp.3d 1074 (E.D. Ark. 2013)......................................................................... 17

*Jermyn v. Best Buy Stores, L.P.*,
256 F.R.D. 418 (S.D.N.Y. 2009) ............................................................................ 13

*Johnson v. Harley-Davidson Motor Co. Grp., LLC*,
285 F.R.D. 573 (E.D. Cal. 2012) ........................................................................... 25

*Joint Equity Comm. of Inv'rs of Real Est. Partners, Inc. v. Coldwell Banker Real Estate Corp.*,
281 F.R.D. 422 (C.D. Cal. 2012) ........................................................................... 15

*Jones v. CBE Grp., Inc.*,
215 F.R.D. 558 (D. Minn. 2003)............................................................................ 31

*Joseph v. Gen. Motors Corp.*,
109 F.R.D. 635 (D. Colo., 1986) .................................................................... 10, 11

*Kaczmarek v. Int'l Bus. Machines Corp.*,
186 F.R.D. 307 (S.D.N.Y. 1999) .............................................................................. 9

*Kailin v. Armstrong*,
643 N.W.2d 132 (Wis. Ct. App. 2002) .................................................................... 20

*Kanawi v. Bechtel Corp.*,
254 F.R.D. 102 (N.D. Cal. 2008)............................................................................ 29

*Kaye v. Amicus Mediation & Arb. Grp., Inc.*,
300 F.R.D. 67 (D. Conn. 2014)............................................................................... 27

*Keilholtz v. Lennox Hearth Prods. Inc.*,
268 F.R.D. 330 (N.D. Cal. Feb. 16, 2010)..................................................... 13, 16

*Kelemen v. Williams*,
No. 92AP-1205, 1993 WL 55171 (Ohio Ct. App. March 4, 1993) ........................................ 18

*Kempner v. Town of Greenwich*,
249 F.R.D. 15 (D. Conn. 2008)....................................................................................... 35

*Klay v. Humana, Inc.*,
382 F.3d 1241 (11th Cir.2004) ...................................................................................... 14

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
571 F.3d 672 (7th Cir. 2009) ......................................................................................... 34

*Laumann v. Nat'l Hockey League*,
105 F. Supp. 3d 384 (S.D.N.Y. 2015)............................................................................. 7

*Ligon v. City of N.Y.*,
288 F.R.D. 72 (S.D.N.Y. 2013) ..................................................................................... 32

*Loreto v. Procter & Gamble Co.*,
No. 1:09-CV-815, 2013 WL 6055401 (S.D. Ohio Nov. 15, 2013) .................................. 35

*Macarz v. Transworld Sys., Inc.*,
201 F.R.D. 54 (D. Conn. 2001)....................................................................................... 28

*Mace v. Van Ru Credit Corp.*,
109 F.3d 338 (7th Cir. 1997) ......................................................................................... 22

*Mahon v. Chi. Title Ins. Co.*,
296 F.R.D. 63 (D. Conn)................................................................................................. 31

*Marisol v. Giuliani*,
126 F.3d 372 (2d Cir.1997)............................................................................................. 24

*Martin v. Ford Motor Co.*,
292 F.R.D. 252 (E.D. Pa. 2013)....................................................................................... 7

*Mass. Mut. Life Ins. Co. v. Sup. Ct.*,
97 Cal. App. 4th 1282 (2002) .................................................................................. 18, 19

*Mayhall v. A.H. Pond Co.*,
341 N.W.2d 268 (Mich. Ct. App. 1983) ......................................................................... 19

*Mazza v. Am. Honda Motor Co.*,
254 F.R.D. 610 (C.D. Cal. 2008) ............................................................................. 15, 16

*McDonald v. Asset Acceptance LLC*,
296 F.R.D. 513 (E.D. Mich. 2013) ................................................................................ 22

*McManus v. Fleetwood Enters., Inc.*,
320 F.3d 545 (5th Cir. 2003) .................................................................................. 20, 21

*Mell v. Anthem, Inc.*,
264 F.R.D. 312 (S.D. Ohio 2009) .................................................................................. 15

*Mental Disability Law Clinic v. Hogan*,
No. 06 Civ. 6320, 2008 WL 4104460 (E.D.N.Y. Aug. 26, 2008)................................... 24

*Metowski v. Traid Corp.*,
104 Cal. Rptr. 599 (Cal. App. Ct. 1972)......................................................................... 22

*Mick v. Level Propane Gases, Inc.*,
203 F.R.D. 324 (S.D. Ohio 2001) .......... 17

*Miller v. William Chevrolet/GEO, Inc.*,
762 N.E.2d 1 (Ill. App. Ct. 2001) .......... 20

*Mirfasihi v. Fleet Mortg. Corp.*,
356 F.3d 781 (7th Cir. 2004) .......... 28

*Nationwide Life Ins. Co v. Haddock*,
460 F. App'x. 26 (2d Cir. 2012) .......... 9

*Oshana v. Coca-Cola Co.*,
472 F.3d 506 (7th Cir. 2006) .......... 35

*Parkinson v. Hyundai Motor Am.*,
258 F.R.D. 580 (C.D. Cal. 2008) .......... 10, 16

*Payne v. Goodyear Tire & Rubber Co.*,
216 F.R.D. 2 (D. Mass 2003) .......... 10

*Pella Corp. v. Saltzman*,
606 F.3d 391 (7th Cir. 2010) .......... 7, 9, 10, 34

*Pelletz v. Weyerhaeuser Co.*,
255 F.R.D. 537 (W.D. Wash. 2009) .......... 10

*Phillips v. Philip Morris Cos.*,
298 F.R.D. 355 (N.D. Ohio 2014) .......... 11

*Polaris Indus., Inc. v. McDonald*,
119 S.W.3d 331 (Tex. App. 2003) .......... 21

*Pungitore v. Barbera*,
506 F. App'x 40 (2d Cir. 2012) .......... 8

*Radosti v. Envision EMI, LLC*,
717 F. Supp. 2d 37 (D.D.C. 2010) .......... 15

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401 (2d Cir. 2015) .......... 23

*Rosario v. Valentine Ave. Disc. Store, Co.*,
No. 10 CV 5255, 2013 WL 2395288 (E.D.N.Y. May 31, 2013) .......... 30

*S. States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc.*,
241 F.R.D. 85 (D. Mass. 2007) .......... 10

*Saltzman v. Pella Corp*,
257 F.R.D. 471 (N.D. Ill. 2009) .......... 11, 27, 34

*Schumacher v. Tyson Fresh Meats, Inc.*,
221 F.R.D. 605 (D. S.D. 2004) .......... 13

*Scott v. N.Y.C. Dist. Council of Carpenters Pension Plan*,
224 F.R.D. 353 (S.D.N.Y. 2004) .......... 30

*Seekamp v. It's Huge, Inc.*,
No. 1:09-CV-00018 LEK DRH, 2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) .................... 8, 9

*Singer v. AT & T Corp.*,
185 F.R.D. 681 (S.D. Fla. 1998) .................................................................................... 13

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
323 F.3d 32 (1st Cir. 2003) ........................................................................................... 23

*Smith v. Behr Process Corp.*,
54 P.3d 665 (Wash. Ct. App. 2002) ................................................................................ 10

*Sollenbarger v. Mountain Sts. Tel. & Tel. Co.*,
121 F.R.D. 417 (D. N.M. 1988) ..................................................................................... 13

*Stanich v. Travelers Indem. Co.*,
249 F.R.D. 506 (N.D. Ohio 2008) .................................................................................. 17

*Stearns v. Select Comfort Retail Corp.*,
763 F. Supp. 2d 1128 (N.D. Cal. 2010) .......................................................................... 35

*Steinberg v. Nationwide Mut. Ins. Co.*,
224 F.R.D. 67 (E.D.N.Y. 2004) ................................................................................ 13, 23

*Stutman v. Chem. Bank*,
731 N.E.2d 608 (N.Y. 2000) ..................................................................................... 16, 18

*Sykes v. Mel S. Harris and Assocs. LLC*,
780 F.3d 70 (2d Cir. 2015) ......................................................................................... 9, 11

*Tait v. BSH Home Appliances Corp.*,
289 F.R.D. 466 (C.D. Cal. 2012) .................................................................................... 24

*Talalai v. Cooper Tire & Rubber Co.*,
823 A.2d 888 (N.J. Super. Ct. 2001) .............................................................................. 19

*Terry L. Braun, P.A. v. Campbell*,
827 So.2d 261 (Fla. Dist. Ct. App. 2002) ....................................................................... 13

*Thomas v. Louisiana-Pac. Corp.*,
246 F.R.D. 505 (D.S.C. 2007) ........................................................................................ 10

*Toback v. GNC Holdings, Inc.*,
13-80526-CIV, 2013 WL 5206103 (S.D. Fla. Sept. 13, 2013) ........................................ 19

*Tyson Foods v. Bouaphakeo*,
136 S. Ct. 1036 (2016) .................................................................................................... 35

*UnitedHealth Group, Inc. v. Klay*,
543 U.S. 1081 (2005) ...................................................................................................... 14

*Veal v. Crown Auto Dealerships, Inc.*,
236 F.R.D 572 (M.D. Fla. 2006) ..................................................................................... 13

*Vega v. T-Mobile USA, Inc.*,
564 F.3d 1256 (11th Cir. 2009) ....................................................................................... 11

*Walewski v. Zenimax Media, Inc.*,
502 F. App'x 857 (11th Cir. 2012) .......... 25, 35

*Wal-mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 9

*Walsh v. Ford Motor Co.*,
106 F.R.D. 378 (D.D.C. 1985) .......... 9

*Wells v. Allstate Ins. Co.*,
210 F.R.D. 1 (D.D.C. 2002) .......... 15

*White v. Volkswagen Grp. of Am., Inc.*,
No. 2:11–cv–02243, 2013 WL 685298 (W.D. Ark. Feb. 25, 2013) .......... 17

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) .......... 34

*Wolph v. Acer Am. Corp.*,
272 F.R.D. 477 (N.D. Cal. 2011) .......... 34

*Xavier v. Philip Morris USA Inc.*,
787 F. Supp. 2d 1075 (N.D. Cal. 2011) .......... 28

*Yazzie v. Gurley Motor Co.*,
No. CIV 14-555 JAP/SCY, 2015 WL 10818834 (D.N.M. Oct. 30, 2015) .......... 25

**Statutes**

Cal. Civ. Code § 1761(d) (2004) .......... 25

D.C. Code § 28–3901(a)(2) (2013) .......... 25

Mo. Ann. Stat. § 407.025(1) (Supp. 2002) .......... 25

Ohio Rev. Code Ann. § 1345.01(A) (2002) .......... 25

Wis. Stat. Ann. § 421.301(17) (Supp. 2004) .......... 25

**Other Authorities**

1 McLaughlin on Class Actions § 4:2 (11th ed. 2014) .......... 26

Barkley Clark and Christopher Smith, *The Law of Product Warranties*, 1 The Law of Prod. Warranties § 5:5 .......... 21

Manual For Complex Litigation (Fourth) § 22.634 (2004) .......... 14

Newberg on Class Actions § 9:58 (4th ed.) .......... 23

Newberg on Class Actions § 4:54 (5th ed.) .......... 22

Newberg on Class Actions § 3:45 (5th ed.) .......... 32

Wright, Miller & Kane § 1785.1 .......... 34

## INDEX OF EXHIBITS


| | |
|---|---|
| EXHIBIT 1*: | Summary of Proposed Class Structures and Remedies |
| EXHIBIT 2: | Consumer Protection Law Subclass Survey |
| EXHIBIT 3**: | The Complete Transcript from the Deposition of Lauren Harris, taken on August 20, 2015 |
| EXHIBIT 4**: | The Complete Transcript from the Deposition of David Mequet, taken on September 23, 2015 |
| EXHIBIT 5**: | The Complete Transcript from the Deposition of Glen Grayson, taken on September 30, 2014 |
| EXHIBIT 6*: | Expert Report of Duane L. Steffey, Ph.D. |
| EXHIBIT 7: | Screenshots from http://products.geappliances.com/appliance/gea-category/advantium-ovens?r=48&p=1&ascdesc=d&sortBy=price (listing all Advantium models presently sold by GE (GEDOOR-000585-88) |
| EXHIBIT 8*: | The Complete Transcript from the Deposition of Darryl Williams, Ph.D., taken on April 28, 2015 |
| EXHIBIT 9**: | Consumer Complaint Contact Forms (GEDOOR-000577-84) |
| EXHIBIT 10**: | The Complete Transcript from the Deposition of Doreen Mazzanti, taken on September 4, 2014 |
| EXHIBIT 11*: | The Complete Transcript from the Deposition of Thomas L. Read, Ph.D., taken on November 11, 2015 |
| EXHIBIT 12**: | The Complete Transcript from the Deposition of Daniel Levy, taken on September 22, 2015 |


* This Court previously ruled that GE's "analysis of consumer injuries and complaints of defective microwaves" are not properly designated as confidential and thus were not properly sealed. (Dkt. 96.) The Court reasoned that such information does not constitute trade secrets and therefore is "not entitled to the same level of protection from disclosure as trade secret information" and that GE's interest in maintaining confidentiality over such information "does not outweigh the presumption of public access and the public interest in product safety." (*Id*. at 2-3.) Nevertheless, GE has continued to insist on improperly maintaining its confidentiality designations over such information, in violation of this Court's order. GE has designated portions of exhibits marked with a double asterisk as confidential. Plaintiffs are thus filing these documents publicly with redactions and in unredacted form under seal, subject to further order by this Court. Plaintiffs object to GE's confidentiality designations with respect to the portions of these documents reflecting or analyzing consumer complaints of glass breakage in GE's 1090/1095 microwaves and intend to submit an opposition to GE's Motion to Seal that GE is filing simultaneously with Plaintiffs' instant Reply Brief in Support of Plaintiffs' Motion for Class Certification and Appointment of Class Counsel.

** The contact information for the individuals that appear in these documents has been redacted.

Plaintiffs submit this reply in support of their Motion for Class Certification ("Mot."). GE's eighty page opposition ("Opposition" or "Opp'n") attempts to obscure the fact that this case is ideal for class certification. The core questions that drive this litigation are common: whether GE's 1090/1095 microwaves are defective and whether GE concealed this defect. These questions permeate Plaintiffs' claims and GE's statute of limitations defense. Their answers will not differ among class members and they predominate over all other issues, making a class action superior to individual adjudications.

GE does not dispute that its 1090/1095 microwaves share the same design, nor does GE dispute that the other common evidence presented in Plaintiffs' Motion will be used to prove Plaintiffs' claims. (Mot. at 4-20.) Instead, GE paints a misleading picture of this case as involving products that are too old to matter with defect rates that are too insignificant to care about and then throws in everything but the kitchen sink of purportedly individual issues, none of which stand as a bar to class certification. Indeed, this case presents a textbook example of the benefits class actions were designed to foster. If putative class members were required to bring separate actions, the same issues would necessarily be re-litigated. As Judge Posner aptly explains, the "*realistic* alternative to a class action is not [60,000] individual suits, but zero individual suits. . . . [A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative . . . to no litigation at all." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). This case is not unwieldly; it is straightforward, in large part due to the strength of the common evidence, which overwhelmingly weighs in favor of class certification.

Plaintiffs propose a simple path forward that aligns with other certified products classes, including *Pella*, *Whirlpool*, and *Butler*, all of which involved many of the same issues and objections presented in this case. First, as in *Pella*, Plaintiffs propose a nationwide Rule 23(b)(2) class consisting of current 1090/1095 owners, for whom Plaintiffs seek injunctive/declaratory relief that would require GE to notify class members of the glass-shattering defect and extend its warranty. Second, Plaintiffs propose a Rule 23(b)(3) class of purchasers based on Plaintiffs'

consumer protection law and Texas implied warranty claims.[1] These proposed class structures and remedies are described more fully in the summary submitted herewith as Exhibit 1.

GE misconstrues the facts of this case and applicable law to serve its own ends, but ultimately cannot distinguish this case from *Pella*, *Whirlpool*, and *Butler*. GE argues that because manufacturing of the 1090/1095 microwaves ceased in 2007, 99% of these microwaves have exceeded their useful life without incident. But Plaintiffs (and GE) continue to receive consumer complaints of spontaneous glass explosions. These microwaves are high-end unique products that were typically built into customized kitchens and supposed to last as long as a consumer would expect his or her custom kitchen to last. GE's arguments that a class is not ascertainable because GE's own records are outdated or incomplete ignores the unique nature of these products. This case does not involve disposable consumer products like diet supplements. Given the built-in nature of these microwaves, traditional forms of notice combined with GE's internal records are more than sufficient to identify class members.

Next, GE focuses on the 1% defect manifestation rate, mischaracterizing it as small. But no one would drive a car with a windshield that had a 1 in 100 chance of spontaneously exploding. Not only is such an unpredictably dangerous defect unacceptable, it is astronomically high compared to GE's other microwaves. [redacted] They thus continue to present a very real safety risk to consumers who still have these ticking time bombs in their home. This weighs heavily in favor of certifying a 23(b)(2) class of current owners, all of whom would benefit from a warning about the defect. Contrary to GE's claims, courts routinely certify Rule 23(b)(2) classes alongside (b)(3) classes.

GE fundamentally errs by centering its analysis on the *manifestation* of the defect Plaintiffs' allege, rather than its *existence*, as *Whirlpool* and *Butler* instruct. GE erroneously argues, for example, that because 99% of the putative class did not or have not yet reported a

---

[1] Plaintiffs ask the Court to hold in abeyance certification of Plaintiffs' other claims for the time being.

shattering glass incident, these class members have no standing. This is incorrect. The Second Circuit requires only that the class be defined in such a way that putative class members would meet Article III standing requirements, which a risk of harm alone satisfies. GE further misapplies the standing inquiry because GE ignores Plaintiffs' allegations that all class members paid more for the microwave than it was worth. Utilizing similarly flawed reasoning, GE argues that Plaintiffs cannot meet Rule 23(a)'s commonality requirement because "numerous factors can cause glass failure." (Opp'n at 1.) Of course glass can shatter for many reasons (as demonstrated by the much smaller instance of shattering in other microwave models). But the common question here is not *why* any specific microwave's glass door shattered. It is whether the 1090/1095 microwaves have a design defect that make them unreasonably likely to shatter.

GE's other arguments against certification of a Rule 23(b)(3) class suffer for similar reasons. GE asserts that the elements of injury, reliance, and causation require individualized inquiries that predominate and thus bar class certification. This argument fails on multiple grounds. First, all of these elements go to damages, which courts rarely find defeat class certification. Second, these elements can all be satisfied by common proof. GE's brief reads as though classes based on consumer protection and warranty claims are never appropriate for class treatment, but, in fact, such classes are certified all the time. GE wrongly argues that every 1090/1095 microwave ever owned by any putative class member would have to be examined in order to provide relief to class members. But GE again fails to appreciate that the injury Plaintiffs allege is the *purchase* or payment for value of a defective microwave, not the defect's manifestation. Indeed, *Whirlpool* and *Butler* rejected this very argument. If the jury finds that GE's microwaves were materially defective and that GE failed to disclose this defect at the point of sale, any purchaser would have been injured as a result of GE's conduct.

Indeed, it is GE's uniform conduct that is the central focus of this case and which militates in favor of class certification. For these same reasons, GE's statute of limitations defense does not—as GE argues—raise individual questions. Rather, it too weighs in favor of certification because Plaintiffs allege that GE knowingly concealed the glass shattering defect,

which would toll any statute of limitations. Nor are there individual damages issues that would defeat certification of a purchaser class given Plaintiffs' uniform expert damages evidence, which relies on GE's own sales figures and internal calculations. Individual issues raised by a defendant's affirmative defenses and/or relating to damages, moreover, rarely predominate. Finally, GE's adequacy arguments against certain of the named Plaintiffs are easily disposed of.

## I. GE's Factual Characterizations are Incorrect and Highly Misleading

GE argues that because the 1090/1095s ceased being manufactured in mid-2007, almost all have exceeded their useful life. First, that assertion is not based on the product or record evidence. As GE acknowledges, its 1090/1095 microwaves are a "high-end, niche product" that "were often purchased for custom kitchens" as part of matching appliance sets and are built into a consumer's kitchen cabinetry. (Opp'n at 3; *see also* Ex. 3 at 57:21-57:24; Ex. 4 at 54:20-55:5; Ex. 5 at 31:11-33:6.) GE's unfounded nine-year expected life figure is inapplicable, wholly unreliable, and should be excluded.[2] In fact, the warranty on these microwaves is longer than the supposed nine-year life expectancy. (Mot. at Ex. H19 (ten-year warranty on magnetron tube).) Second, no matter their so-called "useful life," these microwaves continue to explode. For example, Plaintiff Harris's 1090/1095 microwave exploded 14 years after purchase and Plaintiff Mequet's microwave similarly exploded 15 years after purchase. (Mot. at Ex. F1.)

When these microwaves shatter, consumers cannot simply buy a different model replacement; to do so would mean retrofitting a kitchen. (*See, e.g.*, Ex. 3 at 67-68.) Consumers thus keep these microwaves for many years and are inclined to repair, rather than replace them.

[2] The opinions of GE's own expert do not even support this comparison of GE's 1090/1095 microwaves to other non-convection models. (Ex. 6, Expert Report of Duane L. Steffey, Ph.D., at 4 ("One of the persons designated by GE as being most knowledgeable about MWO issues pertaining to this case has testified that, of the more than 1,200 MWO models sold by GE between 1996 and 2008, other than the 1090/1095s, only some Advantium models are convection MWOs with drop-down glass doors. Thus, the vast majority of units used as a benchmark for comparison are substantially different from the 1090/1095 family in function and design . . . .").) Although Dr. Steffey uses this as a reason to reject the relative risk analysis of Plaintiffs' expert, Dr. Wyner, a rough calculation of the absolute glass shattering defect rate of GE's Advantium models advertised on the company's website is .000007%; in other words GE's [redacted]. (*See* Ex. 7 (listing all Advantium models presently sold by GE); Mot. at Ex. F1 (showing 2 glass breakage incidents for the Advantium models listed on GE's website); Opp'n at Ex. B1 (showing 28,481 such Advantium models sold).

(*See, e.g.*, Ex. 3 at 57; Ex. 5 at 31:11-33:6.) GE also failed to properly remedy the glass shattering defect when servicing them. [redacted] And even when service technicians replaced the entire door assembly, it was equally defective because GE failed to properly diagnose and fix the identified defect. (Mot. at 7-10.) Consequently, many consumers' 1090/1095 microwaves have experienced repeat spontaneous glass door explosions, including Plaintiff Grayson. (*See, e.g.*, Mot. at Ex. G2; Ex. 8 at 118:2-118:6; Mot. at Ex. G11; Consolidated Amended Complaint ("CAC") (Dkt. 157) at ¶¶ 35-37).

Given the special characteristics of the 1090/1095s that result in their use long after GE's unfounded nine-year estimate, it is not the case, as GE baselessly claims, that they are too old to matter. Consumers continue to report spontaneous glass door explosions. Since the inception of this litigation, GE has received over 50 additional consumer complaints of glass doors shattering in these microwaves. (Mot. at Ex. F1.) Plaintiff Harris would not have had to watch the terrifying scene of her microwave spraying shards of glass over her four-year-old son had GE disclosed the known defect in these microwaves to consumers. (Ex. 3 at 35:10-41, 48:11-48:20, 60:25-61:6.) And just last month, Plaintiffs received a complaint from grandparents whose 1090/1095 microwave shattered for the second time approximately 12 years after purchase. (Ex. 9.).

GE repeatedly attempts to minimize the <u>known</u> 1% defect manifestation rate in these microwaves. But 1% is outrageously high when placed in context, particularly given the safety risk posed. Moreover, [redacted] (Mot. at 10-13; *see also* n. 4, *supra*.) What high-end consumer would customize their kitchen around a microwave with

such a dismal safety profile? GE's repeated efforts at minimizing and concealing this defect is part of the problem here that weighs in favor of class certification, not against it.

## II. GE's Legal Arguments Against Class Certification Fail

### A. The Court Should Certify Plaintiffs' Proposed Rule 23(b)(2) Class

Plaintiffs' proposed 23(b)(2) class exemplifies the kind of action that the Rule supports. The declaratory and injunctive relief Plaintiffs seek, most importantly requiring GE to warn owners of the glass shattering defect—is the driving force of this litigation and constitutes indivisible equitable relief that would benefit all class members at once. In addition to the claims asserted in Plaintiffs' CAC, this class is also supported by the federal declaratory relief statute, 28 U.S.C. § 2201, with standard applicability and elements nationwide. GE devotes only two pages of its eighty-page brief to opposing this class and makes only three arguments. Each fail.

#### 1. Certification of a Rule 23(b)(2) Class Would Provide Critical Relief

With respect to GE's first contention that no single injunction would apply to the class, GE asserts that some class members no longer have their microwaves and that others had the door assembly replaced. GE's first concern is easily solvable. The Court should simply certify a 23(b)(2) class comprised of all persons in the United States who currently own 1090/1095 microwaves. GE's second concern is off the mark. That some class members had their door assemblies replaced is irrelevant because Plaintiffs allege GE never fixed the defect. *See* Section I. Thus, any replacements are just as defective as the originals. All current owners deserve to know, *at a minimum*, that their microwave has a dangerous defect.[3] Plaintiffs' refinement of the Rule 23(b)(2) class to current owners and specification of the equitable relief they seek make clear that there is a perfect match between the relief sought and the class definition. What Plaintiffs propose is similar to what was approved and affirmed by the Seventh Circuit in *Pella* on facts highly analogous this case.[4] *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 483 (N.D. Ill.

---

[3] Plaintiffs' Exhibit 1 submitted herewith sets forth other specific equitable relief Plaintiffs submit would be appropriate, which, in addition to a warning, includes a warranty extension, warranty reassessment, and recall.

[4] "If the district court finds in favor of the class . . . the cumulative effect will be an entitlement to have their windows replaced, and the (b)(2) class will benefit uniformly from the declarations. The contemplated process in

2009), *aff'd* 606 F.3d 391 (7th Cir. 2010), *cert. denied*, 562 U.S. 1178 (2011).[5]

### 2. Plaintiffs Have Standing to Represent a Rule 23(b)(2) Class

GE next argues that Plaintiffs' claims are moot and they thus do not have standing to seek injunctive relief. (Opp'n at 35.) That is incorrect as a matter of both fact and law. First, the mootness doctrine emanates from Article III's limitation on federal court jurisdiction to "cases" and "controversies." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016), *as revised* (Feb. 9, 2016). Courts thus analyze Article III standing with respect to the litigation as a whole, not specific claims. "A case becomes moot . . . 'only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.' 'As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" *Id*. The two cases GE cites on this point address exceptions to the Article III mootness doctrine that simply do not apply here because Plaintiffs' claims have not otherwise been rendered moot.

GE argues that because Plaintiffs turned over their microwaves for inspection, they no longer have any personal stake in the outcome of this case. GE cites no cases to support its position, which is illogical. Plaintiffs have not obtained the relief they seek here as GE has not acknowledged the defect, replaced Plaintiffs' microwaves, or compensated them for the damages they incurred as a result of GE's unlawful conduct. They thus still have a very real and personal stake in this litigation, which is all that is required to satisfy Article III standing. *Laumann v. Nat'l Hockey League*, 105 F. Supp. 3d 384, 411–12 (S.D.N.Y. 2015) ("To enjoy such standing, a plaintiff must show either that she currently is injured, or that a future injury is certainly impending."). Moreover, in consumer cases such as this one, "[p]ublic policy, as well as precedent, supports the rule that Article III standing exists to seek injunctive relief" even when the named plaintiff admits that he or she will never buy the product again." *Belfiore v. Procter &*

---

which members may file a claim with Pella for service does not appear to be any different than the process by which an owner would file a claim with Pella under a warranty." *Pella*, 606 F.3d at 395.

[5] GE's cite to *Martin v. Ford Motor Co.*, 292 F.R.D. 252, 287 (E.D. Pa. 2013), is unpersuasive. In *Martin*, the court disliked the 23(b)(2) class definition because it included members from states where Ford had already issued a voluntary safety recall. Here, no class member has "already received the relief this lawsuit seeks" because GE has *never* issued a warning or even publicly acknowledged the defect and has never actually fixed the defect.

*Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) (citing cases).

GE also argues that Plaintiffs somehow lack standing because the 1090/1095s are no longer being manufactured. Again, the logic in this argument is lacking, and GE cites no case in support. As a factual matter, moreover, GE is talking out of both sides of its mouth. On the one hand, GE is assuring this Court that the problem has been resolved and that there is no reason to issue an injunction. On the other hand, GE continues to receive complaints from customers as recently as ***last month*** of 1090/1095 glass doors exploding. And despite knowing about the glass shattering defect for years, GE continues to fraudulently conceal it. That is precisely why declaratory and injunctive relief are absolutely necessary in this case.[6] Any consumers who were lucky enough to own and dispose of these microwaves without incident will not need or be entitled to the 23(b)(2) relief Plaintiffs seek.[7]

### 3. Certification of Both a Rule 23(b)(2) and 23(b)(3) Class is Proper

Finally, GE contends that Plaintiffs may not seek a 23(b)(2) class because, allegedly, "money damages are the driving force behind this litigation." (Opp'n at 35.) GE's argument is, in essence, that because Plaintiffs seek certification of a 23(b)(3) class, this Court is precluded from certifying a 23(b)(2) class. This is illogical and unsupported by any precedent. The two classes are distinct: they are comprised of different class members and seek entirely different forms of relief. In *Seekamp v. It's Huge, Inc.*, No. 1:09-CV-00018 LEK DRH, 2012 WL 860364, at *8 (N.D.N.Y. Mar. 13, 2012), the court addressed this issue and concluded, "where a plaintiff seeks both declaratory and monetary relief, 'the court may certify a damages-seeking class under Rule 23(b)(3), and an injunction-seeking class under Rule 23(b)(2).'" Declaratory relief to a 23(b)(2)

---

[6] GE's cited cases are not to the contrary. *Pungitore v. Barbera*, 506 F. App'x 40, 42 (2d Cir. 2012), for example, notes that an injunction is unnecessary when there are no "continuing, present adverse effects" of defendant's wrongful conduct. But that is not the case here. GE continues to receive glass shattering complaints and continues to refuse to fix the problem. Providing notice and extending the warranty on Plaintiffs' microwaves would allow all the named Plaintiffs, and the Class, to receive beneficial relief.

[7] Moreover, GE cites no evidentiary support for its claim that Plaintiffs' proposed classes include persons who used their 1090/1095 microwaves without incident until they no longer functioned or were replaced. In reality, GE has no idea how many consumers still own and use these microwaves. And given the complaints the parties continue to receive, it is clear that many are still operational and putting unsuspecting consumers at risk.

class, moreover, may be a predicate for damages to a 23(b)(3) class. *Id.* at *7.

The same is true here. In this case, declaratory relief to the 23(b)(2) class is a "separable and distinct type of relief that will resolve an issue common to all class members." *Id*. Requiring GE to warn class members that the 1090/1095 microwaves are defective is separate and distinct from class members' claims for monetary damages. There is no reason why these two classes, and these two forms of relief, cannot coexist. *See, generally, Pella*, 606 F.3d at 392; *Sykes v. Mel S. Harris and Assocs. LLC,* 780 F.3d 70, 97 (2d Cir. 2015) (certifying both a Rule 23(b)(2) and Rule 23(b)(3) class under circumstances analogous to the instant case). And because GE uniformly failed to warn consumers about this defect, class-wide injunctive relief is warranted. *See Gooch v. Life Inv'rs. Ins. Co. of Am.*, 672 F.3d 402, 428 (6th Cir. 2012) ("Because Life Investors interprets the phrase 'actual charges' the same way for each policyholder, uniform declaratory relief is appropriate.").

GE relies on *Wal-mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), and the Second Circuit's adoption of the case in *Nationwide Life Ins. Co v. Haddock*, 460 F. App'x. 26 (2d Cir. 2012), to argue that damages in this case are not merely "incidental." (Opp'n at 35.) But GE's argument ignores the existence of two separate classes. The 23(b)(2) class is not being used as a backdoor to damages; class members would not, in fact, receive any damages; they would receive equitable relief in the form of notice and an extended warranty. As such, a 23(b)(2) class like the one proposed here would be entirely consistent with both *Dukes* and *Haddock*. In appealing the *Pella* decision to the Seventh Circuit, the defendant raised the same objection as GE, arguing that certification under 23(b)(2) was inappropriate because "this is really a case about money" and injunctive relief was only "a stop on the way damages[.]" 606 F.3d at 395. The Seventh Circuit disagreed, holding that certification of both the 23(b)(2) and 23(b)(3) class was appropriate. *Id.*[8]

[8] GE also cites two decisions holding merely that equitable relief is unnecessary when money damages are an adequate remedy at law. *See Kaczmarek v. Int'l Bus. Machines Corp.*, 186 F.R.D. 307, 313 (S.D.N.Y. 1999); *Walsh v. Ford Motor Co.,* 106 F.R.D. 378, 414 (D.D.C. 1985), *vacated*, 807 F.2d 1000 (D.C. Cir. 1986). But money damages by itself is inadequate due to the safety risk these microwaves pose.

### B. The Court Should Certify Plaintiffs' Proposed Rule 23(b)(3) Classes

In addition to the above-described Rule 23(b)(2) class, Plaintiffs propose a Rule 23(b)(3) Consumer Protection Law Subclass (or alternatively individual state (b)(3) consumer protection law classes for California, Florida, New York, and Ohio) and a Texas Implied Warranty Subclass comprised of purchasers of 1090/1095 microwaves. GE spends the bulk of its brief arguing that individual questions of fact and law going to injury, causation, and damages will predominate with respect to these claims. But GE simply cannot distinguish this case from the great weight of authority certifying classes in product defect and fraudulent omission cases like this one.[9]

#### 1. GE's Rule 23(b)(3) Arguments are Fundamentally Flawed and Ignore the Indisputably Common Issues Here, All of Which Rely on Common Proof and Demonstrate the Superiority of a Class Action

GE's arguments rest on the false premise that the presence of any individual issues, no

---

[9] *See, e.g.*, Mot. at 24, 26; *see also In re Zurn Pex Plumbing Prods. Liab. Litig.*, 267 F.R.D. 549, 563 (D. Minn. 2010) ("Plaintiffs allege, and intend to prove by expert testimony, that Zurn's brass crimp fittings suffer from a uniform, inherent design and manufacturing defect regardless of the varying circumstances raised by Zurn."); *Pella*, 606 F.3d at 393 ("[C]common predominant issue of whether the windows suffer from a single, inherent design defect leading to wood rot is the essence of the dispute and is better resolved by class treatment"); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 554 (6th Cir. 2006) (affirming class certification based on predominating common issues of "(1) whether [product] is defective, (2) whether the defect reduces the value of [product], and (3) whether . . . warranty covers the latent defect at issue in this case"); *Helmer v. Goodyear Tire & Rubber Co.*, No. 12-CV-00685 RBJ MEH, 2014 WL 1133299 (D. Colo. Mar. 21, 2014) (predominant issue was whether the alleged defects exist), *Rule 23(f) petition denied*, Case No. 1:12-cv-00685, Docket No. 136 (D. Colo.); *Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 540 (W.D. Wash. 2009) ("[C]ommonality exists because all Class members allegedly share the same problem: a defect in their ChoiceDek product causing significant recurring molding problems on their decks. Common questions include whether the product is defective [and] whether Defendants knew or should have known of the defect."); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 593 (C.D. Cal. 2008) (common questions regarding defendant's knowledge of defect and duty to disclose, and whether the failure to disclose was material to a reasonable consumer); *Barden v. Hurd Millwork Co. Inc.*, 249 F.R.D. 316, 321 (E.D. Wis. 2008) (finding predominance where the principle issues related to warranty and defect-"issues [that] seem capable of fairly simple resolution on a class basis"); *Powers v. Lycoming Engines*, 245 F.R.D. 226, 238 (E.D. Pa. 2007) (predominance satisfied where all class members allegedly were harmed by sale of defective airplane crankshafts); *Thomas v. Louisiana-Pac. Corp.*, 246 F.R.D. 505 (D.S.C. 2007) (predominant common question whether house siding was defective); *Bussian v. Daimler Chrysler Corp.*, No. 104-CV000387, 2007 WL 1752059, at *7 (M.D.N.C. June 18, 2007) (finding predominance in design defect and warranty case); *S. States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 89 (D. Mass. 2007) (finding predominance and certifying class in case involving defective bullet-proof vests); *Grays Harbor Adventist Christian Sch., v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D. Wash. 2007) (predominant "common question is whether Carrier's furnaces are defective by design, regardless of any individual factors such as installation, maintenance, or type of fuel used."); *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 2, 28 (D. Mass 2003) (finding predominance where plaintiffs alleged that radiant heating systems were defective and that company failed to warn of known problems); *Joseph v. Gen. Motors Corp.*, 109 F.R.D. 635, 641 (D. Colo., 1986) (whether V8-6-4 engine was defectively designed created predominant question); *Smith v. Behr Process Corp.*, 54 P.3d 665, 675 (Wash. Ct. App. 2002) (predominance found when class members' claims arose from a common nucleus of operative facts involving the formulation, manufacture, and sale of Behr's allegedly defective sealant products).

matter how remote or insignificant, pose insuperable barriers to certification. To the contrary, "[t]he text of Rule 23(b)(3) itself contemplates that such individual questions will be present." *Sykes*, 780 F.3d at 81. The predominance determination does not require common proof for all elements of a cause of action. *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013). Common proof relating to just one element can be sufficient. *See, e.g.*, *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 165–67 (2d Cir. 1987) (concluding 23(b)(3) class certification was justified because of the "centrality of the [defendants'] military contractor defense," despite "few, if any, [other] common questions of law" and the need for "highly individualistic" inquiries into causation). The key test of predominance is "whether the same issues would necessarily be re-litigated over and over again if plaintiffs were required to bring separate actions." *Pella*, 257 F.R.D. at 478; *Joseph*, 109 F.R.D. 635. The procedural history of this case confirms this. Where "common issues truly predominate over individualized issues in a lawsuit, then the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009). Three additional Plaintiffs were added late to this case, which had a *de minimis* impact on the litigation—no significant additional document productions were made by GE and no additional expert reports were needed.

That is because the central issues in this litigation—which relate to the glass shattering defect in GE's 1090/1095 microwaves and GE's uniform failure to disclose this defect—are the same for all class members and will have a predominant role in resolving this case. In arguing against commonality, GE cites to cases in which there was no common product design or defect—by contrast, here, there is ample evidence of a common defect and GE ***admits*** a common design.[10] (Opp'n at 26-27.) GE's purported laundry list of individual issues are trivial at best

---

[10] *See, e.g.*, *Grodzitsky v. Am. Honda Motor Co. Inc.*, No. 2:12-CV-01142-SVW PLAx, 2014 WL 718431, at *1 (C.D. Cal. Feb. 19, 2014) (denying certification of class involving over 100 different vehicle model and year variations because plaintiffs "ha[d] not provided evidence that all of the class vehicles at issue utilize the same relevant materials in their window regulators," but noting that "[w]here the material elements of the device at issue are clearly the same among the class, . . . the question 'is there a defect?' is capable of classwide resolution and establishes commonality"); *Phillips v. Philip Morris Cos.*, 298 F.R.D. 355, 368 (N.D. Ohio 2014) (reasoning

given the common questions here, all of which will rely on common proof that does not vary by class member and any of which establish predominance.

GE erroneously centers its analysis on the *manifestation* of the defect Plaintiffs' allege, rather than its *existence*. GE spills much ink on trivial issues, describing the different reasons glass can shatter, the percentage of 1090/1095 microwaves for which GE did not receive glass shattering complaints, and the minor variations in the manufacture of the spring and degree of interference. It simply does not matter, however, whether the defect manifested in any given microwave. Plaintiffs do not, as GE contends, need to answer "the question of what caused glass breakage" in each consumer's microwave. The common answer certification will provide is whether the 1090/1095 microwaves were defectively designed in the first instance and whether GE concealed that fact, not whether the defect resulted in glass breakage for every class member. Plaintiffs have ample common evidentiary support of these crucial facts. (*See* Mot. at 4-20.) GE fails to explain how the question of the *existence* of the glass shattering defect is permeated with individual issues. Any difference among the claims of the class "does not defeat the commonality requirement because the claims of individual class members do not have to match precisely." *D'Aulouro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456 (E.D.N.Y 1996).

Moreover, even if GE's predominance arguments were correct—they are not—this Court has the discretion to certify a liability-only class under Rule 23(c)(4), with damages addressed in separate hearings. *See, e.g.*, *Cordes & Co. Fin. Servs, Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 109 (2d Cir. 2007).

### 2. The Court Should Certify the Consumer Protection Law Subclass or, in the Alternative, Individual Consumer Protection State Classes for California, Florida, Ohio, and New York

All Consumer Protection Law Subclass states proscribe the non-disclosure of material facts in trade or commerce as deceptive or unfair practices giving rise to the right of recovery for

---

that, unlike *Whirlpool*, case at hand did not involve an "inherent design defect that rendered the product less valuable regardless of who purchased it"); *Gonzalez v. Corning*, No. 13-CV-1378, 2016 WL 1252988, at *45 (W.D. Pa. Mar. 31, 2016) (finding no common defect because design specification allowed for range of measurements, some of which resulted in product that was not defective).

damages. *See* Ex. 2. The consumer protection acts in these states thus provide a common legal framework for determining GE's liability. *Id*. In addition, the states provide a right of recovery for any person who suffers actual injury as a result of a violation and allow recovery of actual economic damages sustained. *Id*. GE's brief reads as if no court could ever certify a class action that proceeds under the consumer protection laws of multiple states or even one state for that matter. The reality, however, is that multistate classes are common.[11] And this is precisely the type of case that courts find appropriate for class treatment, including in Florida,[12] California,[13] New York,[14] and Ohio.[15] *See also* n. 22, 23, 29 *infra*.

In *Amchem Products, Inc. v. Windsor*, the Supreme Court made clear that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud." 521 U.S. 591, 625 (1997). Where consumer protection claims are premised on uniform omissions or

---

[11] *See, e.g.*, *Calkins v. Fidelity Bond and Mortg. Co.*, No. 94C5971, 1998 WL 719569, at *3 (N.D. Ill., Oct. 8, 1998) (certifying multi-state claim of breach of fiduciary duty); *In re Terazosin Hydrochloride*, 220 F.R.D. 672 (S.D. Fla. 2004) (certifying multi-state antitrust unjust enrichment claims); *Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605 (D. S.D. 2004) (same); *In re Abbott Labs. Norvir Anti-Tr. Litig.*, Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899 (N.D. Cal., Jun. 11, 2007) (same); *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67 (E.D.N.Y. 2004) (certifying nationwide class on breach-of-contract claim); *Singer v. AT & T Corp.*, 185 F.R.D. 681 (S.D. Fla. 1998) (multi-state breach of contract claim); *Sollenbarger v. Mountain Sts. Tel. & Tel. Co.*, 121 F.R.D. 417 (D. N.M. 1988) (seven-state breach of contract class); *In re Relafen Anti-Tr. Litig.*, 221 F.R.D. 260, 279-88 (D. Mass. 2004) (finding law of unjust enrichment substantially similar among the states and certifying class of five "exemplar states").

[12] *See, e.g.*, *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D 572, 579-82 (M.D. Fla. 2006) (certifying class for Florida consumer protection claims based on defendant's alleged omissions concerning its purported car security device); *see also Terry L. Braun, P.A. v. Campbell*, 827 So.2d 261 (Fla. Dist. Ct. App. 2002) (class certification appropriate given defendant's uniform course of conduct creating predominating common issues of law and fact).

[13] *See, e.g.*, *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 962-63 (9th Cir. 2005) (affirming certification of consumer protection claim based on manufacturer's uniform failure to disclose known defect with engine intake manifolds); *Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 342-43 (N.D. Cal. Feb. 16, 2010) (common questions predominated for UCL and CLRA claims based on defendants' failure to disclose safety risks associated with fireplaces); *Cartwright v. Viking Industries, Inc.*, No. 2:07-CV-02159 FCD EFB, 2009 WL 2982887, at *10-12 (E.D. Cal. Sept. 14, 2009) (common questions predominated for UCL and CLRA claims based on defendant's failure to disclose that its windows were not water tight and required application of a sealant).

[14] *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 435 (S.D.N.Y. 2009) ("Plaintiff's section 349 claim is about defendant's omission to disclose its real policy to him, but that same omission is the gravamen of every class member's claim, and so may be proven on a class-wide level, based on evidence from [the defendant's] records and testimony from past and present employees."); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 44 (E.D. N.Y. 2008) (common issues predominated for Section 349 claim because "[the plaintiff] asserts that, as a whole, [the defendant] has failed to adequately disclose their backdating policy to its members").

[15] *See, e.g.*, *Baughman v. State Farm Mut. Auto. Ins. Co.*, 727 N.E.2d 1265, 1275 (Ohio 2000) (affirming certification of Ohio consumer fraud class).

misrepresentations, courts have found class certification particularly appropriate.[16] GE nevertheless argues that variations in state consumer protection laws and individualized issues relating to reliance, injury, causation, and scienter preclude certifying a multistate or any consumer protection class. GE is wrong.[17] First, Plaintiffs' proposed Consumer Protection Law Subclass includes only those states with similar consumer protection laws that either do not require these elements or where they can be demonstrated on a representative basis. *See* Ex. 2. Second, GE's Opposition ignores Plaintiffs alternative proposal of certifying individual state consumer protection law subclasses,[18] which do not raise conflicts of laws that can defeat predominance.[19] Third, GE fails to point to any material differences among the state laws.

---

[16] *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) ("Fraud claims based on uniform misrepresentations to all members of a class are appropriate subjects for class certification because, unlike fraud claims in which there are material variations in the misrepresentations made to each class member, uniform misrepresentations create no need for a series of mini-trials.") (internal quotations and citations omitted); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405 (S.D. N.Y. 2015) ("A common question with respect to the second theory of liability is whether the [label] claim is false and/or misleading. The answer to this question is common to all class members, and is apt to drive the resolution of this litigation."); *see also* n. 22, 23, 29, *infra*.

[17] In arguing there are material differences in these state consumer protection laws, GE cites to cases that have denied certification of *nationwide* consumer protection classes, which Plaintiffs do not seek. *See, e.g., Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J. 1998) (concluding that the law of each of the 50 states varied on important issues that were relevant to plaintiffs' claims); *In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 224 (E.D. La. 1998) (national class would be unmanageable); *Clement v. Am. Honda Fin. Corp.*, 176 F.R.D. 15, 23 (D. Conn. 1997) (lack of cohesion in a nationwide class). Many of the other cases GE cites discuss the due process problems created when a court applies *one* state's law to a nationwide class. *See, e.g., In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005) (reversing application of Minnesota consumer protection act to a nationwide class because district court failed to perform a proper conflicts of law analysis); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) (conflict of law decision wherein the court held that it should not apply "one state's laws to sales in other states with different rules"); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 571 (1996) (discussing due process issues raised by one state imposing its own laws on its sister states). The only case GE cites that denied certification to a refined subclass of consumer protection states is *In re Ford Motor Co. Ignition Switch Products Liab. Litig.*, 194 F.R.D. 484, 489–90 (D.N.J. 2000), and in that case, the plaintiffs had only proposed excluding states that required privity. The court was troubled that the remaining states prohibited varying conduct, and used different definitions of "consumer." *Id.* Here, Plaintiffs proposed subclass is much narrower. Plaintiffs curated a class of states that impose liability for deceptive trade practices without the need to make individualized showings for absent class members. Further, Plaintiffs' class definition, which only includes individuals who bought the product for primarily personal, family, or household purposes, alleviates the *Ford* court's concern regarding the differing definitions of "consumer."

[18] If the Court is inclined to certify only individual state classes, Plaintiffs respectfully request the opportunity to add plaintiffs from other states.

[19] Courts routinely create subclasses to manage any potential conflicts among different state's laws, although there are no actual conflicts here. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir.2004), cert. denied sub nom. *UnitedHealth Group, Inc. v. Klay*, 543 U.S. 1081 (2005) (noting advantages for grouping state laws and certifying subclasses accordingly); *Fournigault*, 234 F.R.D. at 643 (certifying seven state subclasses); *Calkins*, 1998 WL 719569, at *3 (creating state subclasses to avoid conflicts of law); Manual For Complex Litigation (Fourth) § 22.634, p. 412 (2004) (noting the option of creating subclasses if the law of only a few jurisdictions applies). Rule

"Merely because 'two or more states are involved does not in itself indicate that there is a conflict of law problem.' The differences among the state laws must be materially different." *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610 (C.D. Cal. 2008). GE points only to superficial differences in statutory nomenclature and does not address Plaintiffs' common proof for each of the elements of reliance, injury, causation, and scienter. Indeed, the particular conflicts of law alleged by GE have been litigated and rejected. *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) ("[A]lthough some class members may possess slightly differing remedies based on state statute or common law . . . to the extent distinct remedies exist, they are local variants of a generally homogenous collection of causes which include products liability, breaches of express and implied warranties, and 'lemon laws.'").

Finally, even assuming, *arguendo*, that common evidence could not be used to prove reliance, injury, or causation, that does not mean these elements predominate the core common liability issues in this case—the defect in GE's 1090/1095 microwaves and the fraudulent concealment of that fact by GE.[20] And even if the Court is concerned about such individual issues predominating, a liability-only class under Rule 23(c)(4) should be certified *at a minimum*.

**i. Reliance Does Not Bar Certification**

GE acknowledges that almost all of the states in Plaintiffs' proposed Consumer

---

23(c)(5), in fact, expressly contemplates the creation of subclasses: "When appropriate, a class may be divided into subclasses that are each treated as a class under this rule." According to the Advisory Committee, "[w]here a class is found to include subclasses divergent in interest, the class may be divided correspondingly, and each subclass treated as a class." Fed. R. Civ. P. (c)(4) advisory committee's note (1966) (currently 23(c)(5)).

[20] *See Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 53 (D.D.C. 2010) (finding that allegations of "misleading or negligent misrepresentations in their advertising and promotional materials" predominated, notwithstanding potential individual issues); *Joint Equity Comm. of Inv'rs of Real Est. Partners, Inc. v. Coldwell Banker Real Estate Corp.*, 281 F.R.D. 422, 429-34 (C.D. Cal. 2012) (rejecting argument that individual reliance issues prevented class certification of fraud and negligent misrepresentation claims); *see also Boynton v. Headwaters, Inc.*, No. 1:02-CV-01111 JPMEGB, 2010 WL 2430779, at *2 (W.D. Tenn. June 10, 2010) ("There are numerous cases in which fraud claims have been certified for class-wide treatment, even if fraud claims involving individualized issues present particular challenges."); *Mell v. Anthem, Inc.*, 264 F.R.D. 312, 320-21 (S.D. Ohio 2009) (finding predominance notwithstanding the potential of individualized reliance issues); *see also, In re Comm. Bank of N. Va.*, 418 F.3d 277, 306 (3d Cir. 2005) ("The existence of an individual inquiry does not preclude class action treatment where all class members face the necessity of proving the same fraudulent scheme."); *Wells v. Allstate Ins. Co.*, 210 F.R.D. 1, 12 (D.D.C. 2002) ("In the context of class action lawsuits alleging 'a large number of people were defrauded in an identical manner . . . challenges pursuant to Rule 23(b)(3) because of reliance have usually been rejected, because reliance goes to the issue of damages rather than to the underlying, predominant, common issue of liability.'").

Protection Law Subclass do not require individualized proof of reliance. (Opp'n at 56, 79.) Even where reliance is required, "[w]hen there is nondisclosure of a material fact, courts permit inferences or presumptions of inducement and reliance. Thus, cases involving common omissions across the entire class are generally certified as class actions, notwithstanding the need for each class member to prove these elements." *Baughman*, 727 N.E.2d at 1275 (affirming certification of Ohio fraud class).[21] That is true for each of the named Plaintiffs' states of residence—Florida,[22] California,[23] New York,[24] and Ohio[25]—which GE does not dispute. (Opp'n at 56.) By GE's own admission, then, the element of reliance does not raise any individual issues with respect to Plaintiffs' alternative single state subclasses. GE argues only that Arkansas and Michigan do require individual proof of reliance. Even if that were true—it is not—this Court could certify a multi-state class that excludes these states.

In Michigan, "members of a class proceeding under [Michigan's] Consumer Protection Act need not individually prove reliance on the alleged misrepresentations." *Dix v. Am. Bankers*

---

[21] That holding is consistent with case law from other jurisdictions. *See In re Mercedes-Benz Tele Aid Cont. Litig.*, 267 F.R.D. 113, 153 (D. N.J. 2010) ("Based on the fact that the consumer fraud claim in this case is premised on omissions rather than misrepresentations, the Court [holds] that Plaintiffs will be able to establish causation by common proof; they must simply show that Mercedes knew that analog Tele Aid service would not be available after 2007, but did not inform the class members of that development until after they had purchased vehicles that contained analog-only systems and subscribed to Tele Aid."); *Grays*, 242 F.R.D. at 573 ("Proof of the omissions will *not* be based upon information each class member received about the furnaces, but on what Carrier allegedly concealed in light of what consumers reasonably expect"); *Keilholtz*, 268 F.R.D. at 333-34, 342-43 (certifying nationwide omission-based consumer fraud class under California CLRA and UCL); *Parkinson*, 258 F.R.D. at 596-97 (certifying nationwide omission-based class involving defective gearshifts under California CLRA and UCL); *Mazza*, 254 F.R.D. at 626-27 (certifying nationwide omission-based class involving misleading product advertisements under California's CLRA and UCL); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526-27 (N.D. Cal. 2004), *Rule 23(f) pet. den.* 402 F.3d 952 (9th Cir. 2005) (certifying omission-based defective engine manifold case under California CLRA); *see also* Ex. 2.

[22] *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000) ("[T]he question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances.")'

[23] *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 475, 478 (C.D. Cal. 2012) ("A presumption or at least an inference of reliance arises whenever there is a showing that a misrepresentation was material . . . [R]elief under the UCL is available without individualized proof of deception, reliance and injury.") (quotation omitted).

[24] *Stutman v. Chem. Bank,* 731 N.E.2d 608, 611-13 (N.Y. 2000) ("Intent to defraud and justifiable reliance by the plaintiff are not elements of the statutory [consumer protection] claim.").

[25] *Guth v. Allied Home Mortg. Cap. Corp.*, No. CA2007-02-029, 2008 WL 2635521, at *7 (Ohio Ct. App. July 7, 2008) (reversing trial court decision that required reliance, explaining, "a claim under the CSPA is separate and distinct from a claim under common law fraud, for which justifiable reliance must be proven").

*Life Assur. Co. of Fla.*, 415 N.W.2d 206, 209 (Mich. 1987). "It is sufficient if the class can establish that a reasonable person would have relied on the representation." *Gasperoni v. Metabolife, Int'l Inc.*, No. 00-71255, 2000 WL 33365948, at *7 (E.D. Mich. Sept. 27, 2000). Reliance can thus be "satisfied by proof that plaintiffs purchased and consumed the product." *Id.* And "[u]nlike a claim for an affirmative representation, a claim for fraudulent omission does not require any proof of actual reliance." *Id.* The Eighth Circuit likewise held in *Curtis Lumber Co., Inc. v. Louisiana Pac. Corp.*, 618 F.3d 762, 779 (8th Cir. 2010), that Arkansas would likely interpret its statute in accord with the FTC and other states that require only "conduct that is likely to deceive a consumer acting reasonably under similar circumstances."[26]

Indeed, reliance is often determined on a class-wide basis by common proof, including an objective "reasonable person" standard, where fraudulent misrepresentations and omissions are uniform to the class.[27] And individual reliance may be inferred from the purchase itself. *See, e.g.*,

[26] The district court case cited by GE is not persuasive. *Jarrett v. Panasonic Corp. of N. Am.*, 8 F.Supp.3d 1074, 1089 (E.D. Ark. 2013), dismissed the plaintiff's ADTPA claims under Rule 12(b)(6) for failure to allege reliance or injury, stating only in dicta and without fully analyzing the issue that each class member must prove reliance. In so finding, *Jarrett* relied on *White v. Volkswagen Grp. of Am., Inc.*, No. 2:11–cv–02243, 2013 WL 685298, at *4–*5 (W.D. Ark. Feb. 25, 2013), which simply does not stand for that proposition. In *White*, the court was considering whether the plaintiff had adequately pled an ADPTA claim for Rule 12(b)(6) purposes, not whether the ADPTA requires each individual class member to prove reliance.

[27] *See e.g.*, *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011); *In re U.S. Foodservice Inc.*, 729 F.3d at 120 (2d Cir. 2013) ("Fraud claims of this type may thus be appropriate candidates for class certification because 'while each plaintiff must prove reliance, he or she may do so through common evidence (that is, through legitimate inferences based on the nature of the alleged misrepresentations at issue).'"); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356 (4th Cir. 2004); *In re Vitamins Anti-Tr. Litig.*, 209 F.R.D. 251, 269 (D.D.C. 2002) ("Courts frequently find the issue of fraudulent concealment a common issue which predominates because the inquiry necessarily focuses on defendants' conduct, that is, what the defendants did rather than what the plaintiffs did.") (internal quotations omitted); *In re First Alliance Mortg. Co.*, 471 F.3d 977, 991 (9th Cir. 2006) ("Class treatment has been permitted in fraud cases where, as in this case, a standardized sales pitch is employed."); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 314 (3d Cir. 1998) (affirming rejection of argument that individual questions of reliance defeated predominance because "[c]hallenges based on . . . reliance have usually been rejected and will not bar predominance satisfaction because [reliance pertains] to the right of a class member to recover in contrast to underlying common issues of the defendant's liability"); *Stanich v. Travelers Indem. Co.*, 249 F.R.D. 506, 518-21 (N.D. Ohio 2008) ("Where there are uniform presentations of allegedly misleading information, or common omissions throughout the entire class, especially through form documents, courts have found that the element of reliance may be presumed class-wide, thereby obviating the need for an individualized inquiry of each class member's reliance."); *Mick v. Level Propane Gases, Inc.*, 203 F.R.D. 324, 331 (S.D. Ohio 2001) (concluding that whether defendant engaged in misleading and deceptive sales practice predominated over individualized issues of reliance, which could be "be sufficiently established by inference or presumption" when "a common fraud is perpetrated on a class of persons"); *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 666 (N.D. Ill. 1996) (certifying class because "[e]ven for the common law fraud claim, which requires proof of reliance, "[i]t is well established that individual issues of

*Mass. Mut. Life Ins. Co. v. Sup. Ct.*, 97 Cal. App. 4th 1282, 1293 (2002) (if plaintiffs succeed in proving allegations of a failure to disclose a material fact associated with the purchase of life insurance policies, "the purchases common to each class member would in turn be sufficient to give rise to the inference of common reliance on representations which were materially deficient"). In *In re U.S. Foodservice Inc. Pricing Litig.*, the Second Circuit upheld class certification involving fraudulent overbilling based on payment alone, approving of "circumstantial proof of reliance based on the reasonable inference that customers who pay the amount specified in an inflated invoice would not have done so absent reliance upon the invoice's implicit representation that the invoiced amount was honestly owed." 729 F.3d at 120.

**ii. Injury and Causation Do Not Bar Certification**

GE also argues that most states require proof of injury and causation, rehashing its "no common injury" argument.[28] But, as already discussed, GE fails to appreciate that the injury is the overpayment for a dangerously defective product that is worth less than the consumer paid. Regardless of whether a particular state's consumer protection law requires "injury in fact," "actual loss," "ascertainable loss," or "actual injury," class members satisfy injury and causation requirements—including in the alternative California,[29] Florida,[30] New York,[31] and Ohio[32]

---

reliance do not thwart class actions.").

[28] In doing so, GE cites to a Texas CLRA case that is wholly inapplicable given that Plaintiffs are not asserting a Texas CLRA claim or class.

[29] *Hall v. Time Inc.*, 70 Cal. Rptr. 3d 466, 471 (2008) (recognizing that the unsatisfactory nature of a product or its diminished value are injuries in fact under California law).

[30] *Collins v. DaimlerChrysler Corp.*, 894 So.2d 988, 990–91 (Fla. Dist. Ct. App. 2004) (holding that plaintiff possessed standing to assert statutory claim under FDUTPA for alleged economic damages based on latent seat belt defect and noting that "[i]n the context of FDUTPA, 'actual damage' have long been defined as the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.")

[31] *Stutman,* 731 N.E.2d at 611-13 (2000) ("[P]laintiffs allege that because of defendant's deceptive act, they were forced to pay a $275 fee that they had been led to believe was not required. In other words, plaintiffs allege that defendant's material deception caused them to suffer a $275 loss. This allegation satisfies the causation requirement. Plaintiffs need not additionally allege that they would not otherwise have entered into the transaction. Nothing more is required.").

[32] *Blumenthal v. Medina Supply Co.*, 743 N.E.2d 923 (Ohio Ct. App. 2000) (reversing decertification of class asserting OSCPA defective product claims and rejecting defendant's arguments that a multitude of factors outside its control could have caused or exacerbated defective concrete used for driveways); *Kelemen v. Williams*, No. 92AP-1205, 1993 WL 55171, at *4 (Ohio Ct. App. March 4, 1993) (reasoning that a "plaintiff need only prove 'some reasonable connection' between the act or omission and the damage suffered or prove that the conduct is a

classes.[33] *See* Ex. 2. And because this injury can be demonstrated through common proof, it weighs in favor of class certification. *See, e.g.*, *Cordes*, 502 F.3d at 107.

Similarly, the question of causation, which courts often refer to interchangeably with reliance and materiality in the consumer protection context, is an objective one that can be presumed from purchase where there is evidence of a uniform material omission.[34] "Because materiality is judged according to an objective standard, the materiality of [Defendant's] alleged misrepresentations and omissions is a question common to all members of the class [Plaintiffs] would represent. The alleged misrepresentations and omissions, whether material or immaterial, would be so equally for all." *Amgen*, 133 S. Ct. at 1191.

**iii. Scienter Does Not Bar Certification**

Finally, GE argues that "several states maintain different scienter standards," but this is misleading. Scienter focuses on the defendant's knowledge and conduct, meaning that the element is ripe for class treatment as it does not require an inquiry for each class member. *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 100 (D. Mass. 2008)

---

substantial factor in bringing about the injury in order to satisfy the requirement of proximate cause").

[33] *See also In re Ford Motor Co. E–350 Van Prods. Liab. Litig. (No. II)*, No. 03–4558, 2008 WL 4126264, at *24–25 (D.N.J. Sept. 2, 2008) (applying California law and finding that allegations of van's diminished value due to defect satisfy "injury in fact"); *In re Gen. Motors Type III Door Latch Litig.*, No. 98 C 5836, 2001 WL 103434, at *3 (N.D. Ill. Jan. 31, 2001) (noting that "[a]s a general rule, the Illinois Appellate Court has allowed product defect claims in the absence of product malfunction only when the damages claim stems from the diminished value of the defective product."); *Mayhall v. A.H. Pond Co.*, 341 N.W.2d 268, 271–72 (Mich. Ct. App. 1983) ("As the frustration of the plaintiff's expectations constitutes an injury for the purposes of proving common-law fraud, so too it constitutes a 'loss' under ... § 11 of the MCPA."); *Talalai v. Cooper Tire & Rubber Co.*, 823 A.2d 888, 898 (N.J. Super. Ct. 2001) (under New Jersey law, "plaintiffs need only demonstrate an ascertainable loss-namely, an estimate of the price to replace the [defective product]").

[34] *See, e.g.*, *Gasperoni*, 2000 WL 33365948, at *7 ("reliance and causation are satisfied by proof that plaintiffs purchased and consumed the product"); *Mass. Mut. Life Ins. Co.*, 97 Cal. App. 4th at 1292 ("[P]laintiffs in a CLRA action [must] show not only that a defendant's conduct was deceptive but that the deception caused them harm. . . . plaintiffs satisfy their burden of showing causation as to each by showing materiality as to all."); *Toback v. GNC Holdings, Inc.*, 13-80526-CIV, 2013 WL 5206103, at *3 (S.D. Fla. Sept. 13, 2013) ("Because Plaintiff has pleaded facts suggesting that the representations at issue would have deceived reasonable consumers . . . he has sufficiently alleged causation."); *In re ConAgra Foods, Inc.*, No. CV 11-05379 MMM, 2015 WL 1062756, at *46 (C.D. Cal. Feb. 23, 2015) ("[W]here the representation being challenged was made to all putative class members, Illinois courts have concluded that causation is susceptible of classwide proof and that individualized inquiries concerning causation do not predominate if plaintiffs are able to adduce sufficient evidence that the representation was material."); *Casavant v. Norwegian Cruise Line, Ltd.*, 919 N.E.2d 165, 169-70 (Mass. App. Ct. 2009) *aff'd*, 952 N.E.2d 908 (Mass. 2011) ("Materiality . . . is in a sense a proxy for causation.").

(finding that small variations with respect to scienter did not pose significant issues "in the context of plaintiff's theory in this case"). Accordingly, even where required,[35] intent may be demonstrated on a representative basis, making it appropriate for class treatment. And if the Court views this as a materially different element, it can address it though one additional jury instruction or exclude the states that require scienter from the subclass.

### 3. The Court Should Certify a Texas Implied Warranty Class

Because Plaintiffs have not alleged a Texas consumer protection act claim, Plaintiffs seek a class based on the breach of implied warranty under Texas law in order to provide relief to the Texas class. Plaintiffs suggest the court hold in abeyance all other warranty claims—both express and implied—for the remaining states. Texas courts applying Texas law have held that class certification is appropriate for implied warranty cases similar to the present case. The Fifth Circuit, for example, affirmed class certification of a Texas implied warranty claim in *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545 (5th Cir. 2003), a product defect case involving a motor home whose brakes were insufficient to tow loads heavier than 1,500 pounds. 320 F.3d at 546. The *McManus* court held that common issues predominated because the defect question is one "whose answer will not vary from plaintiff to plaintiff because the inquiry is focused on the time [the goods] left the manufacturer's or seller's possession." *Id.* at 552 (internal quotation marks omitted). The present case raises precisely the same central issues that the Fifth Circuit held were appropriate for class treatment. Here, as in *McManus*, Plaintiffs claim under Texas law that GE breached its implied warranty of merchantability because its 1090/1095 microwaves have a uniform defect that causes their glass doors to spontaneously explode, an occurrence that a reasonable customer would not expect. *See* 320 F.3d at 551-52; *see also Inman v.*

---

[35] While GE is correct that some states require a plaintiff to show that a defendant intended a consumer to rely on a misrepresentation or omission, these states make clear that this element is not akin to the scienter required to make out common law fraud and could be easily met here. *See, e.g.*, *Gasperoni*, 2000 WL 33365948, at *7; *Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 14-15 (Ill. App. Ct. 2001); *Fulkerson v. MHC Operating Ltd.*, No. CIV.A. 01C-07-020, 2002 WL 32067510, at *3 (Del. Super. Ct. Sept. 24, 2002) ("[C]ourts have interpreted the DCFA to require neither '[s]cienter, intent to induce action, reliance, [nor] damages.'"); *Kailin v. Armstrong*, 643 N.W.2d 132, 147 (Wis. Ct. App. 2002) ("[DTPA] does not require an intent to defraud, only an intent 'to sell . . . or . . . induce . . . to enter into any contract or obligation.").

*DaimlerChrysler Corp.*, No. 00-61082-3, 2002 WL 31952969, at *2-4 (Tex. County Ct. July 3, 2002) (certifying multistate class in case alleging that defendant's safety belt buckles were defective because common questions concerning the warranty claims predominated).

GE engages in the most cursory analysis of Plaintiffs' Texas implied warranty claim. First, GE incorrectly argues that Texas requires a defect to manifest in order to recover for breach of implied warranty. (Opp'n at 39.) The Fifth Circuit disagrees and rejected precisely this argument in *McManus* on the basis that breach of implied warranty is a contract cause of action, and therefore class members' "injury" is that they did not receive the benefit of their bargain. 320 F.3d at 552. Under this same reasoning, the elements of merchantability and causation likewise do not entail individual inquiries as they revolve around the same central issue.[36] *See, e.g.*, *Daffin*, 458 F.3d at 54 (affirming certification of warranty claims where allegedly defective products shared same design and distinguishing case from *Amchem*, 521 U.S. at 624, "in which different class members were exposed to different products such that the uncommon issue of causation predominated over the lesser shared issues"); *see also* Barkley Clark and Christopher Smith, *The Law of Product Warranties*, 1 The Law of Prod. Warranties § 5:5 (Westlaw) ("For a product to flunk the merchantability test, it must contain an inherent defect.").[37]

The notice element GE raises also does not pose an obstacle to certification. This Court has already held in the context of the Magnus-Moss Warranty Act's notice requirement that pre-suit notice is not required where, as here, Plaintiffs allege GE had knowledge of the defect:

> [P]re-suit notice is not required when the seller has actual knowledge of the alleged product defect at the time of the sale. Here, defendant is alleged to have known of the latent defect prior to plaintiffs' purchase of the microwave ovens; and therefore, defendant had ample opportunity to cure, thereby satisfying the underlying intent of [the notice requirement].

---

[36] To the extent consumers experienced manifestation of the defect, they may have suffered additional personal injury or consequential damages, but this is irrelevant for present purposes as Plaintiffs' proposed Rule 23(b)(3) class specifically excludes any damages that are not uniform to the class. *See* Ex. 1.

[37] GE's reliance on *Polaris Indus., Inc. v. McDonald*, 119 S.W.3d 331, 343 (Tex. App. 2003), is misplaced. The *Polaris* court found lack of predominance because the alleged defect in that case was visible to the naked eye and thus triggered an exception to the doctrine of implied warranty that necessarily required an individualized inquiry. *Id*. Here, by contrast, there is no need for the court to individually examine the state of mind of every class member because *no* class member could have known about the defect.

(Dkt. 103 at 9.) For the same reasons, pre-suit notice is likewise unnecessary for the Texas breach of implied warranty claim. Moreover, Texas's notice requirement is likely preempted by Rule 23. Other circuits have held that state pre-litigation notice requirements are procedural and thus not a relevant consideration in federal class certification proceedings because they "do not grant or deny a substantive right" as "the purpose of the . . . notice requirement is . . . to prevent a suit from even being filed (by encouraging the parties to reach an agreement extra-judicially)." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 346 (7th Cir. 1997). The same is true here as the Texas notice requirement is derived from the UCC, to which the official comment states that the express purpose of the UCC's notification provision is to "open[] the way for normal settlement through negotiation." U.C.C. § 2-313 (2010) at Official Comment 3. Moreover, it would defy logic to require absent class members to provide notice to GE of a defect that most class members do not know about *because* GE fraudulently concealed it.[38]

#### 4. GE's Affirmative Defenses Do Not Weigh Against 23(b)(3) Certification

It is black letter law that "variations of defenses and damages do not destroy predominance when liability may be determined on a class-wide basis." *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513, 522 (E.D. Mich. 2013); Newberg on Class Actions § 4:54 (5th ed.). GE's accord and satisfaction defense is a "mitigation defense" that goes to damages." *See, e.g.*, *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir. 2001), overruled on other grounds by *In re IPOs Securities Litig.*, 471 F.3d 24 (2d Cir. 2006), and superseded by statute on other grounds as stated in *Attenborough v. Const. and Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 100 (S.D.N.Y. 2006). It is thus not relevant to Plaintiffs' proposed Rule 23(b)(2) class or a liability-only class under Rule 23(c)(4). *See, e.g.*, *In re Whirlpool Corp. Front-Loading Washer Prods. Litig.*, 722 F.3d 838, 854 (6th Cir. 2013) ("No matter how individualized the

[38] In the class action context, moreover, this element goes to damages and is thus severable from the common liability issues. *See, e.g.*, *Metowski v. Traid Corp.*, 104 Cal. Rptr. 599, 604 (Cal. App. Ct. 1972) ("After liability is established, this element of timely notice by each plaintiff could be shown in order to assess his own individual collectible damages, but . . . that each class member might be required ultimately to justify an individual claim does not necessarily preclude maintenance of a class action.").

issue of damages may be, determination of damages may be reserved for individual treatment with the question of liability tried as a class action.”).

Nor does this defense stand in the way of certification of a damages class of purchasers as these damages are susceptible to common proof and not focused on manifestation. *See* Ex. 1. Moreover, it is “well established” in the Second Circuit that “‘the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification’ under Rule 23(b)(3).” *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). “[M]onetary damages commonly, but not inevitably, raise individual issues.” Newberg § 9:58 (4th Ed. 2010). As Judge Posner explained in *Butler v. Sears, Roebuck and Co.*:

> It would drive a stake through the heart of the class action device, in cases in which damages were sought . . . , to require that every member of the class have identical damages. If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification.

727 F.3d 796, 80 (7th Cir. 2013).

Nor do differences in the application of affirmative defenses, more generally, defeat class certification. *In re Visa Check*, 280 F.3d at 138 (“The fact that a defense ‘may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones.’”). “The general rule, regularly repeated by courts in many circuits, is that ‘[c]ourts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members.’” Newberg § 4:55 (5th ed.) (quoting *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003)). With respect to GE’s statute of limitations defense, in particular, “[c]ourts have been nearly unanimous . . . in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintif[fs], does not preclude certification of a class action so long as the necessary commonality and . . . predominance[] are otherwise present.” *Steinberg*, 224 F.R.D. 67, 78 (E.D.N.Y. 2004) (internal quotations omitted).

Here, GE’s statute of limitations defense actually weighs in favor of class certification

because Plaintiffs' allege fraudulent concealment. Equitable tolling doctrines are not based on what a particular plaintiff knew at any given time, but rather proof of the defendant's concealment, which rests on GE's uniform omissions and misrepresentations that will be demonstrated through class-wide proof. *See, e.g.*, *In re Linerboard Anti-Tr. Litig.*, 305 F.3d 145, 163 (3d Cir. 2002) (affirming class certification after finding "common issues of fraudulent concealment predominate" because "the inquiry necessarily focuses on defendants' conduct"); *see also Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 486 (C.D. Cal. 2012) ("Predominance is not defeated because the doctrines used by Plaintiffs for tolling the statute of limitations, such as the doctrine of fraudulent concealment, involve proof common to the defendants, namely, the act of concealing defendant's wrong."). "Courts have overwhelmingly held that . . . the common question of whether Defendants successfully concealed the existence of [Plaintiff's cause of action] predominates over any individual questions regarding the knowledge or diligence of individual plaintiffs." *In re NASDAQ Mkt.-Makers Anti-Tr. Litig.*, 169 F.R.D. 493, 520 (S.D.N.Y. 1996).

### C. Plaintiffs' Proposed Classes are Readily Ascertainable

Plaintiffs' Rule 23(b)(3) classes are readily ascertainable. First, the class definition is sufficiently definite such that class members are objectively identifiable. Second, the Second Circuit ***does not*** require that all class members be *identified* at the class certification stage—only that they be identifiable. GE's records, combined with normal forms of notice, are more than adequate. Third, the ascertainability requirement only applies to a Rule 23(b)(3) class. This Court may thus certify an equitable relief class under 23(b)(2) or a liability-only class under 23(c)(4) without regard to whether such classes are ascertainable.[39] In any event, because Plaintiffs tie

[39] "Both the Second Circuit and numerous district courts in the circuit have approved of class definitions without precise ascertainability under Rule 23(b)(2)." *Floyd v. City of N.Y.*, 283 F.R.D. 153, 171 (S.D.N.Y. 2012), (citing *Marisol v. Giuliani*, 126 F.3d 372 (2d Cir.1997) (certifying a class of children who "are or will be at risk of neglect or abuse and whose status is or should be known to" a City agency)); *see also Biediger v. Quinnipiac Univ.*, No. 09 Civ. 621, 2010 WL 2017773, at *7 (D. Conn. May 20, 2010) (certifying a class of all present and future female students who "want to end Quinnipiac University's sex discrimination" even though ascertaining who will be a future student and what these students will want is impossible); *Mental Disability Law Clinic v. Hogan*, No. 06 Civ. 6320, 2008 WL 4104460, at *18 (E.D.N.Y. Aug. 26, 2008) (certifying a class of "all

their damages to GE's sales records, which are static, GE's ascertainability objections fail. *Forcellati v. Hyland's, Inc.*, No. 12-1983, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014) ("Defendants have no cognizable interest in challenging class membership because its aggregate liability is tied to a concrete, objective set of facts—its total sales—that will remain the same no matter how many claims are submitted") (internal citations omitted).

GE functionally concedes that class members are identifiable through the use of objective criteria. Indeed, "whether or not an individual purchased [the product] during the class period . . . is about as objectively determinable a question as one can ask." *Ebin v. Kangadis Family Mgmt. LLC*, 45 F. Supp. 3d 395, 399 (S.D.N.Y. 2014). GE argues only that excluding non-household purchasers and persons who claim to have sustained personal injuries requires individualized inquiries. The weight of authority, however, has held otherwise. If GE was correct, consumer class actions would not exist because many state consumer protection acts use the same "for personal or household use" standard that Plaintiffs included in their class definition.[40] *See Yazzie v. Gurley Motor Co.*, No. CIV 14-555 JAP/SCY, 2015 WL 10818834, at *5 (D.N.M. Oct. 30, 2015). ("If . . . questions regarding each class member's reason for participating in a transaction predominated over shared questions of liability, few, if any, consumer protection class actions would ever be certified."). "The majority of courts to have considered this issue have concluded that factual questions related to personal use do not prevent the certification of consumer protection class actions." *Id*. at *5 (citing cases). GE's cited cases are unpersuasive. In *Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 861 (11th Cir. 2012), the court took issue with plaintiffs ***failure*** to include "for personal, family or household use" in the class definition because the Maryland consumer protection act does not apply to business transactions and the class definition was therefore over-inclusive.[41]

---

individuals who (1) suffer from mental illness" and explaining that "because only declaratory and injunctive relief is sought, individual assessments of disability need not be made"); *Finch v. N.Y. State Office of Children & Family Servs.*, 252 F.R.D. 192, 203 (S.D.N.Y. 2008) ("Rule 23(b)(2) classes need not be precisely defined").

[40] *See, e.g.*, Cal. Civ. Code § 1761(d) (2004); D.C. Code § 28–3901(a)(2) (2013); Mo. Ann. Stat. § 407.025(1) (Supp. 2002); Ohio Rev. Code Ann. § 1345.01(A) (2002); Wis. Stat. Ann. § 421.301(17) (Supp. 2004).

[41] *Johnson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573, 583 (E.D. Cal. 2012), is likewise unavailing.

Next, GE misunderstands Plaintiffs' exclusion of personal injury *claims* as an exclusion of *persons* who suffered personal injuries. Plaintiffs' exclusion, however, is routinely part of class definitions that are certified all the time. *See, e.g.*, *Gasperoni*, 2000 WL 33365948, at *4 ("If those people with individual personal injury claims . . . are specifically excluded from the definition of the class, there is no danger of the class waiving any individual claims of its members."); *Craft v. Phillip Morris Cos., Inc.*, No. 002-00406A, 2003 WL 23355745, at *13 (Mo. Cir. Ct. Dec. 31, 2003) (**"**[A]ll such claims for personal injury . . . could not realistically be included in this action, and are therefore specifically preserved."). The classes certified in *Whirlpool* and *Butler* had the same exclusion. Such exclusions are for the specific purpose of avoiding the concerns raised in the only case GE cites in this section of its brief, which rejected a personal injury class and is thus inapplicable here. *See Bostick v. St. Jude Med., Inc.*, No. 03-2636 BV, 2004 WL 3313614, at *16 (W.D. Tenn. Aug. 17, 2004).

The bulk of GE's ascertainability analysis is spent on the ability of the parties to identify class members. GE relies on *Brecher v. Republic of Arg.*, 806 F.3d 22 (2d Cir. 2015), to argue a strict ascertainability standard. But GE takes *Brecher* too far. *Brecher* merely holds that a class definition should be administratively feasible such that mini-hearings are not required to determine who is a member. Importantly, the Second Circuit was sure to note that, "'[i]dentifiable' does not mean 'identified'; ascertainability ***does not*** require a complete list of class members at the certification stage. *Id.* at 25 n.2 (emphasis added) (citing 1 McLaughlin on Class Actions § 4:2 (11th ed. 2014), for the proposition that "[t]he class need not be so finely described . . . that every potential member can be specifically identified at the commencement of the action; it is sufficient that the general parameters of membership are determinable at the

---

In that case, the plaintiffs conceded the argument and even then the court acknowledged that an individualized inquiry based on whether the consumer purchased the product for personal or household use was still not enough by itself to defeat class certification. *Arabian v. Sony Elecs., Inc.*, No. 05-CV-1741WQHNLS, 2007 WL 627977, at *14 (S.D. Cal. Feb. 22, 2007), makes a similar point—only that it can be an individualized question, not that it is enough to defeat class certification.

outset.”). The facts of this case distinguish it from *Brecher*.[42]

Here, the only criteria for membership is the purchase or ownership of a 1090/1095 microwave. Unlike a beneficial interest in bonds, the 1090/1095 microwaves are installed in people’s homes, bear a unique serial number, and thus are simply not the type of consumer product that courts have found raises ascertainability problems.[43] The ascertainability standard “is not a demanding one, but is designed only to prevent the certification of a class whose membership is truly indeterminable.” *Kaye v. Amicus Mediation & Arb. Grp., Inc.*, 300 F.R.D. 67, 77 (D. Conn. 2014). Indeed, *Brecher* cited favorably *Ebin v. Kangadis Food Inc.*, 297 F.R.D 561, 567 (S.D. N.Y. 2014), which found that a class of olive oil purchasers was ascertainable where the class members could submit either receipts, product containers or sworn affidavits. And self-identification in this case is far more reliable than it was in *Ebin*.

Although GE downplays its own records available to identify class members, GE acknowledges that it has warranty cards for 18% of purchasers, as well as contact information for approximately 7,500 purchasers. And this latter figure only includes consumers who contacted GE about door breakage—there are likely thousands more who contacted GE about other problems with their 1090/1095 microwaves that fall within the putative class. Not surprisingly, GE does not disclose this figure to the Court. In *Pella*, the defendant made similar arguments, and the court flatly rejected them, holding that even if Pella’s own warranty records were insufficient, “provision of notice can supplement class identification efforts . . . Plaintiffs’ proposal that notice be made by publication, television and news media, and the Internet is adequate in these circumstances to identify the class members.” 257 F.R.D. at 476.[44] The same is

---

[42] *Brecher* held that the class definition was not sufficiently definite because there was no defined class period or temporal requirement, and the “unique features of bonds” made it difficult to determine who belonged in the class and who did not. *Id.* at 25-26.

[43] For this reason, the class is also far more ascertainable than the typical consumer class action, which often involves the purchase of a forgettable low-cost item, which does not always contain a uniform defect. Here, every microwave contained an identical design defect, making self-identification viable. *See generally Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 66 (E.D.N.Y 2015.), *reconsideration denied*, 140 F. Supp. 3d 241 (E.D.N.Y. 2015) (discussing why the class was ascertainable when there was only one product at issue and it was labelled in a uniform manner throughout the class period).

[44] *See also In re Warfarin Sodium Anti-Tr. Litig.*, 391 F.3d 516, 536–537 (3d Cir. 2004) (where class members were

true here. The cases cited by GE are all off point.[45] To accept GE's arguments would be contrary to the Second Circuit's instruction that the ascertainability requirement should not be applied so rigorously as to make consumer class actions impossible to bring. *See Ault v. J.M. Smucker Co.*, No. 13 Civ. 3409 (PAC), 2015 WL 4692454, at *5 (S.D.N.Y. Aug. 6, 2015). The "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and 'should be the exception rather than the rule.'" *In re Visa Check*, 280 F.3d at 140.

### D. Plaintiffs are Adequate Class Representatives

#### 1. Plaintiffs Harris and Mequet are Not Outside the Proposed Classes

Plaintiffs Harris and Mequet fall within Plaintiffs' proposed classes because they are current owners and purchasers of 1090/1095 microwaves by virtue of paying value for them, even if second-hand. Moreover, if this Court were to certify a nationwide 23(b)(2) class and a 23(b)(3) Consumer Protection Law Subclass, only one named Plaintiff would be needed to represent these classes, and GE does not raise any objections to Plaintiff Grayson. Without citing to any case law, GE raises a manageability issue with having multiple class members staking claim to the same microwave and leading to conflicting interests within the proposed classes.

---

consumers of a prescription drug and names and addresses of these consumers were confidential, notice by publication combined with call center and website was sufficient notice to identify class members); *Bowerman v. Field Asset Servs., Inc.*, No. 13-CV-00057-WHO, 2015 WL 1321883, at *8 (N.D. Cal. Mar. 24, 2015) ("That the class may have to be ascertained through a combination of evidentiary sources does not necessarily mean that ascertaining it is administratively infeasible."); *Macarz v. Transworld Sys., Inc.*, 201 F.R.D. 54, 59 (D. Conn. 2001) (notice by publication used where circumstances "make it impracticable to gain the names and addresses of class members and notify them individually of the action's pendency"); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (Internet notice of settlement was acceptable substitute for individual notice where defendant had no record of part of a class of customers.).

[45] GE relies on *Stark*, but *Stark* was decided on very specific facts. In *Stark*, the class excluded individuals with a warranty that covered labor and refrigerant. The court was concerned that it would be difficult to determine which potential class members had such warranties and that ordinary notice would likely be ineffective because the defect at issue was in the copper evaporator coils in a HVAC unit. By contrast, here, ordinary notice remains an effective tool to identify class members because most consumers are aware of, or able to easily verify, the brand and model number of their microwave. Likewise, *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011), has no bearing here. In that case 1) the class definition itself was subjective and 2) the defendant's database only indicated who participated in a rewards program; it did not identify who smoked 20-pack years' worth of Marlboro cigarettes (the requirement for class membership). By contrast, here, Plaintiffs' class can be objectively verified. And unlike a promotional program that has no relation to the class definition, GE's records provide a relevant starting point for disseminating notice to the class. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 359 (4th Cir. 2014), is similarly inapposite. In that case, the court held that determining ownership of a gas estate became too complicated because "numerous heirship, intestacy, and title-defect issues plague many of the potential class members' claims to the gas estate." The same idiosyncratic problems do not exist here.

However, Plaintiffs present an aggregate damages model based on the total number of 1090/1095 microwaves sold in each relevant state, which, if GE is found liable, would approximate the relief owed to the class. That is all that is required.[46]

### 2. Harris is Not Only an Adequate, But an Exemplary Representative

GE's suggestion that Ms. Harris is an inadequate representative is based on a handful of cherry-picked quotes from her deposition that unfairly mischaracterize her knowledge of and involvement in this case. "The Supreme Court . . . has expressly disapproved of attacks on the adequacy of a class representative based on the representative's" purported "ignorance." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000). Class representatives need only demonstrate a "minimal familiarity with the litigation . . . [A] detailed understanding of the theories and facts of the case is not required." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008). Plaintiff Harris more than qualifies under this standard.

She is fully committed to this case and has been a diligent representative thus far.[47] Her motive for participating in this case is to protect other families from suffering similar incidents: "[i]f there was any defective glass or any defective manufacturing, I just feel like if I just tell my story that could potentially, prevent another family from going through this and maybe not having injury . . . I feel like I dodged a bullet on this one, literally." (Ex. 3 at 48:11-48:20, 60:25-61:6.) And her participation has been exemplary. She researched counsel-of-record (*id*. at 58:23-59:59:18), oversaw the transport of her microwave for the parties' experts to inspect, (*id*. at 76), and promptly produced documents and answered interrogatories, (*see, e.g.*, *id*. at 85). She then

---

[46] Plaintiffs can rely on estimated aggregate damages for the class as a whole provided they "roughly reflect the aggregate amount owed to class members." *Hickory Sec. Ltd. v. Rep. of Arg.*, 493 F. App'x. 156, 159 (2d Cir. 2012) (citations omitted); *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 197–98 (1st Cir. 2009) ("The use of aggregate damages calculations is well established in federal court and implied by the very existence of the class action mechanism itself."). And GE has no due process right at all in the allocation of damages among class members. *Forcellati*, 2014 WL 1410264 at *5-6; *Hilao v. Est. of Marcos*, 103 F.3d 767, 786 (9th Cir.1996) (noting that a defendant's interest is "only in the total amount of damages for which it will be liable," not "the identities of those receiving damage awards").

[47] By way of background, Ms. Harris's 1090/1095 microwave spontaneously shattered and exploded outward, covering her four-year-old son with shards of glass as he was sitting opposite the microwave while she was making lunch for him, which terrified them both. (Ex. 3 at 35:10-41, 48:11-48:20, 60:25-61:6.)

prepared for and sat for a half-day deposition, during which she discussed the incident and related documentary evidence at length, clearly displaying good recollection of the events and commitment to the prosecution of this lawsuit. (*Id*. at 7:4-8:6.)

When asked why she felt she would be an appropriate class representative, she testified that she "was there when the microwave exploded, so I have knowledge of that experience, and I have time to be supportive of whatever needs [counsel has]." (*Id*. at 61:13-61:21.) She further testified that she reviewed Plaintiffs' filings in this case and would be able to attend trial even if it lasted a few weeks. (*Id*. at 62:1-62:20, 64:15-64:19.) She also testified that she understood a class action lawsuit is brought by "[a] group of individuals that have the same experiences, wrongful doing of some sort" and that as a representative of this group, she understood her duties and obligations to include "collaborat[ing] with counsel and provid[ing] them information and help[ing] them with whatever information they need from me." (*Id*. at 60.)

Even GE's cases prove that Harris far exceeds the low bar courts impose for adequacy.[48] In *In re AEP ERISA Litig.,* No. C2-03-67, 2008 WL 4210352, at *3 (S.D. Ohio Sept. 8, 2008), for example, the named plaintiff testified he had not provided his lawyers with any documents relating to his claims, had since discarded all documents, had not received any status updates on the case from his lawyers, was unaware of any rulings in the case, and had never reviewed the complaint or received a copy of it. In fact, when presented with the complaint at deposition, he had no idea who had drafted it, and when asked to read it, he refused to read more than the first 2-3 pages, stating, "I ain't got time" and "I'm too old." *Id.* The court thus found that the named plaintiff was not only unaware of what was happening in the case, he was unwilling to put in the effort to become aware. *Id*. The rest of GE's cases are equally extreme.[49]

---

[48] GE quotes a fragment from *Rosario v. Valentine Ave. Disc. Store, Co.*, No. 10 CV 5255, 2013 WL 2395288, at *7 (E.D.N.Y. May 31, 2013), but the full sentence acknowledges that class certification is denied on adequacy grounds only in "flagrant cases," "where the putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case." That is hardly the case with Ms. Harris. And the *Rosario* court ultimately held the named plaintiff *was* adequate.

[49] *See Scott v. N.Y.C Dist. Council of Carpenters Pension Plan*, 224 F.R.D. 353, 356 (S.D.N.Y. 2004) (neither plaintiff knew they were class representatives or knew what a class action was, and one plaintiff was ailing and

### 3. Plaintiff Mazzanti is Typical of the Class

In arguing that Plaintiff Mazzanti is not a typical class member, GE misconstrues the testimony of Ms. Mazzanti and Plaintiffs' expert to speculate that the glass shattering she experienced may not have resulted from the alleged design defect because her inner glass door may also have broken. Ms. Mazzanti, however, testified that her outer door glass shattered outward. (Ex. 10 at 62:14-62:21). Plaintiffs' expert testified only that the defect causes the outer door glass to shatter, not that the simultaneous shattering of the inner door would rule out the defect as a cause of one or both. (Ex. 11 at 119:2-120:13.) GE thus raises what is nothing more than a possible minor and immaterial fact that goes to the merits of this case, which is inappropriate at the class certification stage, and is factually incorrect.

It is also irrelevant. Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Mahon v. Chi. Title Ins. Co.*, 296 F.R.D. 63, 74 (D. Conn). That is the case here, in which GE's own conduct and knowledge is the focus and was not materially different with respect to Ms. Mazzanti. Plaintiffs' expert has opined that all 1090/1095s, including the one purchased by Ms. Mazzanti, contain the same inherent design defect, which GE concealed, including from Ms. Mazzanti. She is thus typical of the class.

### 4. GE's Affirmative Defenses are Not a Bar to Class Certification

---

unable to participate in the case); *In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 149 (N.D. Tex. 2014) (named plaintiff was unfamiliar with her own declaration, did not recognize the name of certain defendants, and refused to travel to the mediation); *Darvin v. Int'l Harvester Co.*, 610 F. Supp. 255, 257 (S.D.N.Y. 1985) (named plaintiff had failed to comply with reasonable discovery requests and had serious credibility issues that "could become the focus of cross examination and unique defenses at trial, to the detriment of the class"); *Bodner v. Oreck Direct, LLC*, No. C 06-4756 MHP, 2007 WL 1223777, at *2 (N.D. Cal. Apr. 25, 2007) (class counsel had a history of being disqualified from lawsuits on the basis of improper relationships with class representatives); *Jones v. CBE Grp., Inc.*, 215 F.R.D. 558, 568 (D. Minn. 2003) (named plaintiff's deposition responses were "contradictory and often nonsensical.").

GE asserts that its affirmative defenses against certain Plaintiffs bar certification. But, as discussed in Section II.B.4 above, affirmative defenses rarely affect class certification. And potential defenses defeat typicality only where there is (1) “a sufficiently clear showing,” (2) “that a defense unique to the representative plaintiff's claims,” (3) “will in fact defeat those claims.” *Floyd*, 283 F.R.D. at 176.[50] GE does not come close to satisfying this test. The unique defense rule “is not meant to protect defendants by permitting them to defeat certification because the facts raised by the claims of the representative plaintiffs are not identical to the facts raised by the claims of all putative class members.” *Id.*

GE first argues that its affirmative privity defense bars certification of Plaintiff Harris’s express and implied warranty claims. But Harris only asserts an express warranty claim under Florida law, which this Court already refused to dismiss on privity grounds. (Dkt. 150 at 6-7; *see also* Dkt. 123 at 6-7.) This defense is thus not supported by a “sufficiently clear showing.” GE, moreover, asserts that “many of the [1090/1095] microwaves were purchased by homebuilders for resale to consumers” and “many class members” are second-hand purchasers. (Opp’n at 15, 19.) Consequently, GE’s privity defense has broader applicability to the class as a whole and thus is not “unique” to Plaintiff Harris. Where, as here, a defense is common across class members, “by definition, therefore, [the] defense will not defeat typicality.” Newberg § 3:45 (5th ed.). Regardless, Plaintiffs are asking the Court to hold in abeyance certification of Plaintiffs’ express warranty claims at this time. Accordingly, the Court need not consider this issue now.

GE next complains about Plaintiffs’ purported disposal of “evidence” that none of the Plaintiffs had a duty to preserve and which GE had the prior opportunity to inspect. GE tries to misconstrue Ms. Mazzanti’s testimony which clearly establishes that she disposed of her microwave *before* her first contact with counsel and thus prior to the filing or even contemplation of the instant lawsuit. (Ex. 10 at 110:2-110:9.) Ms. Mazzanti thus had no duty to

---

[50] *See also Ligon v. City of N.Y.*, 288 F.R.D. 72, 82-83 (S.D.N.Y. 2013); *In re Omnicom Grp., Inc. Sec. Litig.*, No. 02 CIV. 4483 (RCC), 2007 WL 1280640, at *4 (S.D.N.Y. Apr. 30, 2007); Newberg § 3:45 (5th ed.) (“A unique defense will render the proposed class representative’s claims atypical only if it is likely to be a ‘major focus’ of the litigation and not if it is insignificant or improbable.”).

preserve her microwave at the time of disposal and surely did not intentionally destroy evidence. *See, e.g.*, *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001). And, in fact, Ms. Mazzanti contacted GE back in 2009 when the glass shattering incident first occurred. That GE decided to forego the opportunity to look into the matter further at that time is not something that can or should be held against Plaintiffs four years later.[51]

GE likewise misstates the record with respect to Plaintiff Mequet, claiming that he spoiled evidence when he traded in his cell phone with pictures of his broken microwave. (Opp'n at 30.) The parties' ESI Protocol makes clear, however, that Mr. Mequet did not have an obligation to preserve, review, and/or produce "[i]nformation from smartphones or other mobile devices." (Dkt. 80 at 4.) Moreover, Plaintiffs reviewed and produced voluminous pictures and emails from Mr. Mequet's files, and GE's expert inspected his microwave in his home where it shattered. GE's expert likewise inspected Mr. Levy's microwave, for which Plaintiffs similarly produced a number of photographs. And the shards of broken glass about which GE claims foul were thrown away by Mr. Levy two days <u>after</u> he first contacted GE and <u>before</u> the filing of this lawsuit or even his signing of a retention agreement.[52] Mr. Levy thus also did not have any duty to preserve evidence at the time he disposed of this glass.

### E. Plaintiffs Have Standing

GE argues that class members' whose microwaves have not yet shattered do not have standing. (Opp'n at 21, 39.) But GE's argument is speculative, factually incorrect, and irrelevant. "[C]ourts in nearly every circuit have held that the standing issue focuses on whether the class representative (or named plaintiff) is properly before the court, not whether represented parties or absent class members are properly before the court." Newberg § 2:3 (5th ed.). The Second

---

[51] The cases cited by GE are not factually analogous. Unlike in *Doyle v. Chrysler Grp. LLC,* No. SACV 13-00620 JVS, 2014 WL 7690155, at *10 (C.D. Cal. Oct. 9, 2014), GE had an opportunity to inspect every named Plaintiffs' microwave. *See also Indemnity Ins. Co. of N. Am. v. Liebert Corp.*, No. 96 Civ. 6675(DC), 1998 WL 363834 (S.D.N.Y. June 29, 1998) (denying spoliation sanction where defendant had opportunity to inspect evidence prior to destruction).

[52] *See* Mot. at Ex. F1 (showing contact with GE on same day of incident, April 28, 2015); Ex. 12, Deposition of Daniel Levy, at 103:9-103:17 (testifying that he threw out broken glass on the Thursday after incident occurred, April 30, 2015); 91:25-92:3 (testifying that he signed retention agreement on May 1, 2015).

Circuit has explained, "[w]e do not require that each member of a class submit evidence of personal standing." *Denney v. Deutsche Bk. AG*, 443 F.3d 253, 263 (2d Cir. 2006). "A class will often include persons who have not been injured by the defendant's conduct; indeed this is almost inevitable because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown. Such a possibility or indeed inevitability does not preclude class certification." *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009); *see also Pella*, 606 F.3d at 394. Named plaintiffs need only "allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Doe v. Blum*, 729 F.2d 186, 190 (2d Cir. 1984).

Moreover, all putative class members have suffered an injury, whether by virtue of the purchase of and thus overpayment for a defective microwave (for the purchaser class) or the exposure to a safety risk as a result of GE's fraudulent concealment (for the owner class).[53] Indeed, courts routinely certify product liability class actions where only some class members experienced manifestation of a defect.[54] On appeal in *Whirlpool*, for example, the defendant argued that only 0.32% of consumers experienced mold problems. *Glazer v. Whirlpool Corp.*, Case No. 10-4188, Document 006110789731 (Brief of Petitioner-Appellant) at pp. 24 (Nov. 15, 2010). In affirming class certification, however, the Sixth Circuit held that the failure rate went

---

[53] *See, e.g.*, *Denney*, 443 F.3d at 264–65 ("An injury-in-fact may simply be the fear or anxiety of future harm. For example, exposure to toxic or harmful substances has been held sufficient to satisfy the Article III injury-in-fact requirement even without physical symptoms of injury caused by the exposure, and even though exposure alone may not provide sufficient ground for a claim under state tort law."); *In re Agent Orange Prod. Liab. Litig.*, 996 F.2d 1425, 1434 (2d Cir. 1993) (rejecting argument that "injury in fact means injury that is manifest, diagnosable or compensable"); Wright, Miller & Kane, supra, § 1785.1 ("[T]his requisite of an injury is not applied too restrictively. If plaintiff can show that there is a possibility that defendant's conduct may have a future effect, even if injury has not yet occurred, the court may hold that standing has been satisfied.").

[54] *See, e.g.*, *Whirlpool*, 722 F.3d at 855; *Daffin*, 458 F.3d at 550; *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) (rejecting district court's conclusion that certification was inappropriate because plaintiffs had not "prove[n] that the defect manifested in a majority of class's vehicles," explaining "proof of the manifestation of a defect is not a prerequisite to class certification"); *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011) (same); *Pella*, 257 F.R.D. at 481 ("If Plaintiffs' claims are true, then all class members have suffered the injury of being sold defective windows—windows whose value has diminished due to the defect."); *Hicks v. Kaffman*, 89 Cal. App. 4th 908, 923, n.54 (2001) (trial court erroneously limited warranty claims to potential class members with homes in which a product "failed" and caused "manifest damage").

to the merits of whether Whirlpool's washing machines were defective, but did not affect class certification. *Whirlpool*, 722 F.3d at 857.

The cases GE cites in support are thus off point. (Opp'n at 21-24.) Specifically, GE cites Judge Roberts's concurring opinion in *Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036 (2016). The majority in *Tyson* foods, however, explicitly declined to rule on the question of whether uninjured class members may recover in a class action. 136 S. Ct. at 1049-50 ("[T]he question whether uninjured class members may recover is one of great importance. It is not, however, a question yet fairly presented by this case[.]") And the Court held that representative evidence was sufficient to prove class-wide liability and injury. *Id.* at 1047. ("Rather than absolving the employees from proving individual injury, the representative evidence here was a permissible means of making that very showing."). The rest of GE's cases similarly fall short.[55]

Dated: August 19, 2016

Respectfully submitted,

\s\ Anna C. Haac
Hassan A. Zavareei (phv04346)
Anna C. Haac (phv06576)
**TYCKO & ZAVAREEI LLP**
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
(202) 973-0900
(202) 973-0950 *facsimile*

[55] Most of GE's cited cases take issue with the class definition being overbroad. *See, e.g., Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1152 (N.D. Cal. 2010) (class definition was not ascertainable because it included all individuals who ever *used* a Sleep Number Bed, rather than just *owners* of a Sleep Number Bed); *Walewski*, 502 F. App'x at 861 (class definition was not narrowly tailored enough in that it impermissibly included individuals who bought the product ***not*** for personal, family, or household purposes); *Hovsepian v. Apple, Inc.*, No. 08-5788 JF (PVT), 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009) (class definition wrongly included individuals who did not purchase the particular product that plaintiff alleged was defective); *Kempner v. Town of Greenwich*, 249 F.R.D. 15, 18 (D. Conn. 2008) (class definition poorly worded and overbroad, but court acknowledged it could be modified, although numerosity would then not be met.); *Edwards v. Zenimax Media Inc.*, No. 12-CV-00411-WYD-KLM, 2012 WL 4378219, at *5 (D. Colo. Sept. 25, 2012) (the wording of the class definition meant that individuals were included in the class even if they never experienced the defect ***or*** the decreased secondary market value). GE's other cases took issue with the fact that the class included individuals who were not exposed to the purported misrepresentation, which is not the case here as every class member was exposed to a defective product. *See, e.g., Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (in misrepresentation case, holding many class members may not have been injured because many people bought Diet Coke knowing it contained Saccharin); *Loreto v. Procter & Gamble Co.*, No. 1:09-CV-815, 2013 WL 6055401, at *4 (S.D. Ohio Nov. 15, 2013) (many class members not exposed to the purported misrepresentations).

hzavareei@tzlegal.com
ahaac@tzlegal.com

Robert A. Izard (ct01601)
Seth R. Klein (ct18121)
**IZARD KINDALL & RAABE LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
(860) 493-6202
mkindall@izardnobel.com
rizard@izardnobel.com
sklein@izardnobel.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2016, a redacted copy of the foregoing, as well as the non-confidential portions of the exhibits cited therein, were filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

I also hereby certify that on August 19, 2016, an unredacted copy of the foregoing, as well as the exhibits cited therein, were filed under seal and served via electronic mail and/or overnight delivery upon all ECF recipients.

/s/ Anna C. Haac

Anna C. Haac (phv06576)
TYCKO & ZAVAREEI, LLP
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
(202) 973-0900
(202) 973-0950 *facsimile*
ahaac@tzlegal.com

*Attorneys for Plaintiffs*