**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| GLEN GRAYSON and DOREEN MAZZANTI, individually and on behalf of themselves and all others similarly situated, | Case No. 3:13-cv-01799 (WWE) |
| Plaintiffs, | (JURY TRIAL DEMANDED) |
| v. | ORAL ARGUMENT REQUESTED |
| GENERAL ELECTRIC COMPANY, | |
| Defendant. | February 2, 2017 |

**PLAINTIFFS' SURREPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

**UNREDACTED VERSION FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........................................ iii

INDEX OF EXHIBITS ........................................ viii

1. Plaintiffs Have Adequately Demonstrated Standing ........................................ 3

2. Ascertainability Does Not Bar Certification ........................................ 6

   a. Class Members Can Easily Be Identified Using Traditional Methods Routinely Employed by Courts Across the Country in Class Action Cases .... 6

   b. Ascertainability Does Not Bar a Rule 23(b)(2) or (c)(4) Class ........................................ 12

3. Common Issues Plainly Predominate Here ........................................ 13

4. Plaintiffs are Typical and More than Adequate Class Representatives ........................................ 18

5. Certification under Rule 23(b)(2) is Appropriate ........................................ 18

   a. The Equitable Relief Plaintiffs Seek for their Proposed Rule 23(b)(2) Class is Separate and Distinct from Monetary Damages ........................................ 19

   b. Certification of a Rule 23(b)(2) Class Would Provide All Current Owners with Important Relief ........................................ 21

   c. Declaratory Relief is Appropriate ........................................ 22

   d. Class Certification Does Not Pose a Risk of Double Recovery ........................................ 22

6. GE's Argument Against Certifying the Texas Implied Warranty Subclass Has Been Rejected by the Fifth Circuit ........................................ 23

7. Conclusion ........................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Coca-Cola Co.*,
No. 09 CV 395 DLI RML, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) .............................. 12

*Ajose v. Interline Brands, Inc.*,
187 F. Supp. 3d 899 (M.D. Tenn. 2016) .............................................................................. 20

*Allapattah Servs., Inc. v. Exxon Corp.*,
333 F.3d 1248 (11th Cir. 2003), *aff'd*, 545 U.S. 546 (2005) ..................................................... 8

*Am. Timber & Trading Co. v. First Nat. Bank of Or.*,
690 F.2d 781 (9th Cir. 1982) .......................................................................................... 17, 18

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........................................................................................................... 16

*Beck-Ellman v. Kaz USA, Inc.*,
283 F.R.D. 558 (S.D. Cal. 2012) ........................................................................................ 11

*Belfiore v. Procter & Gamble Co.*,
311 F.R.D. 29 (E.D.N.Y 2015.), *recons. denied*, 140 F. Supp. 3d 241 (E.D.N.Y. 2015) .......... 9

*Bietsch v. Sergeant's Pet Care Prods., Inc.*,
No. 15 C 5432, 2016 WL 1011512 (N.D. Ill. Mar. 15, 2016) .......................................... 20, 22

*Brecher v. Republic of Arg.*,
806 F.3d 22 (2d Cir. 2015) ................................................................................................ 6, 7, 9

*Briehl v. Gen. Motors Corp.*,
172 F.3d 623 (8th Cir. 1999) .............................................................................................. 24

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ....................................................................................... *passim*

*Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*,
290 F.R.D. 409 (S.D.N.Y. 2012) ........................................................................................ 13

*Butler v. Sears, Roebuck & Co.*,
702 F.3d 359 (7th Cir. 2012) ................................................................................................ 6

*Byrd v. Aaron's Inc.*,
784 F.3d 154 (3rd Cir. 2015) .............................................................................................. 10

*Castro Valley Union 76, Inc. v. Vapor Sys. Techs., Inc.*,
No. C 11-0299 PJH, 2012 WL 5199458 (N.D. Cal. Oct. 22, 2012) ....................................... 21

*Cesale v. Kelly*,
257 F.R.D. 396 (S.D.N.Y. 2009) ........................................................................................ 18

*Denney v. Deutsche Bk. AG*,
443 F.3d 253 (2d Cir. 2006) .................................................................................................. 3

*Ebin v. Kangadis Food Inc.*,
297 F.R.D 561 (S.D.N.Y. 2014) ............................................................................................ 9

*Enriquez v. Cherry Hill Mkt. Corp.*,
993 F. Supp. 2d 229 (E.D.N.Y. 2014) .......... 14

*Fabricant v. Sears Roebuck*,
202 F.R.D. 310 (S.D. Fla. 2001) .......... 22

*Fisher v. Ciba Specialty Chems. Corp.*,
238 F.R.D. 273 (S.D. Ala. 2006) .......... 10

*Floyd v. City of N.Y.*,
283 F.R.D. 153 (S.D.N.Y. 2012) .......... 13

*Gates v. Rohm & Haas Co.*,
655 F.3d 255 (3rd Cir. 2011) .......... 14, 15

*Gibbs v. E.I. DuPont De Nemours & Co.*,
876 F. Supp. 475 (W.D.N.Y. 1995) .......... 13

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
317 F.R.D. 374 (S.D.N.Y. 2016) .......... 19

*Hilao v. Estate of Marcos*,
103 F.3d 767 (9th Cir. 1996) .......... 8

*Hofstetter v. Chase Home Fin., LLC*,
No. C 10-01313 WHA, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011) .......... 22

*Hughes v. Ester C Co.*,
317 F.R.D. 333 (E.D.N.Y. 2016) .......... 13

*Hughes v. Kore of Ind. Enter., Inc.*,
731 F.3d 672 (7th Cir. 2013) .......... 9

*In re Canon Cameras*,
237 F.R.D. 357 (S.D.N.Y. 2006) .......... 24

*In re Cordis Corp. Pacemaker Prods. Liab. Litig.*,
No. C-3-86-543, 1992 WL 754061 (S.D. Ohio Dec. 23, 1992) .......... 21

*In re Gen. Motors Type III Door Latch Litig.*,
Nos. 98-C-5836, MDL No. 1266, 2001 WL 103434 (N.D. Ill. Jan. 31, 2001) .......... 24

*In re Motor Fuel Temperature Sales Practices Litig.*,
279 F.R.D. 598 (D. Kan. 2012) .......... 19

*In re Nassau Cty. Strip Search Cases*,
461 F.3d 219 (2d Cir. 2006) .......... 16

*In re Pharm. Indus. Average Wholesale Price Litig.*,
582 F.3d 156 (1st Cir. 2009) .......... 7

*In re Scotts EZ Seed Litig.*,
304 F.R.D. 397 (S.D.N.Y. 2015) .......... 9

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prod. Liab. Litig.*,
No. 11-57006 (9th Cir. Mar. 2, 2012) .......... 4

*In re Urethane Antitrust Litig.*,
768 F.3d 1245 (10th Cir. 2014) ........................................................................ 7

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001)................................................................................ 7

*Inman v. DaimlerChrysler Corp.*,
No. 00-61082-3, 2002 WL 31952969 (Tex. Co. Ct. July 3, 2002)........................................ 25

*Jacob v. Duane Reade, Inc.*,
293 F.R.D. 578 (S.D.N.Y. 2013), *aff'd*, 602 F. App'x 3 (2d Cir. 2015) ................................ 16

*Juris v. Inamed Corp.*,
685 F.3d 1294 (11th Cir. 2012) ........................................................................ 9

*Kartman v. State Farm Mut. Auto. Ins. Co.*,
634 F.3d 883 (7th Cir. 2011) .......................................................................... 20

*Keilholtz v. Lennox Hearth Prod. Inc.*,
268 F.R.D. 330 (N.D. Cal. 2010)........................................................................ 10

*LaBauve v. Olin Corp.*,
231 F.R.D. 632 (S.D. Ala. 2005) ........................................................................ 9

*McGee v. Pallito*,
No. 1:04-CV-00335-JGM, 2015 WL 5177770 (D. Vt. Sept. 4, 2015) .................................... 12

*McLaughlin v. Am. Tobacco Co.*,
522 F.3d 215 (2d Cir. 2008)............................................................................. 15

*McManus v. Fleetwood Enters., Inc.*,
320 F.3d 545 (5th Cir. 2003) ..................................................................... 23, 24

*Microsoft Corp. v. Manning*,
914 S.W.2d 602 (Tex. App. 1995)...................................................................... 24

*Morangelli v. Chemed Corp.*,
275 F.R.D. 99 (E.D.N.Y. 2011), *amended on recons.* (July 8, 2011)...................................... 16

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) ........................................................................ 7, 12

*O'Donovan v. CashCall, Inc.*,
278 F.R.D. 479 (N.D. Cal. 2011)........................................................................ 11

*Pella Corp. v. Saltzman*,
606 F.3d 391 (7th Cir. 2010) .......................................................................... 20

*Perez v. Metabolife Int'l, Inc.*,
218 F.R.D. 262 (S.D. Fla. 2003)........................................................................ 10

*Polaris Indus., Inc. v. McDonald*,
119 S.W.3d 331 (Tex. App. 2003)...................................................................... 24

*Seekamp v. It's Huge, Inc.*,
No. 1:09-CV-00018 LEK DRH, 2012 WL 860364 (N.D.N.Y. Mar. 13, 2012)....................... 19

*Shelton v. Beldsoe*,
775 F.3d 554 (3rd Cir. 2015) ..................................................................................... 12

*Shook v. El Paso Cty.*,
386 F.3d 963 (10th Cir. 2004) ..................................................................................... 12

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) ..................................................................................... 8

*Stinson v. City of N.Y.*,
282 F.R.D. 360 (S.D.N.Y. 2012) ..................................................................................... 13

*Strouchler v. Shah*,
286 F.R.D. 244 (S.D.N.Y. 2012) ..................................................................................... 12

*Wal–Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011).....................................................................................................19

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
678 F.3d 409 (6th Cir. 2012)..................................................................................... 6

*Yaffe v. Powers*,
454 F.2d 1362 (1st Cir. 1972)..................................................................................... 12

*Yazzie v. Gurley Motor Co.*,
No. CIV 14-555 JAP/SCY, 2015 WL 10818834 (D.N.M. Oct. 30, 2015).............................. 11

*Young v. Nationwide Mut. Ins. Co.*,
693 F.3d 532 (6th Cir. 2012) ..................................................................................... 10

**Other Authorities**

An Update on the Takata Airbag Ruptures and Recalls,
House Committee on Energy and Commerce Subcommittee on Commerce,
Manufacturing, and Trade Cong., 2 (2015) (testimony of Kevin M. Kennedy)........................ 5

Annys Shin, *Auto reliability ratings might not be reliable with problems such as Toyota's*,
Wash. Post (Feb. 6, 2010), *available at* http://www.washingtonpost.com/wp-dyn/content/article/2010/02/05/AR2010020504247.html ........................................................ 5

Chris Isidore & Evan Perez, *GM CEO*: *'People died in our cars,'*
CNN (Sept. 17, 2015, 2:46 PM), *available at*
http://money.cnn.com/2015/09/17/news/companies/gm-recall-ignition-switch/ ...................... 5

CPSC Recall Summary,
*available at* https://www.cpsc.gov/Recalls/2016/samsung-recalls-top-load
-washing-machines ..................................................................................... 2

CPSC Recall Summary,
*available at* https://www.cpsc.gov/Recalls/2017/samsung-Expands-Recall-of-Galaxy-Note7-Smartphones-Based-on-Additional-Incidents-with-Replacement-Phones. ..................... 2

Danielle Douglas & Michael A. Fletcher, *Toyota reaches $1.2 billion settlement to end probe of accelerator problems*,
Wash. Post (Mar. 19, 2014), *available at*
http://www.washingtonpost.com/business/economy/toyota-reaches-12-billion-

settlement-to-end-criminal-probe/2014/03/19/5738a3c4-af69-11e3-9627-c65021d6d572_story.html ........ 5

David Shepardson, *Takata to pay $1 billion to settle U.S. air bag probe: sources*, Reuters, (Jan. 12, 2017, 10:52 PM), *available at* http://www.reuters.com/article/us-takata-settlement-idUSKBN14W2PZ........ 5

Sindhu Sundar, *GM Marks $400M For Ignition-Switch Victim Fund*, Law360 (July 24, 2014, 12:30 PM), *available at* http://www.law360.com/articles/560655/gm-marks-400m-for-ignition-switch-victim-fund ........ 5

**Rules**

Fed. R. Civ. P. 23........ *passim*

**INDEX OF EXHIBITS**

| | |
|---|---|
| EXHIBIT 1[*]: | GE Microwave Safety Database (GE_RC068171) |
| EXHIBIT 2[**]: | Email Correspondence between GE and Underwriters Laboratories Regarding 1090/1095 Microwave Defects (GE_RC068172-78) |
| EXHIBIT 3: | Email Correspondence from Hassan Zavareei to Sorell Negro |
| EXHIBIT 4[***]: | Oct. 13, 2015 Letter from Anna Haac to Jeffrey White Regarding Preserving Evidence |
| EXHIBIT 5: | Oct. 28, 2015 Letter from Sorell Negro to Anna Haac |

---

[*] GE has designated exhibits marked with a single asterisk as wholly confidential, and thus these documents are being filed under seal only, subject to further order by this Court. Plaintiffs likewise object to GE's confidentiality designations with respect to these documents and intend to submit an opposition to GE's Motion to Seal that GE is filing simultaneously with Plaintiffs' instant Surreply Brief In Support Of Plaintiffs' Motion For Class Certification And Appointment Of Class Counsel.

[**] The contact information for the individuals that appear in these documents has been redacted.

[***] This Court previously ruled that GE's "analysis of consumer injuries and complaints of defective microwaves" are not properly designated as confidential and thus were not properly sealed. (Dkt. 96.) The Court reasoned that such information does not constitute trade secrets and therefore is "not entitled to the same level of protection from disclosure as trade secret information" and that GE's interest in maintaining confidentiality over such information "does not outweigh the presumption of public access and the public interest in product safety." (*Id.* at 2-3.) Nevertheless, GE has continued to insist on improperly maintaining its confidentiality designations over such information, in violation of this Court's order. GE has designated portions of exhibits marked with a double asterisk as confidential. Plaintiffs are thus filing these documents publicly with redactions and in unredacted form under seal, subject to further order by this Court. Plaintiffs object to GE's confidentiality designations with respect to the portions of these documents reflecting or analyzing consumer complaints of glass breakage in GE's 1090/1095 microwaves and intend to submit an opposition to GE's Motion to Seal that GE is filing simultaneously with Plaintiffs' Surreply Brief In Support Of Plaintiffs' Motion For Class Certification And Appointment Of Class Counsel.

Pursuant to the Court's Order dated January 18, 2017, Plaintiffs submit this surreply in support of their Motion for Class Certification (Dkt. 166). GE's surreply in opposition to class certification ("Surreply," Dkt. 243) repeats many of the same arguments GE made in its initial opposition brief ("Opposition," Dkt. 177), which Plaintiffs rebutted in their reply ("Reply," Dkt. 214). The repetitive nature of GE's brief demonstrates that Plaintiffs' original class definitions and management proposals are not dramatic departures from their initial brief (as GE claims), but mere technical refinements. And while rehashing its objections to class certification, GE fails to address the continuous and alarming consumer reports of glass door explosions in its 1090/1095 microwaves resulting from the defect Plaintiffs' allege, which GE continues to fraudulently conceal.

Just a week after Plaintiffs filed their Reply, GE provided an updated Safety Database report listing [redacted]. (*See* Ex. 1.) This fact alone belies GE's arguments that these microwaves do not pose a continuing threat to consumers. Indeed, these additional incidents—occurring in a year's timeframe on these virtually identical models of GE microwaves—establish the basis and need for class certification.

At the same time, GE produced correspondence with Underwriters Laboratories LLC ("UL"), in which GE repeated many of the uniform talking points it used in the past to fraudulently conceal the dangerous defect in its 1090/1095 microwaves. (*See* Ex. 2; *see also* Dkt. 166 at 16-19.) As in its other responses to media inquiries, consumer reports, and another UL investigation, GE insisted, for example, that there are a variety of reasons glass doors can break—conspicuously omitting any mention of the known defect in its 1090/1095s—falsely claimed that the rate of glass breakage for these models is "low" and "relatively rare," and misleadingly promoted the strength and safe design of GE's microwave glass. (*Id.*) Shockingly, GE then concludes that the company "believes the subject [microwaves'] glass safety design is working as intended," which is in plain contradiction to even GE's own expert report in this matter, who opined manufacturing variability is to blame. (*See* Dkt. 166 at Ex. B1 at ¶ 128(3).)

Under these circumstances (where failures continue to occur at alarming rates while GE lies to the public about the defect), class certification is both appropriate and necessary. At a minimum, certification would apprise consumers who still own these microwaves about their dangerous design defect. And, at best, class certification could provide monetary relief to those who overpaid for the defective product. In other words, this class action is the only opportunity to hold GE (and manufacturer Samsung[1]) accountable for its unlawful conduct. (*See* Ex. 3.) And given the common design applicable to all 1090/1095 microwaves, which GE does not dispute, as well as the compelling evidence demonstrating a real and serious design defect and a pattern and practice of fraudulent concealment by GE, this case is perfectly suited for classwide resolution. GE's legal arguments against certification are without merit, particularly in light of the low burden Plaintiffs must meet. As GE acknowledges, Plaintiffs need only show by "a preponderance of the evidence" that the requirements of Rule 23 have been met. (Dk. 243 at 2.) There is no question that Plaintiffs have demonstrated this here.

In its introduction, GE's Surreply argues that Plaintiffs' Reply inappropriately raises new class definitions in a "last-minute strategic maneuver in a futile effort to save their case." (*Id*. at 1.) This is not accurate. The reality is that Plaintiffs responded to arguments made by GE in its Opposition and presented options for the Court in the event that the Court accepts some of the arguments made by GE that could impact the propriety of a Rule 23(b)(3) class. Plaintiffs still insist that a Rule 23(b)(3) class (for adjudicating both liability and damages) is the appropriate mechanism for resolving this case. But even if the Court accepts some of GE's arguments that would impact a Rule 23(b)(3) class, the Court retains the discretion to fashion an appropriate

[1] Of note, during the course of class certification briefing, Samsung, the manufacturer of the 1090/1095 microwaves, has come under intense scrutiny by the Consumer Product Safety Commission ("CPSC"), with two recalls issued back-to-back involving dangerously defective top-loading washing machines, whose tops can spontaneously detach during use, posing a risk of injury from impact, and smartphones that can overheat and catch on fire, posing a burn hazard to consumers. *See* CPSC Recall Summaries, *available at* https://www.cpsc.gov/Recalls/2016/samsung-recalls-top-load-washing-machines and https://www.cpsc.gov/Recalls/2017/samsung-Expands-Recall-of-Galaxy-Note7-Smartphones-Based-on-Additional-Incidents-with-Replacement-Phones.

alternative class, including a class under Rule 23(b)(2) or Rule 23(c)(4). Plaintiffs did not withdraw their request for a 23(b)(3) class by providing these alternatives. With respect to the substantive arguments that GE does make in its Surreply, they are by and large nothing more than regurgitations of arguments GE already made in its Opposition. Nonetheless, Plaintiffs will address those arguments here to the extent that they raise new issues that could impact the Court's consideration of the appropriate class vehicle for deciding this straightforward product defect case.

**1. <u>Plaintiffs Have Adequately Demonstrated Standing</u>**

GE tries to downplay the risk consumers face from defective 1090/1095 microwaves in rehashing the argument made in its Opposition that class members lack standing if their glass doors haven't yet shattered. But, as addressed at length in Plaintiffs' Reply, GE is wrong for multiple reasons. First, contrary to GE's claims, the Second Circuit has instructed that class members are not required to submit evidence of personal standing. *See, e.g.*, *Denney v. Deutsche Bk. AG*, 443 F.3d 253, 263 (2d Cir. 2006). Rather, a court should focus its standing inquiry on the named Plaintiffs, not the putative class. (*See* Dkt. 214 at 7-8, 33-35.) Second, under Article III, the possibility of future harm alone is sufficient to confer standing on class members. (*See id.* at 34 n.53.) Third, GE misstates the facts. The injury Plaintiffs allege is not limited to the glass door actually shattering—which is purely one manifestation of the defect (spring rubbing being another, for example)—the injury is the purchase of a defective product in the first place (for purposes of certifying a purchaser class) and the subsequent safety risk of ownership (for purposes of certifying an ownership class).

GE wholly evades the purchase injury alleged by Plaintiffs because it is fatal to GE's standing arguments. Instead, GE downplays the risk of harm in an effort to argue that Plaintiffs will not be able to *prove* a design defect. But that is a merits inquiry that must be resolved at summary judgment or trial. It is not sufficient to defeat standing of Plaintiffs' proposed purchaser class. And with respect to the proposed owner class, in arguing that "[t]his is not a case involving a toxic material where exposure by itself is a risk" (Dkt. 243 at 6), GE asks the

Court to ignore the evidence demonstrating that GE itself characterized the glass shattering problem as a safety risk and that consumers were, in fact, injured from exploding glass, which GE chronicled in its Microwave Safety Database and Safety Presentations (*see* Dkt. 166 at 13-15.) Indeed, microwaves that spontaneously explode outward when not in use are inherently dangerous, as GE's former Safety Program Manager admitted. (*Id*. at 14.) Comparing these ticking time bombs to toxic exposure is thus perfectly apt.

In attempting to downplay the risk these microwaves pose to consumers, GE misconveys the facts and law. First, GE argues, ***against the weight of the evidence***, that some microwaves did not suffer from the defect. But that is not true. ***Both*** parties' experts observed evidence of spring rubbing on ***every*** single microwave inspected. (*Id*. at 6-7.) Indeed, there is ***no evidence whatsoever*** of the absence of rubbing on any given 1090/1095 microwave. GE's suggestions otherwise are unsupported. ***Even the exemplar microwaves provided by GE, including one that had never been used by a consumer, showed evidence of rubbing***. (*Id*. at 7.) GE fatally errs by trying to equate the most obvious *manifestation* of the glass door defect with the *presence* of the defect in any given microwave. But just because some 1090/1095 microwaves have not yet experienced glass door shattering does not mean they do not suffer from the same defect or that they would not show evidence of rubbing if inspected.

Indeed, Plaintiffs' expert opined that all 1090/1095 microwaves suffer from the same defect in that their outer glass door surfaces are insufficiently isolated from the door's metal spring and GE does not dispute that this design is the same for all 1090/1095 microwaves. (*Id*. at 4-6.) Design defects by their nature often only manifest in a relatively small number of instances.[2] [redacted]

---

[2] In the case of Toyota's unintended acceleration defect, for example, the incident rate was estimated to be .01%. Like GE, Toyota defended against class certification by maintaining there was a low manifestation rate, arguing "the present putative class includes tens of millions of Plaintiffs, the vast majority of whom never experienced SUA [sudden unintended acceleration]…These Plaintiffs' vehicles operated exactly as intended and expected, without relevant malfunction, and will probably continue to do so for the entirety of their useful life." Brief of Defendants-Appellants at 7-8, *In re Toyota Motor Corp. Unintended Acceleration Mktg.*,

[redacted] Tellingly, GE has not allowed Plaintiffs to inspect any of the microwaves whose glass doors shattered during the course of this litigation to which GE has had access. In response to Plaintiffs' request to preserve these microwaves and produce them for inspection, GE refused to comply, complaining the request was an attempt to harass GE. (Ex. 4-5.)

---

*Sales Practices, and Prod. Liab. Litig.*, No. 11-57006 (9th Cir. Mar. 2, 2012). Yet, the case resulted in a recall of approximately 20 million cars, a fine of $1.2 billion with the DOJ, and a settlement with consumers of between $1.2 and $1.4 billion. *See* Danielle Douglas & Michael A. Fletcher, *Toyota reaches $1.2 billion settlement to end probe of accelerator problems*, Wash. Post (Mar. 19, 2014), *available at* http://www.washingtonpost.com/business/economy/toyota-reaches-12-billion-settlement-to-end-criminal-probe/2014/03/19/5738a3c4-af69-11e3-9627-c65021d6d572_story.html; Annys Shin, *Auto reliability ratings might not be reliable with problems such as Toyota's*, Wash. Post (Feb. 6, 2010), *available at* http://www.washingtonpost.com/wp-dyn/content/article/2010/02/05/AR2010020504247.html.

Similarly, the Executive Vice President of North America TK Holdings Inc. ("Takata") testified that the company's defective air bags only represented "approximately 0.0087 percent of estimated total deployments of these airbags, or fewer than 9 failures out of every 100,000 deployments." An Update on the Takata Airbag Ruptures and Recalls, House Committee on Energy and Commerce Subcommittee on Commerce, Manufacturing, and Trade Cong., 2 (2015) (testimony of Kevin M. Kennedy). However, the recalls from Takata's defective airbags are anticipated to affect 42 million cars, and the company has already been fined $1 billion by the DOJ and $70 million by the NHTSA. *See* David Shepardson, *Takata to pay $1 billion to settle U.S. air bag probe: sources*, Reuters, (Jan. 12, 2017, 10:52 PM), *available at* http://www.reuters.com/article/us-takata-settlement-idUSKBN14W2PZ.

A GM Spokesman in 2014 also defended GM in its self-start ignition case by claiming "[t]e incident rate was very low with no growing trend." But GM eventually recalled 17.5 million cars due to ignition or key-related issues, established a compensation fund to cover 5.2 million of those vehicles, and paid a $35 million fine to the government and more than $600 million to victims and their families. *See* Chris Isidore & Evan Perez, *GM CEO*: *'People died in our cars,'* CNN (Sept. 17, 2015, 2:46 PM), *available at* http://money.cnn.com/2015/09/17/news/companies/gm-recall-ignition-switch/;

Sindhu Sundar, *GM Marks $400M For Ignition-Switch Victim Fund*, Law360 (July 24, 2014, 12:30 PM), *available at* http://www.law360.com/articles/560655/gm-marks-400m-for-ignition-switch-victim-fund.

GE also argues, without citing to any evidentiary support, that putative class members whose microwaves show evidence of "the spring barely touch[ing] the glass . . . will not break even after 25 years of use." (Dkt. 243 at 5.) It is unclear how GE arrived at this conclusion other than by simply pulling it out of thin air. But, again, it is contradicted by the record evidence. Plaintiffs' expert opined that the defect Plaintiffs allege was present in every 1090/1095 microwave, all of which will eventually explode unless the microwave is disposed of or breaks due to another issue first. (Dkt. 166 at Ex. A1 at ¶ 54-57.) While GE disagrees with this conclusion, this is an issue of fact for the jury. It is not an impediment to class certification. Indeed, the central predominating question in this case that warrants certification is whether the defect identified is a design defect that affects all 1090/1095 microwaves, as Plaintiffs allege, or a defect due to manufacturing variability that affects only some of GE's microwaves, as GE asserts. This common issue alone is appropriate for certification under Rule 23(c)(4). GE's attempt to distinguish *Whirlpool* and *Butler* is unavailing. (Dkt. 243 at 4.) As in *Butler*, there have been thousands of glass door shattering complaints and there is zero evidence that a 1090/1095 microwave exists without the defect. *See Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 361-62 (7th Cir. 2012). And as in *Whirlpool*, the glass shattering defect has manifested despite variations in consumer habits and the remedial efforts undertaken by GE and its service technicians, which have resulted in repeated glass failures. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 678 F.3d 409, 419 (6th Cir. 2012).

**2. <u>Ascertainability Does Not Bar Certification</u>**

**a. Class Members Can Easily Be Identified Using Traditional Methods Routinely Employed by Courts Across the Country in Class Action Cases**

GE likewise devotes a significant portion of its Surreply to repeating its initial hypertechnical arguments on ascertainability, which Plaintiffs have also already addressed at length. (Dkt. 214 at 24-28.) The arguments raised in Plaintiffs' Reply, however, are further buttressed by a recent decision issued by the Ninth Circuit that is instructive in understanding the limits of the Second Circuit's opinion in *Brecher v. Republic of Arg.*, 806 F.3d 22 (2d Cir. 2015),

on which GE heavily relies. As the Ninth Circuit explained, *Brecher* did not impose a *new* ascertainability requirement in the Second Circuit, but "instead turned on the principle that a class definition must be objective and definite." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.3 & n.6 (9th Cir. 2017). The Ninth Circuit's interpretation of *Brecher* is particularly persuasive in light of the Second Circuit's decision in *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (Sotomayor, J.), which held that refusing to certify a class "on the sole ground that it would be unmanageable is disfavored and 'should be the exception rather than the rule.'"

In fact, *Briseno* made a critical differentiation that is key to understanding *Brecher*'s implications on this case. Specifically, the Ninth Circuit explained that "[r]equiring plaintiffs to propose a mechanism for eventually determining whether a given class member is entitled to damages is different from requiring plaintiffs to demonstrate an administratively feasible way to identify *all* class members at the certification stage." *Briseno*, 844 F.3d at 1124 n.3 (emphasis in original). Notably, the Second Circuit made clear in *Brecher* that the latter is not appropriate. 806 F.3d at 24 n.2. In other words, Plaintiffs here must provide a mechanism for identifying class members after a class is certified. They must not now identify *all* class members before the class is certified.

GE nevertheless argues to the contrary that all class members must be identified now because it has a due process right to challenge their individualized damages. However, because Plaintiffs' damages models calculate aggregate liability based on static GE sales records, "the identity of particular class members does not implicate the defendant's due process interest at all" because "[t]he addition or subtraction of individual class members affects neither the defendant's liability nor the total amount of damages it owes to the class." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 669 (7th Cir. 2015); *see also Briseno*, 844 F.3d at 1132; *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1269 (10th Cir. 2014) (rejecting Seventh Amendment challenge to allocation of damages award among class members because defendant "has no interest in the method of distributing the aggregate damages award among the class members"); *In re Pharm.*

*Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 197–98 (1st Cir. 2009) (rejecting due process challenge to entry of class-wide judgment and award of aggregate damages); *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1258 (11th Cir. 2003) ("[A] defendant has no interest in how the class members apportion and distribute a [n] [aggregate] damage [award] among themselves."), *aff'd*, 545 U.S. 546 (2005); *Hilao v. Estate of Marcos*, 103 F.3d 767, 786 (9th Cir. 1996) (noting that defendant's interest is "only in the total amount of damages for which it will be liable," not "the identities of those receiving damage awards"); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) ("Where the only question is how to distribute the damages, the interests affected are not the defendant's but rather those of the silent class members."). Ultimately, GE is asking this Court to "protect a purely theoretical interest of absent class members at the expense of any possible recovery for all class members." *Briseno*, 844 F.3d at 1129.

And Plaintiffs have explained how class members can easily be identified, which GE fails to address. (*See* Dkt. 214 at 25.) For example, GE's Microwave Safety Database and Factory Service Database has contact information and serial numbers for every consumer who has called GE about an issue with their 1090/1095 microwave since at least approximately 2002—which is over 7,500 consumers. And as GE acknowledges, GE has warranty cards for almost 20% of purchasers.[3] In other words, close to 30% of class members can be identified from GE's internal records alone, which can then be supplemented by traditional forms of notice via publication and self-identification. This is already an impressive number of class members that can easily be reached, particularly given that class action claims rates are often around 10-15%. *See, e.g.*, *Briseno*, 844 F.3d at 1130. And to the extent there is some requirement or need for independent verification, that too can easily be done here. Class members could, for example, submit a photograph, receipt, microwave manual, installation record, or the microwaves themselves,

---

[3] Although GE claims a small percentage of these consumers have since moved (Dkt. 243 at 7), GE conspicuously does not tell the Court whether GE has forwarding addresses for these consumers.

which all have unique serial numbers that can be validated and cross-checked against GE's own data. Thus, self-identification is, in fact, feasible and otherwise not problematic.

And, contrary to GE's claims, many courts in the Second Circuit have allowed class members to submit self-identifying affidavits as proof of class membership. *See, e.g.*, *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 66 (E.D.N.Y 2015.), *reconsideration denied*, 140 F. Supp. 3d 241 (E.D.N.Y. 2015) (discussing why self-identification was permissible when there was only one product at issue and it was labelled in a uniform manner throughout the class period); *Ebin v. Kangadis Food Inc.*, 297 F.R.D 561, 567 (S.D.N.Y. 2014) (cited approvingly by *Brecher*); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 407 (S.D.N.Y. 2015) (concurring with the *Ebin* decision that proof of purchase was not necessary to certify a class); *see also Briseno*, 844 F.3d at 1132 ("[G]iven that a consumer's affidavit could force a liability determination at trial without offending the Due Process Clause, we see no reason to refuse class certification simply because that same consumer will present her affidavit in a claims administration process after a liability determination has already been made."). In addition, "[c]ourts have routinely held that notice by publication in a periodical, on a website, or even at an appropriate physical location is sufficient to satisfy due process." *Briseno*, 844 F.3d at 1129; *Hughes v. Kore of Ind. Enter., Inc.*, 731 F.3d 672, 676–77 (7th Cir. 2013) (holding that sticker notices on two allegedly offending ATMs, as well as publication in the state's principal newspaper and on a website, provided adequate notice to class members in an action challenging ATM fees); *Juris v. Inamed Corp.*, 685 F.3d 1294, 1319 (11th Cir. 2012) (holding that notice to unidentified class members by periodical and website satisfied due process).[4] Indeed, Rule 23(b)(3) requires only the "best notice that is *practicable under the circumstances*, including individual notice to all members who can be identified through *reasonable effort*." Fed. R. Civ. P. 23(c)(2)(B) (emphasis added).

---

[4] *LaBauve v. Olin Corp.*, 231 F.R.D. 632 (S.D. Ala. 2005), is therefore against the weight of authority. Additionally, any discussion of publication notice in *LaBauve* is merely dicta. The court concluded the proposed class did not meet any of the requirements of Rule 23, such that ascertainability was not dispositive.

GE cites only to Alabama and Florida cases that rejected self-identification where consumers could easily be confused about whether they had a claim that could not be verified. But these non-binding cases are readily distinguishable. In *Fisher v. Ciba Specialty Chems. Corp.*, 238 F.R.D. 273 (S.D. Ala. 2006), for example, the class definition required individuals to identify whether their property was "income-producing." With such a subjective class definition, the court held that self-identification would be too difficult for class members. This case, however, is far different given how simple it would be for consumers to determine whether they purchased or own a 1090/1095 microwave. Similarly, in *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262 (S.D. Fla. 2003), the court held self-identification would be difficult because consumers were likely to confuse Metabolife 365 with Metab-O-Lite and MetaboLIFT, all of which contained the same supplement. Again, self-identification does not pose the same problems here. As already discussed, most, if not all, claims could easily be corroborated.

Even the Third Circuit (which has imposed the most heightened ascertainability standard among the circuits) has explained that "[t]here will always be some level of inquiry required to verify that a person is a member of a class," citing and approving of self-identification by laptop users as one such process that "does not require a 'minitrial,' nor does it amount to 'individualized factfinding,' and indeed must be done in most successful class actions." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 170-71 (3rd Cir. 2015) (internal quotations and citations omitted); *see also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539 (6th Cir. 2012) ("The need to review individual files to identify its members are not reasons to deny class certification."). As *Byrd* recognizes, the purchase and ownership of laptops, like microwaves, are readily distinguishable from the purchase of disposable consumer products that may be unverifiable.

Finally, GE seems to argue that class actions cannot be certified under consumer statutes that restrict coverage "to personal, family, or household transactions." (Dkt. 243 at 9.) But cases under consumer protection statutes involving similar limiting language are routinely certified. *See Keilholtz v. Lennox Hearth Prod. Inc.*, 268 F.R.D. 330, 343 (N.D. Cal. 2010) (certifying a class wherein "consumer" is defined to mean an individual who bought the product for personal,

family or household purposes.); *O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 504 (N.D. Cal. 2011) (certifying a class of all consumers who borrowed money for personal, family, or household use); *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 571 (S.D. Cal. 2012) (certifying a class of consumers who purchased the product primarily for personal, family, or household purposes). Moreover, GE's reasoning as to why consumer debt cases can be certified is equally applicable to the certification of consumer product cases.

GE argues that one of the cases cited by Plaintiffs on this issue is inapplicable because consumer debt cases are somehow different. (Dkt. 243 at 9 (citing *Yazzie v. Gurley Motor Co.*, No. CIV 14-555 JAP/SCY, 2015 WL 10818834, at *5 (D.N.M. Oct. 30, 2015)). But GE fails to explain the difference. The fact that *Yazzie* is in the context of the FDCPA versus a consumer fraud statute is a meaningless distinction because the process in both contexts for determining who fits within the class definition is the same. Consistent with how class actions proceed across the country, the court in *Yazzie* reasoned, "issues regarding the consumer nature of the transaction can be resolved simply by asking class members . . . during the class notification process." *Id*. Moreover, the policy justification in *Yazzie* applies equally here. Just as the "need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class action," it is also inherent in every class action brought under consumer protection statutes that restrict coverage to personal, family, or household transactions. *See id*. As *Yazzie* persuasively points out, "[i]f that need alone precluded certification, there would be no class actions under the FDCPA." *Id*. The same holds true for consumer protection statutes. Of course, as *Yazzie* contemplates, GE may test consumer affidavits attesting to this fact at trial or during the claims administration process. For example, the Ninth Circuit in *Briseno* explained:

> Defendants will have similar opportunities to individually challenge the claims of absent class members if and when they file claims for damages. At the claims administration stage, parties have long relied on 'claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court' to validate claims.

844 F.3d at 1131; *see also Mullins*, 795 F.3d at 669 ("That does not mean a court cannot rely on self-identifying affidavits, subject as needed to audits and verification procedures and challenges, to identify class members.").

**b. Ascertainability Does Not Bar a Rule 23(b)(2) or (c)(4) Class**

Under the plain language of Rule 23, notice is only required for a (b)(3) class. A Court has discretion as to whether and when to direct notice to a (b)(2) class. *Compare* Fed. R. Civ. P. 23(b)(2) ("For any class certified under Rule 23(b)(1) or (b)(2), the court ***may*** direct appropriate notice to the class.") (emphasis added) *with* Fed. R. Civ. P. 23(b)(3) ("For any class certified under Rule 23(b)(3), the court ***must*** direct to class members the best notice that is practicable under the circumstances. . . ) (emphasis added). And Rule 23(c)(4) is silent on its face as to notice. By the plain language of Rule 23, therefore, notice to class members is not required for classes certified under Rule 23(b)(2) or (c)(4).

Indeed, the Third Circuit has categorically determined that "it is improper to require ascertainability for a (b)(2) class." *Shelton v. Beldsoe*, 775 F.3d 554, 562 (3rd Cir. 2015) (noting that this was an issue of first impression for the Third Circuit and that the "First and Tenth Circuits explicitly rejected an ascertainability requirement for Rule 23(b)(2) classes") (citing *Shook v. El Paso Cty.*, 386 F.3d 963, 972 (10th Cir. 2004) and *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972)). Although the Second Circuit has not yet addressed this issue, numerous district courts within the Second Circuit have found that ascertainability is either unnecessary or of minor concern in 23(b)(2) cases. *See, e.g.*, *Strouchler v. Shah*, 286 F.R.D. 244, 248 (S.D.N.Y. 2012) ("[P]recise ascertainability of class members is unnecessary in a Rule 23(b)(2) class action."); *McGee v. Pallito*, No. 1:04-CV-00335-JGM, 2015 WL 5177770, at *4 (D. Vt. Sept. 4, 2015) ("The fundamental differences between Rule 23(b)(2) and Rule 23(b)(3) classes . . . defuse Defendants' arguments concerning ascertainability . . . Were this a Rule 23(b)(3) class, the Court would have to consider whether the class was ascertainable and therefore manageable."); *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866, at *16 n. 26 (E.D.N.Y. July 18, 2013) ("[A]scertainability is of minor concern" when certifying a

(b)(2) class); *Floyd v. City of N.Y.*, 283 F.R.D. 153, 161–62 (S.D.N.Y. 2012) ("[I]t is not clear that the implied requirement of definiteness should apply to Rule 23(b)(2) class actions at all."); *Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409, 419 n.3 (S.D.N.Y. 2012) (same).

GE's citation to a twenty-year old case—*Gibbs v. E.I. DuPont De Nemours & Co.*, 876 F. Supp. 475 (W.D.N.Y. 1995)—is against the weight of authority in this Circuit. And GE's other case cites are out of context. *Hughes v. Ester C Co.*, 317 F.R.D. 333 (E.D.N.Y. 2016), for example, says nothing about ascertainability in the context of 23(b)(2), only in the context of (b)(3). The court rejected the (b)(2) class in that case only because the plaintiffs did not have standing to seek an injunction. Similarly, in *Stinson v. City of N.Y.*, 282 F.R.D. 360 (S.D.N.Y. 2012), the court did not discuss ascertainability in the context of (b)(2). Plaintiffs in that case had moved for certification under both (b)(2) and (b)(3), and the court ended up certifying both classes.

Importantly, GE conflates the identification of class members with the relief Plaintiffs seek in arguing ascertainability is required and tries to distinguish the cases Plaintiffs cite by asserting that these cases bar only future conduct and thus did not require identifying and providing notice to current owners. But this puts the cart before the horse in that Plaintiffs' proposed class definitions do not incorporate the specific relief sought. And even if GE is right that ascertainability is required, it does not bar certification for all the reasons discussed in Section 2(a) above because the identification of class members will simply not pose a problem here.

**3. <u>Common Issues Plainly Predominate Here</u>**

GE raises commonality and predominance arguments in three different sections of its Surreply (Dkt. 243 at 13, 24, 32), all of which are easily rejected and go to the merits, not the propriety, of class certification. Indeed, given the common questions and proof at issue here, the notion that—*at a minimum*—a Rule 23(c)(4) issue class cannot be certified, is nonsensical. As set forth in Plaintiffs' Class Certification Motion and Reply, this case is perfectly suited for class

treatment. (Dkt. 166 at 4-20; Dkt. 214 at 10-12.) The common predominating issues driving this litigation are (1) whether GE's 1090/1095 microwaves suffer from a design defect and (2) whether GE knew about and concealed this defect. Plaintiff intends to submit common proof on both of these issues that overwhelmingly demonstrates GE's liability. Of note, GE does not even dispute that all GE 1090/1095 microwaves share a common design.

Instead, GE asserts that its substantive rights would be infringed if this case proceeded as a class action, claiming a need to individually inspect each class members' microwaves for spring rubbing. GE is wrong. Class certification would not impede GE's due process rights in any respect. As a legal matter, GE's purported desire to present such individual evidence *on the merits* is wholly irrelevant to the appropriateness of class certification because individual inspection of class members' microwaves is not required for purposes of demonstrating liability. Again, GE confuses the presence of a defect with its manifestation, arguing incorrectly that a plaintiff whose microwave has not yet exploded is not entitled to relief.

Although GE may want to use individual evidence to rebut Plaintiff's common proof of a design defect, that does not mean individualized issues predominate here. To the contrary, the individual evidence GE raises merely reaffirms the propriety of classwide resolution because it goes to the common question of whether there exists a design defect in all 1090/1095 microwaves, as Plaintiffs contend, or merely manufacturing variability, as GE asserts. There is thus no question that certification under Rule (c)(4), *at a minimum*, is eminently appropriate here.[5] As the Ninth Circuit explained in *Briseno*, GE "may prefer to terminate this litigation in

---

[5] GE cites *Enriquez v. Cherry Hill Mkt. Corp.*, 993 F. Supp. 2d 229 (E.D.N.Y. 2014), in support of its argument that a (c)(4) class is unwarranted. But *Enriquez* merely held that in the context of a FLSA case, a liability-only class did not solve many of the individualized issues because the damages calculations were the *same* as the liability calculations—e.g. the court was required to determine the amount each employee was paid and whether that payment fell below federal guidelines. Unlike an overtime action, liability here is easily severable from the question of damages. Likewise, *Gates v. Rohm & Haas Co.*, 655 F.3d 255 (3rd Cir. 2011), is not persuasive. In *Gates*, the Third Circuit held that the district court did not abuse its discretion in declining to certify a (c)(4) class when the particular facts of the case—which involved identifying whether a specific pathway of environmental contamination was the cause of class members' injuries—made liability "inseverable" from the other issues in the case. This case does

one fell swoop at class certification rather than later challenging each individual class member's claim to recovery, but there is no due process right to 'a cost-effective procedure for challenging every individual claim to class membership.'" 844 F.3d at 1132.

And as a factual matter, GE's purported desire to inspect each class member's microwave is disingenuous. GE, in fact, had every opportunity to conduct such individual inspections during discovery, which is now closed. GE should thus not be heard to complain that the evidence it "would need to defend such claims can only be developed with individual inspections" (Dkt. 243 at 25), when GE failed to seek this very evidence during discovery. Indeed, GE has had unilateral access to hundreds of consumers' microwaves since the start of this litigation without ever once seeking to obtain discovery from these consumers, whether in the form of inspections, disposition testimony, or document subpoenas. ***GE likely did not want to examine more 1090/1095 microwave ovens because all of the microwaves inspected by the parties' experts showed evidence of rubbing, including the exemplar microwaves produced by GE for inspection, one of which had never been used by a consumer.*** (Dkt. 166 at 6-7.)

Nor does the law vary by state, as GE claims. Indeed, GE fails to present any case law to rebut Exhibit 2 to Plaintiffs' Reply, which demonstrates the common elements required to be proven under the law of each state within the Consumer Protection Law Subclass. And although GE claims that class certification is rare in product liability cases, Plaintiffs identified an extensive list of such cases. (Dkt. 214 at 10 n.9.) An examination of the legal elements of

---

not have the same complexities as *Gates*. Here, whether the product is defective is a question easily severed from the damages calculation. GE also cites *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008), to oppose (c)(4) certification, but deletes the key sentence of the opinion: "We recognize that a court may employ Rule 23(c)(4) to certify a class as to common issues that do exist, 'regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement.'" In that case, the Second Circuit recognized the utility of (c)(4) classes, but declined to certify one because it would not have promoted judicial economy.

Plaintiffs' claims and the common proof going to each further demonstrates that class certification should be granted here. Indeed, as the Supreme Court has explained, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). That is particularly true where, as here, consumer protection claims are premised on uniform omissions. (Dkt. 214 at 12-20.)

For example, if the Court were to first proceed with a liability (or issue) subclass under either Rule 23(b)(2), (b)(3), or (c)(4), the determinative factual questions and answers will largely be the same.[6] The class jury will only need to make one set of factual decisions across all class members concerning whether (a) there was an inherent design defect present in GE's 1090/1095 microwaves when they left the factory, (b) whether this defect was material to a reasonable consumer (or rendered the microwave unfit for ordinary use), (c) whether and when GE knew about this defect, and (d) whether GE failed to disclose the defect (the latter of which is already admitted). If the jury answers no to any of these questions, liability in favor of GE will be resolved in one fell swoop. If the jury answers yes to all of these questions, liability will be established under all of the consumer protection laws of the states comprising the Consumer Protection Law Subclass and Texas's law regarding breach of implied warranty. The efficiencies gained by a class action here are thus self-evident.

This is further concretely illustrated by examining the standards for a finding of liability under CUTPA, which would likewise result in a finding of liability under the other Consumer Protection Law Subclass states' statutes, all of which have standards for determining liability

[6] Contrary to GE's characterization of (c)(4) classes being uncommon, courts in this circuit routinely certify (c)(4) liability-only classes. *See, e.g., In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006) ("[W]e hold that a court may employ subsection (c)(4) to certify a class as to liability regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement."); *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 595 (S.D.N.Y. 2013), *aff'd*, 602 F. App'x 3 (2d Cir. 2015) (certifying class under 23(c)(4) as to liability only); *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 659 (S.D.N.Y. 2013) (certifying liability-only class); *Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 122 (E.D.N.Y. 2011), *amended on reconsideration* (July 8, 2011) (same).

(and even causation and loss) that are essentially the same as (if not more burdensome than) CUTPA. With respect to Plaintiffs' Consumer Protection Law Subclass, for example, a finding of liability under CUTPA merely requires Plaintiffs to show a material representation or omission by GE that is likely to mislead a reasonable consumer—if the jury finds GE knew about and failed to disclose a dangerous glass shattering defect in GE's 1090/1095 microwaves, liability would be satisfied. With respect to Plaintiffs' Texas Implied Warranty Subclass, liability stems from a defendant selling a product that is unmerchantable—that is, unfit for its ordinary purpose. To evaluate this claim, the jury similarly need only consider whether GE's 1090/1095 microwaves contained a design defect, and if so, whether that defect rendered the product unfit for its ordinary purpose. The answers to those questions will determine liability on behalf of the entire Texas Implied Warranty Subclass.

In addition, Plaintiffs propose certifying a Rule 23(b)(3) damages subclass comprised of purchasers residing in the same states and bringing the same claims that would be resolved with the liability-only classes described above, but which excludes personal injury and consequential damages. In other words, this damages subclass will be limited to those damages that were incurred in the purchase of the microwave itself and exemplary damages, for which Plaintiffs have common proof: class-wide calculations of diminution in value or disgorgement damages[7] and defendant-centric evidence going to the willfulness of GE's conduct.[8] Proceeding in this

---

[7] Four jurisdictions (District of Columbia, Alaska, Hawaii and New Jersey) provide for automatic treble damages. Application of these damage modifiers is a simple mathematical calculation that may be applied in calculating damages attributable to these jurisdictions at trial and should not affect manageability. And, to the extent that it would be helpful, a subclass of these state with identical damage modifiers could easily be created.

[8] In addition to actual damages, California, Massachusetts, Arkansas, Connecticut, Delaware, Illinois, Missouri, Rhode Island, Vermont, Washington, Hawaii, New York and the District of Columbia permit additional damages upon a showing of wrongful conduct by a defendant. While the courts have used slightly different terms to describe the standards for obtaining the additional relief, it revolves around a showing of particularly egregious, willful conduct. Therefore, there are no material differences among these states. To the extent any non-material differences between the state statutes may exist, this court easily can and should create subclasses for management of these differences. *See Am. Timber & Trading Co. v. First Nat. Bank of Or.*, 690 F.2d 781, 787-789 (9th Cir. 1982) (affirming lower court's creation of a

manner would then allow purchasers with additional damages that are too individualized for class treatment to opt-out and/or proceed to prove their individual damages with the benefit of a liability ruling. As with the liability-only classes proposed above, this limited damages subclass would involve identical proof for every class member and require the jury to determine merely whether GE's unlawful conduct resulted in injury to class members, which can be inferred from a purchase alone or demonstrated on a representative basis and is thus appropriate for class treatment.

The trial for all of these classes would thus be based on the exact same common evidence, as outlined in Plaintiffs' Class Certification Motion and Reply. (Dkt. 166 at 4-20; Dkt. 214 at 4-6.). Since both the liability and actual damages calculation issues are materially identical across all class members for each class and even between classes, certification under Rule 23(b)(3) is proper.

**4. Plaintiffs are Typical and More than Adequate Class Representatives**

GE raises no new arguments with respect to the named Plaintiffs, who have diligently served as exemplary representatives of the class and far exceed the requirements of Rule 23. (Dkt. 214 at 28-31.) GE's attempt to suggest that Plaintiffs are not suitable class representatives should be rejected outright.

**5. Certification under Rule 23(b)(2) is Appropriate**

GE continues to contest the need for vital relief in this litigation—a warning to class members that the 1090/1095 microwaves are defective. But GE merely rehashes the same

---

subclass to manage a factual issue unique to some class members). Case management subclasses are authorized by Rule 23(d) and "are appropriate when 'there is no actual conflict among class members in the underlying claims common to the entire class' and the subclass is 'created solely to expedite resolution of the case by segregating [a distinct legal] issue [that is] common to some members of the existing [class].'" Newberg on Class Actions § 7:32 (5th ed.) *citing Cesale v. Kelly*, 257 F.R.D. 396, 408-09 (S.D.N.Y. 2009). Case management subclasses need not independently satisfy the commonality, numerosity, typicality and adequacy requirements of 23(a). *Am. Timber*, 690 F.2d at 787 n.5.

arguments Plaintiffs addressed in their Reply. (Dkt. 214 at 8.) The best answer to all of these arguments is that the need for a warning is a "separable and distinct type of relief that will resolve an issue common to all class members." *Seekamp v. It's Huge, Inc.*, No. 1:09-CV-00018 LEK DRH, 2012 WL 860364, at *7 (N.D.N.Y. Mar. 13, 2012).

**a. The Equitable Relief Plaintiffs Seek for their Proposed Rule 23(b)(2) Class is Separate and Distinct from Monetary Damages**

GE attempts to draw boxes around Plaintiffs proposed relief for the Rule 23(b)(2) class by arguing that (b)(2) relief is categorically unavailable when (b)(3) relief is also requested and that (b)(2) relief is never appropriate in a product liability action. Both contentions are categorically false. Courts in this Circuit often certify both (b)(2) and (b)(3) classes. *See, e.g., Seekamp*, 2012 WL 860364 at *8, ("[W]here a plaintiff seeks both declaratory and monetary relief, 'the court may certify a damages-seeking class under Rule 23(b)(3), and an injunction-seeking class under Rule 23(b)(2).'"); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 317 F.R.D. 374, 385 (S.D.N.Y. 2016) (certifying classes under 23(b)(3) and 23(b)(2) and noting that "[w]here 'plaintiffs are seeking substantial monetary damages,' they should seek 'certification of separate Rule 23(b)(2) and (b)(3) classes addressing equitable relief and damages, respectively.'").

GE argues that the Supreme Court's decision in *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) means that any claim for monetary damages precludes class certification under Rule 23(b)(2). But at least one district court has directly addressed and rejected that same argument. In *In re Motor Fuel Temperature Sales Practices Litig.*, 279 F.R.D. 598, 603 (D. Kan. 2012), after the court granted certification of a 23(b)(2) class, the defendants filed a motion for reconsideration in light of *Wal-mart*. The court denied the motion and went on certify additional classes under 23(b)(3) and 23(c)(4). Just as the *Wal-mart* decision did not change the court's 23(b)(2) decision in *In re Motor Fuel*, it does not alter the analysis here, either. The relief Plaintiffs request is separate and distinct for the (b)(2) and (b)(3) class.

Nor is it true that product liability cases are never certified under Rule 23(b)(2). Courts routinely note the availability of 23(b)(2) injunctive relief in product liability cases. *See, e.g., Ajose v. Interline Brands, Inc.*, 187 F. Supp. 3d 899, 909 (M.D. Tenn. 2016) (Noting that, "[i]n the context of products liability class action cases, injunctive relief classes under Rule 23(b)(2) typically seek a declaration that a product is defective so that relief can be easily pursued once the defect manifests itself or causes damages."); *Bietsch v. Sergeant's Pet Care Prods., Inc.*, No. 15 C 5432, 2016 WL 1011512, at *12 (N.D. Ill. Mar. 15, 2016) ("[T]he fact that Plaintiffs in this case are seeking both injunctive and monetary relief does not make Plaintiffs' request for certification under both Rule 23(b)(2) and (b)(3) facially deficient. Indeed, one option Plaintiffs may choose to pursue is 'divided certification,' proceeding first under Rule 23(b)(2) and then under Rule 23(b)(3) if they succeed in obtaining declaratory relief."); *Pella Corp. v. Saltzman*, 606 F.3d 391, 395 (7th Cir. 2010) (affirming certification of the (b)(2) class because "the (b)(2) class will benefit uniformly from the declarations"). GE argues that the lower court decision in *Pella* was incorrectly decided, thereby suggesting that the Court should ignore it. (Dkt. 243 at 19 n.9.) This seems like a facile attempt to avoid the fact that the Seventh Circuit upheld the district court's decision. GE would like the Court to ignore *Pella* because it demonstrates that class certification is a flexible mechanism designed to ensure easier adjudication of complex actions, including product liability cases. This undermines GE's false narrative that class actions are unyielding straightjackets ill-suited for product liability cases.

Contrary to GE's characterization, the 23(b)(2) class is not being used as a backdoor to damages. Rather, the 23(b)(2) class members would not receive any damages. The fact that GE may spend money on an extended warranty program does not turn this injunctive relief into a "money damages claim by another name." (Dkt. 243 at 18.) GE's cited case for that proposition does not support GE's position. In *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 889-90 (7th Cir. 2011), the court held the plaintiffs were not entitled to the injunctive relief requested—a reexamination of hail-damaged property—because the defendant did not have a duty to use a certain *method* to evaluate insurance claims, it merely had a duty to *pay*. Here, by

contrast, Plaintiffs are not demanding an alternative approach or method for evaluating a warranty claim in order to get money. Plaintiffs are merely asking that the warranty be extended. This is fundamentally different from *Kartman* because GE's warranty does not even allow for monetary relief. Instead, the warranties are limited to repair or replacement. (Dkt. 166 at Ex. H19.) Thus, Plaintiff's claim for injunctive relief cannot be characterized as a "recasting of a straightforward claim for damages[.]" *Kartman*, 634 F.3d at 889.

**b. Certification of a Rule 23(b)(2) Class Would Provide All Current Owners with Important Relief**

Just as GE has done for the past decade, GE continues to ignore the safety risk posed to consumers by the dangerous propensity of its 1090/1095 microwaves to spontaneously shatter and explode outwards.[9] If, as Plaintiffs allege, the jury agrees that this is the result of a design defect present in all of GE's 1090/1095 microwaves, the declaratory relief Plaintiffs seek—namely providing notice of this defect and a warning to all current consumers—will provide critical relief to every member of Plaintiffs' proposed Rule 23(b)(2) class.

Contrary to GE's assertion, whether a consumer's microwave has already exploded is wholly irrelevant to the necessity of providing such relief.[10] That is because *all* consumers who presently own these microwaves are at risk. As Plaintiffs previously explained in their Reply, this is equally true for those consumers who had their microwaves "repaired" because GE used replacement parts that did not address the defect or were equally defective, as evidenced by the

---

9 For this reason, *In re Cordis Corp. Pacemaker Prods. Liab. Litig.*, No. C-3-86-543, 1992 WL 754061 (S.D. Ohio Dec. 23, 1992), is inapposite. In *Cordis*, the court denied (b)(2) certification in part because it was demonstrated to be unnecessary—the FDA had already recalled the defective pacemaker and issued warnings that the product was defective. Under such circumstances, plaintiffs could not prove the need for an additional warning to class members regarding the defect. Here, by contrast, GE fraudulently concealed the defect and in fact *still* has not publicly acknowledged the defect's existence.

10 *Castro Valley Union 76, Inc. v. Vapor Sys. Techs., Inc.*, No. C 11-0299 PJH, 2012 WL 5199458 (N.D. Cal. Oct. 22, 2012), does not stand for the proposition GE claims it does. *Castro Valley* denied certification under 23(b)(2) because the plaintiffs *did not address (b)(2) relief in their brief*, not because some class members did not suffer from the defect.

many consumers who experienced repeat glass door explosions, including Plaintiff Grayson. (Dkt. 214 at 5-7.) GE also rehashes its argument that monetary relief is an adequate remedy. As stated in Plaintiff's Reply, however, monetary relief does nothing to warn current owners that they have a potentially dangerous microwave in their home. Because these microwaves pose a safety risk, money damages alone are inadequate.

**c. Declaratory Relief is Appropriate**

Plaintiffs do not seek declaratory relief separate and apart from their underlying claims. Rather, Plaintiffs seek corresponding declaratory relief, as authorized in Rule 23(b)(2), because it is "appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Here, corresponding declaratory relief runs part and parcel with all of Plaintiffs' claims, for the reasons set forth *supra*. Class members deserve a warning that their microwave is defective. Such relief would benefit the class as a whole and arises directly from Plaintiffs' claims, which all rest, at bottom, on the existence of a defect.

**d. Class Certification Does Not Pose a Risk of Double Recovery**

GE claims that all class members must fall into either the (b)(2) or (b)(3) class—with none overlapping. But the case they cite in support of that notion says the opposite. *Hofstetter v. Chase Home Fin., LLC*, No. C 10-01313 WHA, 2011 WL 1225900, at *15 (N.D. Cal. Mar. 31, 2011), notes, "[i]njunctive relief is a prerequisite for restitution. If this class succeeds on its claim for injunctive relief, then class members may be allowed to seek restitution as well." As *Hofstetter* makes clear, class members are not required to fall into a strict either/or binary of (b)(2) or (b)(3). Here, all class members are entitled to be warned that their 1090/1095 microwave is defective. They might also then qualify for additional relief or compensation. The existence of one does not automatically disqualify the other. *See also Bietsch*, 2016 WL 1011512 at *12 ("[O]ne option Plaintiffs may choose to pursue is 'divided certification,' proceeding first under Rule 23(b)(2) and then under Rule 23(b)(3) if they succeed in obtaining declaratory relief."); *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 316 (S.D. Fla. 2001) (certifying a class under (b)(2) for purposes of equitable relief, and a class under (b)(3) for purposes of damages,

and finding no issue with the fact that the two classes overlap).

To the extent there is any risk of "double recovery," as GE hypothesizes (Dkt. 243 at 23), this does not flow inherently from the class definition and thus should not bar certification. Rather, any risk of overlapping recovery would stem only from the injunctive, not the declaratory relief, and it is easily solvable. For example, the Court could, in its discretion, choose to limit the injunctive relief to those individuals who do not receive compensation in the (b)(3) class. Moreover, the Court could choose not to enter the first two forms of injunctive relief, and instead only enter the third—requiring GE to publicly acknowledge the existence of the defect and require GE to provide notice of the defect. If only this form of injunctive relief is entered, there is no risk of double recovery. Alternatively, if the Court determines that repair or replacement under an extended warranty together with monetary relief would be duplicative, class members who recover damages could be excluded from also subsequently seeking repair or replacement of their microwaves under an extended warranty. In short, this is not a problem in need of a solution. It is a problem invented by GE to preclude a fair and just solution under the flexible rubric of class action litigation.

**6. <u>GE's Argument Against Certifying the Texas Implied Warranty Subclass Has Been Rejected by the Fifth Circuit</u>**

GE incorrectly argues that Texas requires a defect to manifest in a product's useful life in order to recover for breach of implied warranty. But the Fifth Circuit disagrees and rejected precisely this argument in *McManus* on the basis that breach of implied warranty is a contract cause of action, and therefore class members' "injury" is that they did not receive the benefit of their bargain:

> [Defendant] emphasizes that the [Plaintiffs] have not shown any class members were actually injured. These arguments misapprehend the nature of the implied warranty of merchantability cause of action. In this contract cause of action, the [Plaintiffs] seek the difference in the actual value of the motor home and the value as warranted. Here, the damages sought by the [Plaintiffs] are not rooted in the alleged defect of the product as such, but in the fact that they did not receive the benefit of their bargain. Thus, whether or not any member of the class actually suffered any physical injury is immaterial.

*McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 552 (5th Cir. 2003) (internal quotations and citations omitted).

The cases GE cites to the contrary either do not interpret Texas law, *see, e.g., Briehl v. Gen. Motors Corp*., 172 F.3d 623, 628 (8th Cir. 1999);[11] *In re Canon Cameras*, 237 F.R.D. 357, 360 (S.D.N.Y. 2006), or were decided prior to *McManus* and directly contradict the binding Fifth Circuit precedent it announced. *See In re Gen. Motors Type III Door Latch Litig*., Nos. 98-C-5836, MDL No. 1266, 2001 WL 103434 (N.D. Ill. Jan. 31, 2001); *Microsoft Corp. v. Manning*, 914 S.W.2d 602, 609 (Tex. App. 1995). The only other cases GE cites are both in the context of a motion to dismiss for lack of standing, not a motion for class certification, and, in any event, do not actually contradict the holding in *McManus*. In *Polaris Indus., Inc. v. McDonald*, 119 S.W.3d 331, 340 (Tex. App. 2003), for instance, the plaintiff ***never*** alleged that he that he did not receive the benefit of his bargain. Accordingly, the court held the plaintiff did not have standing to bring the case. That is *consistent* with the holding in *McManus*, which held that damages stem from the fact that the plaintiffs did not receive the benefit of the bargain. Similarly, in *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 856 (Tex. App. 2005), the court decided on the merits that the plaintiff had not "pleaded the existence of a defect that renders [the products] unfit for the ordinary purposes for which they were intended." But whether a product is fit or unfit for its ordinary purpose goes to the merits and, according to *McManus*, "should not affect the certification decision." 320 F.3d at 552.

GE's feeble attempt to distinguish *McManus* on the facts likewise fails. GE alleges that because only a percentage of its 1090/1095 microwaves have exploded thus far, Plaintiffs will not be able to prove the existence of a defect on a classwide basis. But as *McManus* makes clear, plaintiffs do not need to demonstrate that every single class member's microwave will inevitably

---

[11] This decision was also in the context of a motion to dismiss, not a motion for class certification, and in fact specifically noted that class certification decisions arise in a different context because those decisions rightfully do not look to the merits. *Briehl*, 172 F.3d at 628 n.8.

explode to prove a breach of the implied warranty; rather, plaintiffs need only demonstrate that the class did not receive *the benefit of their bargain*. In other words, Plaintiffs need only demonstrate at trial that microwaves with a propensity to explode are worth less than the microwaves as warranted or worth nothing at all. *See also Inman v. DaimlerChrysler Corp.*, No. 00-61082-3, 2002 WL 31952969, at *2-4 (Tex. Co. Ct. July 3, 2002). And Plaintiffs' damages expert does just that. (Dkt. 166 at Ex. A2 at ¶¶ 9-17; Ex. A3 at ¶¶ 7.)

Mequet, therefore, is an adequate class representative. Mequet, like the rest of the class, purchased a microwave but did not receive the benefit of his bargain. Instead of receiving a microwave as warranted, Mequet received a microwave with a propensity to explode—and in fact did explode. Mequet, like the class, has therefore been injured.

## 7. Conclusion

For the aforementioned reasons, the Court should grant Plaintiffs' Motion for Class Certification.

Dated: February 2, 2017

Respectfully submitted,

\s\ Anna C. Haac

Hassan A. Zavareei (phv04346)
Anna C. Haac (phv06576)
**TYCKO & ZAVAREEI LLP**
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
(202) 973-0900
hzavareei@tzlegal.com
ahaac@tzlegal.com

Robert A. Izard (ct01601)
Seth R. Klein (ct18121)
**IZARD KINDALL & RAABE LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
(860) 493-6202
rizard@irklaw.com
sklein@irklaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2017, a redacted copy of the foregoing, as well as the non-confidential portions of the exhibits cited therein, were filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

I also hereby certify that on February 2, 2017, an unredacted copy of the foregoing, as well as the exhibits cited therein, were filed under seal and served via electronic mail and/or overnight delivery upon all ECF recipients.

/s/ Anna C. Haac
Anna C. Haac (phv06576)
TYCKO & ZAVAREEI, LLP
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
(202) 973-0900
(202) 973-0950 *facsimile*
ahaac@tzlegal.com

*Attorneys for Plaintiffs*