**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **GLEN GRAYSON and DOREEN** | : | |
| **MAZZANTI, individually and** | : | |
| **on behalf of themselves and all** | : | |
| **others similarly situated,** | : | **3:13cv1799 (WWE)** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **GENERAL ELECTRIC COMPANY,** | : | |
| **Defendant.** | : | |

**MEMORANDUM OF DECISION ON MOTIONS TO SEAL AND TO PRECLUDE**

This action is a putative class action on behalf of consumers who purchased

defendant General Electric Company's ("GE") microwave ovens with an alleged design

defect that caused the glass doors to shatter.

Defendant moves to have this Court seal certain information in exhibits,

memoranda, expert reports and depositions.   Defendant also moves to preclude expert

testimony and reports of Thomas Read, Abraham Wyner and Colin Weir pursuant to

Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509

U.S. 579 (1993).

Upon review, the Court will grant the motions to seal in part, and it will deny the

motions to seal in part.   The motion to preclude Read's expert testimony and report will

be denied; the motion to preclude Wyner's expert testimony and report will be denied in

part, denied in part without prejudice, and granted in part; and the motion to preclude

Weir's expert testimony and report will be denied without prejudice.

**DISCUSSION**

Upon a showing of compelling circumstances, the court may order certain records to be sealed. See Joy v. North, 692 F.2d 880, 893 (2d Cir.1982).   Judicial records enjoy a "presumption of openness" that is rebuttable upon a demonstration that sealing the record will preserve high values and is narrowly tailored to serve that interest.   Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 96 (2d Cir. 2004).   Where the public interest in the case is higher, restraints on access are less acceptable and a greater showing is necessary to overcome the presumption of access.   In re Agent Orange Product Liability Litigation, 104 F.R.D. 559, 573 (E.D.N.Y. 1985).   Class actions are by definition of public interest because some members of the public are members of the case, and "the standards for denying public access to the record" should therefore be strictly construed.   Shane Group, Inc. v. Blue Cross Blue Shield of Michigan, 825 F.3d 299, 305 (6th Cir. 2016).

The district court enjoys considerable discretion in determining whether good cause exists to overcome the presumption of open access to documents filed in federal courts.   Geller v. Branic Int'l. Realty Corp., 212 F.3d 734, 738 (2d Cir. 2000).   A judge should carefully and skeptically review sealing requests to insure that there is an extraordinary circumstance or compelling need.   In re Orion Pictures Corp., 21 F.3d 24, 27 (2d Cir. 1994).

"Documents falling into categories commonly sealed are those containing trade secrets, confidential research and development information, marketing plans, revenue

information, pricing information, and the like."   Cumberland Packing Corp. v. Montsanto Co., 184 F.R.D. 504, 506 (E.D.N.Y. 1999).   However, courts have not afforded significant weight to non-trade secret but confidential business information, which is not entitled to the same level of protection from disclosure as trade secret information. Littlejohn v. BIC Corp., 851 F.2d 673, 685 (3d Cir. 1988).   Business documents that are secret or that might cause adverse publicity if disclosed do not automatically warrant a protective order, and broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the standard for nondisclosure.   In re Parmaat Securities Litig., 258 F.R.D. 236, 244 (S.D.N.Y. 2009).

Generally, courts consider the following six factors to assess whether information is "sufficiently valuable and secret" to merit protection:   (1) The extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.   Id.

**Motion to Seal Certain Confidential Information**

Defendant seeks to seal documents filed in connection with plaintiffs' motion for class certification.   Defendant argues that sealing documents reflecting its analysis of consumer injuries and complaints of defective microwaves is necessary to protect confidential and proprietary information.   In particular, defendant asserts that the

records contain confidential business information, the disclosure of which might harm its reputation and competitive standing.

Specifically, defendant seeks sealing of documents from its Microwave Oven Product Line Safety Council; excerpts from its Safety Database pertaining to alleged incidents of glass door breakage in its microwave ovens; excerpts from its Factory Service Database; deposition testimony related to pricing, repair cost and other confidential information; and redacted portions of the parties' expert reports that pertain to confidential information.

<u>Information from Safety Council, Safety Database and Service Database</u>

Defendant asserts that the GE Microwave Safety Council includes only senior technical, legal and business leaders within GE's Appliance & Lighting business; it reviews data and information to determine whether further action should be undertaken. Defendant requests that Safety Council documents be sealed as sensitive, proprietary business information, which reveals how GE reviews safety issues of its microwave ovens; approval and implementation of corrective actions; and procedures of corrective measures by GE and its suppliers.

Defendant states that its Safety Database contains confidential and proprietary information including the identity of GE's suppliers, discussions of issues associated with certain GE product lines, not limited to microwave ovens; corrective action determinations; and confidential personal information.

Defendant explains that information from its Service Database concerns product parts that required repair or replacement that is not limited to glass breakage.

4

Defendant maintains that it has restricted dissemination of these documents and stored them on a secure drive.   Defendant asserts that disclosure would cause harm because competitors could improve their own business and or develop a branded-product business.   Defendant states: "If GE's competitors were to gain access to documentation regarding potential future designs, recommended modifications of existing designs, and performance issues relating to GE-branded microwave ovens, GE's competitors would unfairly gain a competitive advantage."   Defendant goes on to express concern that competitors could use or distort information regarding consumer issues and concerns associated with its microwaves because the documents contain information based on unsubstantiated consumer complaints.   Finally, defendant argues that the personally identifiable information of GE consumers justifies sealing the documents.

Consumer complaints and information relevant thereto involving the allegedly defective microwave are highly relevant to the class certification of this case and to members of the public, putative class members who may own the defective microwaves. Generally, the Court finds that the risk of competitive harm to defendant is lower than the high level of public interest in a class action involving a defective product that could potentially cause harm.

Thus, the Court will deny the motion to seal with regard to the Microwave Safety Council documents G1, G2, G3, G4, which reflect consumer complaints and reveal little information about designs or marketing that could enable a competitor to gain an unfair economic or competitive advantage.   Although defendant expresses concern that it will

5

suffer reputational injury if competitors have access to unsubstantiated consumer complaints, plaintiffs point out that consumer complaints are accessible to the public through the Consumer Product Safety Commission.  The Court is not persuaded that defendant's concern for competitive harm or reputational injury outweigh the presumption of public access and the public interest in product safety.   The Court will deny the motion to seal as to consumer reports of microwave oven glass door breakage.   However, the Court will grant the motion to seal as to consumer personal identifying information regarding defendant's consumers should be redacted.[1]

The Court will grant the motion to seal as documents G5 through G12, which reveal defendant's internal investigations, communications, and policies and procedures of the Microwave Safety Council relevant to problems with the defendant's microwaves. Defendant has expended resources to develop these analyses of microwave safety issues; it has taken measures to ensure that this information is confidential and that the information is not known outside of the Microwave Safety Council.   The Court finds that sealing this information is appropriate as disclosure could cause defendant significant competitive harm.

Additionally, the Court finds that the names of defendant's suppliers should be redacted.   Defendant has limited disclosure of its supplier information by allowing for access only upon entering a code found on the microwave product; broad disclosure of

---

[1]Information such as names, addresses, insurance carriers, medical information should be redacted.

such information could likely cause defendant a competitive harm that outweighs consumers' interest in broadened access.

The Court will grant the motion to seal redactions to F1 and F2 from the Microwave Safety Database and Factory Service Database, respectively, regarding the product manufacturers and consumer identifying information.

The Court will deny the motion to seal as to references to consumer incident reports regarding microwave oven glass door breakage as reflected in these exhibits.

<u>Pricing, Sales and Profit Information</u>

Plaintiffs represent that they do not oppose sealing documents concerning pricing and profit, with the exception of sales information detailing the number of microwaves sold.   Defendant maintains that this information should be sealed because it is drawn from confidential sales figures.   Information concerning the amount of microwaves sold relates directly to confidential information about pricing and profit, and disclosure thereof could cause defendant competitive harm.   <u>See</u> <u>Apple Inc. v. Samsung Elecs. Co.</u>, 727 F.3d 1214, 1225 (Fed. Cir. 2013) (holding that detailed product-specific financial information, including costs, sales and profits merited sealing as confidential information).   Accordingly, the Court will grant the motion to seal as to the documents or information relevant to pricing, sales and profit.

<u>Design Documents</u>

GE seeks to seal exhibits H1 and H3-H6 containing documents related to the design and design changes of the allegedly defective GE microwave oven.   This is the type of information that is generally kept confidential and outweighs the presumption of

public access due to its importance to competition in the relevant field.   See Culinary

Foods v. Raychem Corp., 151 F.R.D. 297, 305 (N.D. Ill. 1993) (noting that disclosure of

Raychem's product design modification and changes would decrease Raychem's

incentive to invest in safety devices).

However, the Court will not grant the motion to seal as to Exhibit H1, which is

entitled Branded Product Change Request ("BPCR").   The BPCR document indicates

an origination date of November 26, 2001, with approvals on November 27, 2001, and

January 14, 2002.   It details a proposed change to the manufacture of the spring hinge

of the 1090/1095 microwave oven door.   Defendant has a weaker interest in retaining

confidentiality in a document describing changes to products that have been in the

market for years.   See Gustafson v. Goodman Mfr. Co. LP, 2016 WL 393640 (D. Ariz.

Feb. 2, 2016).

Defendant maintains that its competitors could use the information in Exhibit H1

to better understand how defendant develops products, considers design elements, and

assesses risks.   However, such concern for confidentiality is diminished due to the age

of the document, the fact that the 1090/1095 models are no longer being produced, and

the limited amount of information contained therein.   Further, the document presents

important information to the putative class members regarding the fact that a change to

spring hinge occurred relevant to the 1090/1095 microwave.   The Court is not

persuaded that defendant's interest in sealing the BPCR outweighs that of the public

policy favoring access to court filings.

The Court will grant the motion to seal as to Exhibits H3 though H6.   Exhibit H3

reveals analysis of the spring design, while H4 through H6 represents the evaluation conducted by an individual identified as a co-op, a position similar to an intern, of specific products returned to defendant. The Court finds that these exhibits contain specific confidential information regarding product design, testing and evaluation.

**Motion to Seal Opposition to Motion for Class Certification and Exhibits**

Defendant seeks to seal the opposition to the motion for class certification and Exhibits B1, I, L, M, and U; and the redacted portions of its opposition brief, Exhibit D, and Exhibit F.

In light of the foregoing discussion, the Court will seal: (1) Exhibit B1, which discloses sales data; (2) redactions to Exhibit D concerning sales data; and (3) redactions to Exhibit F concerning references to profits and sales.   However, the Court will not grant the motion to seal as to Exhibit I concerning excerpts from GE's Safety Database that reflect consumer complaints of microwave door glass breakage; and Exhibit M, which is the BPCR document from November 26, 2001.

The Court will also deny the motion to seal as to Exhibit L (a spread sheet of repair costs paid by consumers and discounts) and redactions to Exhibit F concerning repair costs.   Although defendant maintains these records as confidential and limits access thereto, the Court notes that this is information that pertains to the amounts that consumers themselves have paid, which diminishes defendant's interest in the confidentiality of the information.   Accordingly, the Court is not persuaded that defendant's interest in confidentiality outweighs the public's interest in access to documents filed in this class action.

The Court will grant in part the motion to seal Exhibit U, which reflects excerpts from the Seibel Database of consumer reported complaints; defendant's internal processes handling such reports; consumer personal contact information; and internal communications concerning the reported incidents, pricing information and responsive action taken by defendant.   Consistent with its prior discussion, the Court finds that information reflecting consumer reports concerning microwave oven door glass breakage does not merit sealing.   However, the Court will allow for redactions of the consumer's personal information, pricing information, internal policies and procedures, and internal communications regarding responsive action.

### Motion to Seal Confidential Information Filed with Plaintiffs' Reply to GE's Opposition to Motion for Class Certification

Defendant seeks to seal (1) portions of the plaintiffs' Reply brief that reflect confidential information from GE's Safety Database and from Dr. Daryl Williams' transcript; (2) portions of Plaintiffs' Exhibit entitled "Summary of Proposed Class Structures and Remedies" that quote or otherwise disclose confidential information produced by GE; (3) portions of Exhibit 6, the expert report of Duane Steffey, that constitute confidential information from GE's databases or sales data; (4) portions of Exhibit 8, the transcript of Dr. Daryl Williams, that contain or reveal GE's confidential information; and (5) portions of Exhibit 11, Read's deposition transcript, related to GE's confidential sales data, design documents, and an excerpt from GE's Safety Database.

Relevant to the Reply memorandum, the Court will grant the motion to seal the references to defendant's sales data, internal policies and procedures, and internal communications regarding responsive action.   Relevant to Exhibit 1, the Court will

10

grant the motion to seal redactions to page 9, but the Court will deny the redactions to page 8 that concern the BPCR and the likelihood of glass breakage.   Relevant to Steffey's report, the Court will grant the motion to seal redactions concerning sales data. Relevant to Williams's transcript, the Court will grant the motion to seal as to references to pricing profits and sales; the contract manufacturing agreement; internal testing, investigations and communications; references to design documents and product development with the exception of the BPCR; and will deny the motion to seal as references to consumer or incident reports concerning microwave oven door glass breakage and to the BPCR.   Relevant to Read's transcript, the motion to seal is granted as to references to sales data; design documents and internal investigations with the exception of the BPCR.

### Motion to Preclude Expert Report and Testimony of Thomas L. Read

The district court has a "gatekeeping" role pursuant to Federal Rule of Evidence 702 and is charged with ensuring that an expert's testimony rests on a reliable foundation and is relevant to issues presented in the case.   Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002).   A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.   Fed. R. Evid. 702.

11

The Court should consider (1) whether a theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) a technique's known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation, and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community.   Daubert. 509 U.S. at 597; Amorgianos, 303 F.3d at 266.   The burden is on the party proffering the expert testimony to lay a foundation for its admissibility, and a court must consider the totality of the expert witness's background when evaluating expert qualifications.   Kuzmech v. Werner Ladder Co., 2012 WL 6093898, at *7 (D. Conn. 2012).

Read is a licensed manufacturing engineer with 45 years of experience performing glass failure analysis.   He examined ten different 1090/1095 microwaves, including seven that had glass breakage and three "exemplar" models with unbroken glass provided by defendant.   As to each of the ten models he examined, he reported visible scuff marks on the door-hinge where the spring had rubbed against the glass in the door.

Defendant maintains that Read's opinion should be precluded due to incomplete examination of the product model.   Defendant characterizes Read's analysis as an extrapolation theory based on an insufficient sampling size.   Alternatively, defendant requests that Read's testimony regarding alternative design theories be excluded as unreliable even if Read is allowed to testify on other topics.

Defendant criticizes Read's opinion as flawed due to his examination of an

12

insufficient number of microwaves that is "hopelessly unreliable," without "explanation for why 99% of the [microwave oven] glass doors never shattered."   Defendant points out that even the opinion of plaintiffs' statistical expert Abraham Wyner underscores the weakness of Read's analysis.   Defendant asserts that Read lacks experience with the design of microwave ovens and appliance doors, springs or hinges.   Additionally, defendant faults Read's proffer of several untested alternative design theories that he asserts could or should have prevented the glass breakage.   Defendant claims that Read was unable to justify the foundation for his design theories, which have not been subjected to peer review and were prepared solely for litigation purposes.

Rule 702 requires a witness to be qualified by knowledge, skill, experience, training or education.   <u>Kuzmech</u>, 2012 WL 6093898, at *7.   Here, Read's background specific to glass failure can assist the trier of fact on the issues relevant to this case. The Court finds that Read is a qualified expert as to glass failure, which is highly relevant to this case.

Although defendant maintains that Read's conclusions are unreliable and constitute speculation due to his inadequate examination, his opinions are not so unreliable that preclusion is necessary.   Defendant may attack the asserted flaws in Read's testimony on cross examination.   Accordingly, the motion to preclude will be denied.

### Motion to Seal Memorandum of Law in Support of Motion to Preclude Read

Defendant seeks to seal certain confidential documents and information referenced in its brief to preclude Read's expert opinion.   Specifically, defendant seeks

13

to seal redactions to Read's declaration (Exhibit A) concerning the BPCR, Tolerance Analysis, Safety Database, Service Database, and Safety Council documents; redactions to deposition transcript (Exhibit B) concerning the number of 1090/1095 microwaves sold; redactions to the report (Exhibit D) by Dr. Paul Verghese that quotes from GE's confidential Safety Database; and information in the memorandum of law regarding sales data and excerpts from GE's confidential Safety Database.

In light of the foregoing discussion, the Court will grant the motion to seal as to the redactions to Exhibit A regarding the Tolerance Analysis and internal policies and procedures reflected in the Safety Council documents; and as to the redactions to Exhibit B and the memorandum of law regarding sales numbers.

The Court will deny the motion to seal with regard to the redactions to Exhibit A concerning any consumer reports of microwave oven door glass breakage from the Safety and Service Databases and to the BPCR; the Court will also deny the motion to seal as to redactions to Exhibit D and the memorandum of law concerning consumer reports of microwave oven door glass breakage from the Safety Database.

**Motion to Preclude Expert Report and Testimony of Abraham Wyner**

Defendant moves to preclude the report and testimony of statistical expert Wyner, arguing that his opinions are unreliable and misleading.   Wyner is a tenured Statistics Professor at the University of Pennsylvania's Wharton School of Business. Defendant does not challenge Wyner's expertise to offer a statistical opinion. Defendant seeks to exclude: (1) Wyner's opinion that the 1090/1095 microwave ovens are 1,000 times more likely to have a glass door breakage than defendant's non-

14

1090/1095 microwaves; (2) his opinion that the 1% failure rate of the 1090/1095 microwaves violates the "Six Sigma" statistical paradigm; and (3) certain personal opinions expressed in his deposition and expert report.

Plaintiffs respond that: (1) Wyner's statistical analysis is not flawed by inclusion of non-spontaneous glass breakage because such incidents are presumed to be "neutrally distributed" among all microwave models; (2) Wyner will not offer expert opinion regarding defendant's internal manufacturing implementation of the "Six Sigma" standard but should be allowed to offer opinion regarding "Six Sigma" as a general statistical concept; and (3) Wyner's personal or non-expert opinions in his deposition testimony and his expert report may be precluded.

Although defendant asserts that plaintiffs provide no evidentiary support for Wyner's neutral distribution theory, defendant will have the opportunity to cross examine Wyner.   The Court finds that Wyner's statistical analysis is not so unreliable that it merits preclusion.

The Court will defer ruling on whether Wyner will be allowed to testify regarding the general concept of "Six Sigma."   The Court has not relied upon Wyner's discussion of "Six Sigma" for purposes of resolving the issue of class certification.   Should the concept of "Six Sigma" require expert testimony at a hearing or trial, the Court will allow for a voir dire of Wyner regarding his ability to offer reliable testimony that would be of assistance to the trier of fact.

The motion to preclude will be denied as to Wyner's statistical analysis; granted as to his non-expert observations; and denied without prejudice as to his testimony

15

regarding the "Six Sigma" concept.

**Motion to Seal Memorandum of Law in Support of Motion to Preclude Wyner**

Defendant moves to seal certain portions of its exhibits and memorandum in support of its motion to preclude Wyner's expert report and testimony.   Specifically, it seeks redaction of Wyner's deposition testimony revealing data from defendant's confidential Safety Database (Exhibit A); redacted portions of Wyner's Report revealing data from defendant's confidential Safety Database, sales data, and Safety Council information (Exhibit B); redacted portions of the report by Dr. Paul Verghese quoting from GE's Safety Database (Exhibit C); and redactions to defendant's memorandum of law concerning sales data and information from the Safety Database.

In light of the foregoing discussion, the motion to seal will be granted as to internal testing, investigations, communications, policies and procedures, design documents, and sales data in Exhibits A, B, C and defendant's memorandum of law; the motion to seal will denied as to references to consumer reports of microwave oven door glass breakage in Exhibits A, B, C and defendant's memorandum of law.   The Court will also grant the motion to seal as to discussion of the Six Sigma standard in Exhibit B.

**Motion to Preclude Report and Testimony of Colin Weir**

Defendant seeks to preclude the expert report and testimony of Colin Weir, plaintiffs' proposed expert regarding damages.   Defendant maintains that Weir's methodology is insufficiently rigorous and reliable to withstand a Daubert challenge. Specifically, defendant attacks Weir's "diminution in value" analysis as based on

unexplained assumptions; his disgorgement theories as conflicting with plaintiffs' theory of the case; his apportionment theory as flawed due to his use of an unjustifiable data set; and his damages calculations as based on simple arithmetic that do not constitute expert opinion.   The Court notes that previous courts have deemed Weir to be a qualified expert with regard to damages calculations.   See Hughes v. The Ester C Co., 317 F.R.D. 333, 342 (E.D.N.Y. 2016) (citing cases).

Although defendant asserts that this Court should exercise its gatekeeping function by precluding Weir's expert opinion, the Court will defer on making such a ruling at this stage of the case prior to any need to make a damages calculation.   At this stage of class certification, plaintiffs have submitted Weir's opinions in support of their assertion that the damages can be calculated on a class-wide basis; that the class action will be manageable; and that it constitutes the superior method of adjudication. The Court finds that Weir's expert opinion is sufficient for the Court's consideration of the motion for class certification.   See id.   The motion to preclude will be denied without prejudice.

**Motion to Seal Memorandum of Law In Support of Motion to Preclude Weir**

Defendant's motion to seal the memorandum of law in connection with its motion to preclude Weir concerns redactions to:   (1) Portions of Exhibit B, Weir's report, that discuss defendant's Safety Database, sales, profit information, and costs of repairing microwaves including discounts provided; (2) references in Exhibit C, Weir's deposition, to sales data; (3) portions of Exhibit D, Wyner's report, discussing information from the Safety Database, sales data, and Safety Council information; (4) portions of Exhibit E,

17

Verghese's report, quoting from the Safety Database; (5) the portion of Exhibit F, Weir's rebuttal report, that discusses sales data; (6) portions of Exhibit G, William Choi's report, that quote or discuss sales data, profits, and costs of replacing microwave oven doors; (7) an excerpt from Exhibit M, the deposition of Brian Buente, defendant's Finance Manager for Global Product Management and Technology, discussing defendant's profits; and (8) portions of defendant's memorandum of law that refer to sales data for the 1090/1095 microwave ovens, and that quote from Buente's deposition testimony.

The Court will grant the motion to seal references to internal testing, investigations, communications, policies and procedures, design documents, and sales data in Exhibits B, C, D, E, F, G, M and the memorandum of law; the Court will deny the motion with regard to consumer reports of microwave door glass breakage, the BPCR, and costs of repair and discounts in Exhibits B, C, D, E, F, G, M and the memorandum of law.

### Motions to Seal Confidential Information filed with Plaintiffs' Opposition to Motions to Preclude Read, Wyner, and Weir

Defendant seeks to seal certain information presented in plaintiffs' opposition briefs and exhibits attached thereto to defendant's motions to preclude.

<u>Read</u>

In its brief, defendant specifies that it seeks to seal redactions in plaintiffs' opposition brief and Read's deposition transcript that reveal information about defendant's design documents, internal investigations and Safety Database.

The Court will grant the motion to seal as to redactions relevant to design documents and the Tolerance Analysis; the Court will deny the motion to seal as to the transcript redactions that reference the BPCR and microwave oven glass breakage reports.

Wyner

Defendant seeks to seal redactions to Wyner's deposition that concern sales data, information from a Safety Council document, information from the Safety Database, redaction of Figure 1 from Wyner's report that reflects information from the Safety Database, and two redactions to plaintiffs' opposition brief to the motion to Wyner that concerns information from the Safety Database.

The Court will grant the motion to seal with regard to references to defendant's sales, profits and financial information in Wyner's deposition transcript; the Court will deny the motion to seal the redactions to the memorandum, Wyner's transcript and Wyner's report concerning reports of microwave oven door glass breakage and his analysis thereof.

Weir

Relevant to the opposition brief concerning preclusion of Weir, defendant seeks to seal redacted portions of the brief and Weir's deposition transcript that refer to profits, discounts, and costs to repair microwaves; information concerning the cost of repairs; and information from defendant's Safety Database.

19

The Court will grant the motion to seal the redactions relevant to profits, pricing, and financial and damages information.[2]   However, the Court will deny the motion to seal as to references to reports of microwave oven door glass breakage from the Safety Database and analysis thereof, and repair costs and discounts.

**Motion to Seal Defendant's Reply in Further Support of its Motion to Preclude**

Defendant moves to seal redactions to its Reply brief in Further Support of its Motion to Preclude the Expert Report and Testimony of Read that references sales data. The Court will grant the motion to seal the redactions that reference sales data.

## CONCLUSION

For the foregoing reasons, the Court makes the following rulings:

 **The Motion to Seal Certain Confidential Information [doc. 164]** is DENIED as to the information that reflects consumer complaints about microwave oven door glass breakage; and the BPCR.   The motion to seal is GRANTED as to identifying information relevant to the product manufacturers/suppliers and consumer identifying information; defendant's internal investigations, evaluation, testing, communication, and policies and procedure with regard to microwave safety issues; references to defendant's pricing, sales, profit, and design documents.

**The Motion to Seal Opposition to Motion for Class Certification and Exhibits B1, D, F, I, L, M and U [doc. 178]** is DENIED as to redactions of consumer

---

[2] The Court will not rely upon Weir's damages calculation to determine the motion for certification.

reports of microwave oven door glass breakage; information concerning repairs and discounts to consumers; and the BPCR.   The motion to seal is GRANTED as to disclosures of sales, pricing and profit; consumer personal information; internal policies and procedures; and internal communications regarding responsive action.

**The Motion to Preclude Expert Report and Testimony of Thomas Read [doc. 180]** is DENIED.

**The Motion to Seal Memorandum of Law in Support of Motion to Preclude Report and Testimony of Thomas Read and Exhibits A, B and D [doc. 181]** is DENIED as to the redactions to Exhibit A concerning any consumer reports of microwave oven door glass breakage from the Safety and Service Databases and the BPCR; and the redactions to Exhibit D and the memorandum of law concerning consumer reports of microwave oven glass door breakage from the Safety Database. The motion to seal is GRANTED as to the redactions to Exhibit A regarding the Tolerance Analysis and internal policies and procedures reflected in the Safety Council documents; and as to the Exhibit B and the memorandum of law regarding sales numbers.

**The Motion to Preclude Expert Report and Testimony by Abraham J. Wyner [doc. 183]** is DENIED as to Wyner's statistical analysis; GRANTED as to his non-expert observations; and DENIED without prejudice as to his testimony regarding the "Six Sigma" concept.

**The Motion to Seal Memorandum of Law in Support of Motion to Preclude Abraham Wyner and Exhibits A, B and C [doc. 184]** is DENIED as to references to

consumer reports of microwave oven glass door breakage in Exhibits A, B, C and

defendant's memorandum of law; the motion is GRANTED as to internal testing,

investigations, communications, policies and procedures, design documents, and sales

data in Exhibits A, B, C and defendant's memorandum of law; and as to discussion of

the Six Sigma standard in Exhibit B.

**The Motion to Preclude Report and Testimony of Colin Weir [doc. 186]** is

DENIED without prejudice.

**The Motion to Seal Memorandum of Law in Support of Motion to Preclude**

**Colin Weir and Exhibits B, C, D, E, F, G and M [doc. 187]** is DENIED as to

references to consumer reports of microwave oven door glass breakage, the BPCR,

and costs of repair and discounts in Exhibits B, C, D, E, F, G, M and the memorandum

of law.   The Motion is GRANTED as references to internal testing, investigations,

communications, policies and procedures, design documents, and sales data in Exhibits

B, C, D, E, F, G, M and the memorandum of law.

**The Motion to Seal Confidential Information filed with Plaintiffs' Opposition**

**to Motion to Preclude Colin Weir [doc. 208]** is DENIED as to references to consumer

reports of microwave oven door glass breakage, and repair costs and discounts; and

GRANTED as to redactions relevant to profits, pricing, and financial information and

damages.

**The Motion to Seal Confidential Information filed with Plaintiffs' Opposition**

**to Motion to Preclude Abraham J. Wyner [doc. 209]** is DENIED as to redactions to

the memorandum, Wyner's transcript and Wyner's report concerning consumer reports

of microwave oven door glass breakage; and GRANTED as to references to defendant's sales, pricing, profits and financial information in Wyner's deposition transcript.

**The Motion to Seal Confidential Information filed with Plaintiffs' Opposition to Motion to Preclude Thomas L. Read [doc. 210]** is DENIED as to the redactions concerning microwave oven door glass breakage reports from the Safety Database and Read's analysis thereof and references to the BPCR; the motion to seal is GRANTED as to references to design documents and the Tolerance Analysis.

**The Motion to Seal Confidential Information Filed with Plaintiffs' Reply to GE's Opposition to Motion for Class Certification [doc. 211]** is DENIED as to references to consumer reports of microwave oven door glass breakage, the likelihood of glass breakage and the BPCR.   The motion to seal is GRANTED as to references to defendant's sales data; internal investigations, testing policies and procedures, and communications; the contract manufacturing agreement; design documents and product development with the exception of the BPCR.

**The Motion to Seal Defendant's Reply in Further Support of Its Motion to Preclude Thomas L. Read by General Electric Company [doc. 219]** is GRANTED as to redactions that reference sales data.

Dated this _7th__ day of March 2017 at Bridgeport, Connecticut.

/s/ Warren W. Eginton
Warren W. Eginton
Senior United States District Judge

23