**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

GLEN GRAYSON, DOREEN MAZZANTI,
DANIEL LEVY, DAVID MEQUET and
LAUREN HARRIS, individually and on behalf
of themselves and all others similarly situated,

No. 3:13-cv-01799-WWE

(Consolidated Docket No.)

Plaintiffs,

v.

APRIL 30, 2020

GENERAL ELECTRIC COMPANY,

Defendant.

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES**
**AND FOR LEAD PLAINTIFF SERVICE AWARDS**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 2

        A.      Summary of Claims and Defenses .......................................................... 2

        B.      Procedural History and Discovery .......................................................... 3

                1.      *This Case Has Been Extensively Litigated*................................. 3

                2.      *Discovery Has Been Extensive*.................................................... 6

                3.      *The Parties Engaged in Extensive Arms'-Length Mediations and
                        Negotiations* ................................................................................. 8

III.    CLASS COUNSEL'S LODESTAR AND UNREIMBURSED EXPENSES ................... 9

IV.     THE COURT SHOULD APPROVE THE REQUESTED AWARD OF LITIGATION
        EXPENSES ...................................................................................................... 10

V.      THE COURT SHOULD APPROVE THE REQUESTED AWARD OF ATTORNEYS'
        FEES TO BE PAID BY DEFENDANTS TO CLASS COUNSEL ............................... 11

        A.      Class Counsel Is Entitled to Compensation .......................................... 11

        B.      The Court Should Use the Lodestar Method to Award Fees in This Case .......... 12

        C.      The Fee Award Is Supported by the *Goldberger* Factors ..................... 15

                1.      Counsel's Time and Labor........................................................ 15

                2.      The Magnitude and Complexity of the Litigation .................... 16

                3.      The Risk of the Litigation ........................................................ 17

                4.      The Quality of the Representation ............................................ 20

                5.      Public Policy Considerations ................................................... 21

                6.      The Requested Fee in Relation to the Settlement .................... 22

                7.      Reaction of the Class ............................................................... 22

VI.     THE COURT SHOULD APPROVE THE REQUESTED AWARD OF LEAD
        PLAINTIFF SERVICE AWARDS TO BE PAID BY DEFENDANTS ........................ 23

VII.    CONCLUSION..............................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Boeing* Co. v. Van Gemert,
    444 U.S. 472 (1980)..................................................................................................... 13

*Bozak v. FedEx Ground Package Sys., Inc.*,
    No. 3:11-CV-00738-RNC, 2014 WL 3778211 (D. Conn. July 31, 2014)............................... 11

*City of Detroit v. Grinnell Corp.*,
    356 F.Supp. 1380 (S.D.N.Y.1972), *aff'd in part and rev'd in part on other grounds*,
    495 F.2d 448 (2d Cir.1974)........................................................................................... 19

*City of Sunrise Gen. Emp. Ret. Plan v. FleetCor Techs., Inc.*,
    No. 17-cv-02207-LMM (N.D. Ga. Mar. 24, 2020).................................................... 25

*deMunecas v. Bold Food, LLC*,
    No. 09 Civ. 440 (DAB), 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ................................ 16

*Dornberger v. Metropolitan Life Ins. Co.*,
    203 F.R.D. 118 (S.D.N.Y. 2001) ................................................................................ 24

*Edwards v. North American Power & Gas, LLC*,
    No. 14-cv-01714 (VAB), 2018 WL 3715273 (D. Conn. Aug. 3, 2018)................................. 12

*Elliot v. Leatherstocking Corp.*,
    No. 10 Civ. 0934 (MAD) (DEP), 2012 WL 6024572 (N.D.N.Y. Dec. 4, 2012)............... 23, 24

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
    307 F.3d 997 (9th Cir. 2002) ....................................................................................... 18

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005).................................................................................. 24

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)............................................................................ 11, 12, 15, 17, 22

*Hall v. ProSource Technologies, LLC*,
    No. 14 Civ. 2502 (SIL), 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) .................................. 23

*Harman v. Lyphomed, Inc.*,
    945 F.2d 969 (7th Cir. 1991) ....................................................................................... 18

*Hernandez v. Merrill Lynch & Co., Inc.*,
 No. 11 Civ. 8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ..................................... 16, 24

*Hicks v. Stanley*,
 No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).................... 11, 17, 21

*Homeward Bound, Inc. v. Hissom Mem'l Ctr.*,
 963 F.2d 1352 (10th Cir. 1992) ........................................................................... 18

*In re Abrams & Abrams, P.A.*,
 605 F.3d 238 (4th Cir. 2010) ............................................................................. 21

*In re China Sunergy Sec. Litig.*,
 No. 07 Civ. 7895 (DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011)................................ 10

*In re Dun & Bradstreet Credit Serv. Customer Litig.*,
 130 F.R.D. 366 (S.D.Ohio 1990) ........................................................................ 19

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
 No. 02 Civ. 3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ........................ 21

*In re Marsh ERISA Litig.*,
 265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................ 21

*In re McKesson Corp Derivative Litig.*,
 No. 17-cv-01850-CW (N.D. Cal. Mar. 19, 2020).................................................... 25

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
 No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)................................... 10

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
 187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................ 15

*In re Polaroid*,
 No. 03 Civ. 8335 (WHP), 2007 WL 2116398 (S.D.N.Y. July 19, 2007).......................... 12, 24

*In re Priceline.com, Inc. Securities Litigation*,
 2007 WL 2115592 (D. Conn. July 20, 2007) ........................................................ 18

*In re Telik, Inc. Sec. Litig.*,
 576 F. Supp. 2d 570 (S.D.N.Y. 2008)............................................................... 11, 16

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
 724 F. Supp. 160 (S.D.N.Y. 1989) ..................................................................... 15

*In re Veeco Instruments*,
  No. 05 MDL 01695(CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ......................... 10, 19

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ................................................................. 22

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
  No. 16-md-02752-LHK (N.D. Cal. Mar. 23, 2020) ................................................... 25

*Isolde v. Trinity Industries, Inc.*,
  No. 15-cv-02093-K (N.D. Tex. Mar. 24, 2020) ..................................................... 25

*Joshi Living Trust v. Akorn, Inc.*,
  No. 18-cv-0171(N.D. Ill. Mar. 12, 2020) ........................................................... 25

*Karic v. Major Automotive Companies, Inc.*,
  No. 09 Civ. 5708 (CLP), 2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016) ............................... 24

*Kemp-DeLisser v. St. Francis Hospital and Medical Center Fin. Committee*,
  No. 15-cv-1113 (VAB), 2016 WL 6542707 (D. Conn. Nov. 3, 2016) ................................. 14

*Lewis v. Coughlin*,
  801 F.2d 570 (2d Cir. 1986) ........................................................................ 18

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................. 12, 21

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007) ........................................................................ 13

*McDaniel v. County of Schenectady*,
  595 F.3d 411 (2d Cir. 2010) ........................................................................ 12

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) .................................................................................. 15

*Puglisi v. TD Bank, N.A.*,
  2015 WL 4608655 (E.D.N.Y. July 30, 2015) .......................................................... 24

*Simerlein v. Toyota Motor Corp.*,
  No. 17-cv-1091 (VAB), 2019 WL 2417404 (D. Conn. June 10, 2019) ........................... 12, 15

*Spicer v. Pier Sixty LLC*,
  No. 08 Civ. 10240 (LBS), 2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012) ............................... 16

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003).........................................................................17

*Viafara v. MCIZ Corp.*,
    No. 12 Civ. 7452 (RLE), 2014 WL 1777438 (S.D.N.Y. May 1, 2014)...................................23

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005).............................................................................12, 15

*Zeltser v. Merrill Lynch & Co., Inc.*,
    No. 13 Civ. 1531 (FM), 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ...............................16

**Rules**

Fed. R. Civ. P. 23(c)(4).........................................................................................4, 8

Plaintiffs Glen Grayson, Doreen Mazzanti, Daniel Levy, David Mequet, and Lauren Harris (collectively, "Plaintiffs"), individually and on behalf of the Settlement Class (as defined in the Settlement Agreement),[1] respectfully submits this memorandum of law in support of their Motion for Award of Attorneys' Fees & Expenses and for Lead Plaintiff Service Awards. Plaintiffs request that the Court award $927,066.13 for attorneys' fees, $397,933.87 for reimbursement of Class Counsel's litigation expenses, and $5000 to each of the five Lead Plaintiffs ($25,000 total) in recognition for their service to the Class.

## I.    INTRODUCTION

In their Amended Consolidated Class Action Complaint [ECF No. 157] (the operative "Complaint"), her Fourth Amended Complaint, Plaintiffs allege that GE's 1090/1095 microwaves ("MWOs") all have a uniform defect that causes the metal spring door hinge to rub against the glass surface over time, eventually causing the glass door to spontaneously shatter. *See* Complaint at ¶¶ 25-50. After over ***six-and-a-half*** years of litigation, discovery, mediations and thorough, extensive and lengthy motion practice (including motions to dismiss, for class certification, to vacate the certification of the class, and for summary judgment), the Parties agreed to a settlement whereby Class Members were eligible to receive a cash award of $300 (where the claimant's microwave had suffered a shattering incident) or a cash or credit award of $5 (where the Class Member had suffered experienced a manifestation of the defect). This Court preliminarily approved the Settlement on January 15, 2020, and authorized Plaintiffs to give notice to the Settlement Class. *See* [ECF. No. 362].

---

[1] Capitalized terms used herein are defined in the Settlement Agreement [ECF No. 358-1]. For the Court's convenience, another copy of the Settlement Agreement is attached as Exhibit A to the Declaration of Seth R. Klein submitted herewith.

Plaintiffs have now filed a Motion for Final Approval of the Settlement ("Pl. Sett. App. Motion") and a Memorandum of Law in support thereof ("Pl. Sett. App. Mem."). Simultaneously therewith, Plaintiffs hereby respectfully ask the Court also to approve an award of attorneys' fees in the amount of $927,066.13, an award of heretofore unreimbursed expenses in the amount of $397,933.87, and Lead Plaintiff Service Awards of $5,000 each (totaling $25,000).[2]  This award is separate from, and will not diminish, the recovery available to any Class Member.  Plaintiffs respectfully submit that the requested amounts – which includes an attorneys' fee award with a severely ***negative*** (***0.25***) multiple of Class Counsel's lodestar – is eminently fair and reasonable.

## II.    BACKGROUND[3]

### A.    Summary of Claims and Defenses

Plaintiffs, on behalf of themselves and all others similarly situated, brought this consumer protection class action to remedy dangerous defects in certain GE-branded microwave oven models manufactured between 1995 and 2007 (specifically, model numbers JEB 1090, JEB 1095, ZMC 1090 and ZMC 1095).  *See* Complaint at ¶ 2.  Plaintiffs alleged that these models were defectively designed and/or manufactured such that the glass on the MWO doors can suddenly and spontaneously shatter (including when the microwave is not in use).  *Id.* at ¶¶ 25-34; *see generally id.* at ¶¶ 35-50.  Plaintiffs further allege that GE knew that these MWO models were defective since at least 2002, specifically identifying the root cause of the defect as being

---

[2]  A copy of both Motions being filed by Plaintiffs on this date, and the respective Memoranda of law in support thereof, are being posted to the Settlement website upon filing.

[3]  The same background information is relevant both to Plaintiffs' motion for final approval of the Settlement and to Plaintiffs' motion to attorneys' fees, expenses and lead plaintiff awards, which motions are being filed simultaneously.  Accordingly, the same "Background" section appears in both supporting memoranda of law.

interference between the inside surface of the glass and the hinge spring inside the door assembly. *Id.* at ¶ 53. Plaintiffs allege, however, that despite this knowledge, Defendant actively and intentionally concealed these defects from Plaintiffs and the putative class. *See generally id.* at ¶¶ 51-61.

Defendant denies and disputes these allegations. *See generally* Defendant's Answer [ECF No. 109]. Moreover, Defendant has raised several substantive defenses that could undermine Plaintiffs' ability to establish liability and/or damages, including, among others, that the MWOs have already outlived their reasonable useful life (*see, e.g.,* [ECF No. 265] at 3); that Plaintiffs have failed to adduce sufficient evidence of a design defect (*see, e.g., id* at 36-46); and that even under Plaintiffs' own argument, only 1% to 2% of MWOs are expected ever to manifest the alleged defect (*i.e.,* have a glass shattering incident), which at most constitutes a reasonable manufacturing variance (*see, e.g.,* [ECF No. 351] at 25-28).

### B.     Procedural History and Discovery

#### 1.     *This Case Has Been Extensively Litigated*

Since Plaintiffs filed their initial Complaint on December 4, 2013 (*see* [ECF No. 1]), every aspect of this case has been thoroughly litigated.[4] Plaintiffs filed their First Amended Complaint on January 7, 2014. Defendant filed a motion to dismiss that complaint on February 28, 2014 [ECF No. 14], Plaintiffs filed their opposition on April 18, 2014 [ECF No. 26], and Defendant filed its reply on May 2, 2014 [ECF No. 27]. Plaintiffs then voluntarily filed a Second Amended Complaint on July 14, 2014 [ECF No. 99], which Defendant moved to dismiss

---

[4] The initial complaint in this litigation was filed by Betty Harkey. *See* [ECF No. 1]. Ms. Harkey voluntarily withdrew her personal action on June 17, 2014. *See* [ECF No. 32]. At that time and thereafter, various of the current Plaintiffs joined this litigation, either directly or through consolidation of their claims. For the sake of simplicity and clarity, this memo simply refers to "Plaintiffs" throughout when discussing the procedural history of this matter.

on July 28, 2014 [ECF No. 38].  Plaintiffs filed their opposition on August 21, 2014 [ECF No. 55], and GE filed its reply on September 3, 2014 [ECF No. 66].  The Court issued its order granting in part and denying in part Defendant's motion on April 30, 2015, while granting Plaintiffs leave to file an amended complaint [ECF No. 103].

Plaintiffs thereafter filed a Third Amended Complaint on May 21, 2015 [ECF No. 106], which Defendant moved to dismiss on August 17, 2015 [ECF No. 119].  Plaintiffs filed their opposition on September 8, 2015 [ECF No. 123], and GE filed its reply memorandum on September 22, 2015 [ECF No. 124].  The Court granted in part and denied in part Defendant's renewed motion on November 30, 2015 and granted leave for Plaintiffs to file another amended complaint [ECF No. 150].  Plaintiffs thereafter filed the operative Amended Consolidated Complaint [ECF No. 157] on December 21, 2015.

On April 1, 2016, Plaintiffs filed their Motion to Certify Class [ECF No. 162].  GE filed its opposition on June 1, 2016 [ECF No. 177], Plaintiffs filed their reply on August 19, 2016 [ECF No. 212], Defendant filed its surreply on December 30, 2016 [ECF No. 243], and, by direction of the Court, Plaintiffs filed their response to certain issues raised in Defendant's surreply on February 2, 2017 [ECF No. 248].[5]  The Court issued its ruling on February 7, 2017 [ECF No. 257].  The Court found that Plaintiffs had standing to assert their Class claims and certified a multistate *liability* consumer protection law class under Rule 23(c)(4).  However, the Court also raised concerns that class damages could raise individualized damages issues and thus declined to certify a *damages* class at that time, without prejudice to Plaintiffs renewing their

---

[5] Defendant moved to strike and otherwise objected to portions of Plaintiff's Reply memorandum on September 1, 2016 [ECF Nos. 215, 216], Plaintiffs responded on September 26, 2019 [ECF Nos. 227, 228], and the Court denied GE's motions on November 30, 2016 [ECF No. 237].

request later in the proceedings. *Id.* at 12, 16-17.[6]  On July 28, 2017, the parties submitted

competing proposals for Class Notice [ECF Nos. 302, 303], which motions remained pending at

the time of Settlement.

On October 4, 2017, GE filed a motion for summary judgment [ECF No. 310].  Plaintiffs

filed their opposition on November 1, 2017 [ECF No. 318], and GE filed its reply on December

8, 2017 [ECF No. 331].  In its memorandum in support of its motion, GE raised several

potentially dispositive issues, including the argument that several of Plaintiffs' claims were time

barred.  [ECF No. 311] at 13-32.  This motion remained pending at the time of Settlement.

On April 20, 2018, GE filed a Motion to Vacate the Court's class certification order [ECF

No. 350], arguing, *inter alia,* that insofar as Plaintiffs' own expert had concluded that at most

only 1% to 2% of 1090/1095 MWOs would experience actual glass shattering (*i.e.,* a

manifestation of the alleged defect), certification was improper.  [ECF No. 351] at 25-28.  GE's

motion to vacate also remained pending at the time of Settlement.

During much of the above litigation process, and as discussed further below, the parties

engaged in continued settlement discussions.  On May 11, 2018, the parties jointly moved for a

stay pending a mediation of certain unresolved issues.  *See* [ECF No. 354].  The Court thereafter

closed this case administratively, directing the parties to file appropriate papers with the Court if

the matter were successfully settled or refiling the various pending motions discussed above if

the mediation was unsuccessful.  *See* [ECF No. 355].  As discussed below, the parties managed

to agree upon the outstanding terms of the Settlement with the assistance of the mediator,

---

[6]  Based on the specific classes advanced in Plaintiffs' motion, the Court also held "in abeyance" certification related to the Class' warranty claims.  *See* [ECF No. 257] at 2 n.2.

although it took additional months to finalize the complete Settlement Agreement, to devise a notice plan, and to retain a Settlement Administrator.

### 2.    *Discovery Has Been Extensive*

Throughout the foregoing proceedings, both parties have conducted extensive discovery in order to thoroughly understand the strengths and weaknesses of their respective claims and defenses. For example, Defendant produced nearly 70,000 pages of documents, many of which are complex, multi-tab spreadsheets. Counsel for Plaintiffs carefully reviewed and analyzed each of these documents. Declaration of Seth R. Klein ("Klein Decl.") at ¶ 3.

In addition, the parties conducted extensive expert discovery. Both parties retained glass experts to jointly examine several MWO units, including both unused exemplars and some units where the glass had shattered. On October 15, 2015, Plaintiff served Defendant with three expert reports, including from experts on glass breakage analysis, statistics, and damages. On January 5, 2016, Defendant served plaintiff with three expert reports on the same topics. On March 9 and 23, 2016, Plaintiffs served rebuttal reports by their statistics and damages experts. Defendant moved to strike each of Plaintiffs' expert reports [*see* ECF Nos. 180, 183, 186], which motions the Court denied in all material aspects [ECF No. 258]. Many of these experts also sat for depositions. Klein Decl. at ¶ 4.

In conjunction with the Class Member depositions discussed below, the parties' respective glass experts again examined several additional Class Member microwaves in 2017. On November 15, 2017, Plaintiffs served three additional expert reports, including from their glass and statistics experts and by a regulatory expert. On December 14, 2017, Defendant moved to strike Plaintiffs' regulatory expert [ECF No. 338] (which motion was still pending at the time of the Settlement; *see* [ECF No. 355]). On March 1 and 2, 2018, Defendant served its own

additional expert reports on glass analysis and statistics.  As in the earlier round of expert

disclosures, several of the experts also sat for depositions. Klein Decl. at ¶ 5.

Indeed, the parties engaged in the depositions of *30* individuals (some of whom,

including experts, were deposed more than once).  The deponents included:

- several senior GE officers;

- a representative of Underwriters Laboratories, Inc., a global independent safety

  company that certified that the subject MWOs met certain safety standards;

- a representative of Samsung Electronics America, the American affiliate of the

  Korean company that manufactured the MWOs;

- Plaintiffs' glass, statistics, and damages experts;

- Defendant's glass and statistics experts;

- each of the Plaintiffs; and

- several additional individual Class Members.

Klein Decl. at ¶ 6.

Not only was the discovery in this case very extensive, but it was aggressively litigated

by both sides from the beginning of the case.  The parties engaged in numerous discovery

conferences and negotiations throughout the pendency of the action, and also engaged in

extensive discovery motion practice before this Court.  *See, e.g.,* [ECF No. 45] (Plaintiffs'

Motion to Compel General Electric Company to Produce Additional Microwave Safety Database

Documents), [ECF No. 128] (Motion to Compel or Exclude Evidence).[7]  Accordingly, the parties

---

[7] Moreover, Plaintiffs worked hard to ensure that evidence of Defendant's alleged wrongdoing
remained public, filing multiple oppositions to Defendants' Motions to Seal the evidence set
forth in briefs and affidavits.  *See, e.g.* [ECF Nos. 61, 64, 79, 96, 107, 172, 191-94, 222-26, 239,
255, 277].

have mutually conducted full discovery in this case.

### 3. *The Parties Engaged in Extensive Arms'-Length Mediations and Negotiations*

From the inception of the litigation, Plaintiffs repeatedly reached out to Defendant to attempt to negotiate a fair settlement. As discovery proceeded and following many months of preliminary discussions, the parties agreed to a mediation before Judge William I. Garfinkel, which was held on February 22, 2016. Although the parties continued discussions following the mediation, the parties were unable to reach agreement at that time. Klein Decl. at ¶ 7.

Following the Court's certification of a Rule 23(c)(4) liability class, the parties resumed direct negotiations. The parties engaged in protracted settlement negotiations over the following months regarding substantive relief to the Class. However, the parties did not negotiate attorneys' fees until the Class relief had been finalized. The parties ultimately reached agreement on all material monetary terms with respect to class relief on or about January 22, 2018, as discussed above and embodied in the present Settlement Agreement at ¶ 39. Klein Decl. at ¶ 8.

The parties thereafter commenced negotiating attorneys' fees. On May 11, 2018, the parties agreed to proceed with a mediation on attorneys' fees before David Brodsky, an experienced mediator of complex litigation matters. The mediation took place on July 26, 2018, and, with Mr. Brodsky's assistance and pursuant to a "mediator's proposal," the parties agreed that GE would pay $1,350,000 total for attorneys' fees, expenses and Service Awards for the Settlement Class Representatives, which amount is separate from, and does not reduce, the awards to Settlement Class Members. *See* Settlement Agreement at ¶ 46; Klein Decl. at ¶ 9.

Although the parties had agreed on the core terms of the Settlement, they spent the next several months in painstaking negotiations of the full Settlement Agreement, including the form of the Settlement Notice to Class Members.  Klein Decl. at ¶ 10.  The parties signed the Settlement Agreement in August 2019 and following several additional months of work with the selected Settlement Administrator, moved for preliminary approval on December 5, 2019.  *See* [ECF Nos. 356-58].  Following a hearing on January 5, 2020 [ECF No. 362], this Court granted preliminary approval on January 15, 2020, and, *inter alia,* appointed Epiq Class Actions & Claims Solutions, Inc. ("Epiq") as Claims Administrator   [ECF No. 364].  Pursuant to the preliminary approval Order, Epiq on April 15, 2020, mailed, emailed and otherwise distributed the Settlement Notice to Class Members, began the internet / social media notice campaign, and launched the Settlement website.[8]  Although the deadline for filing a claim, objecting or opting out has not yet passed, as of the date of this filing, ***no*** Class Members have filed or otherwise communicated an intent to file an objection or a request to be excluded.

## III.    CLASS COUNSEL'S LODESTAR AND UNREIMBURSED EXPENSES

The Notice provides that, wholly separate from the recovery available to Class Members (as detailed in Plaintiff's accompanying motion for approval of the Settlement), Class Counsel may seek up to $1,350,000 in fees and expenses (and Plaintiff service awards).  *See, e.g.,* Long Form Notice, attached as Attachment 7 to the Declaration of Cameron Azari (Director of Legal Notice for Hilsoft Notifications, a business unit of Epiq) ("Azari Decl."), at p. 7 (¶ 11).  Over the course of the litigation, from investigation through April 29, 2020, Class Counsel has expended

---

[8]  The Court originally set March 15, 2020, as the Notice deadline, but due to a hacking and security breach issue at Epiq, the parties moved jointly moved that the Notice deadline and all subsequent deadlines be extended by approximately one month, which motion the Court granted on March 12, 2020.  *See* [ECF Nos. 365 (motion), 366 (order granting motion)].

6,409.35 hours of time with a lodestar of $3,756,089.25.  Klein Decl. at ¶¶ 19, 22; Declaration of

Hassan Zavareei ("Zavareei Decl.") at ¶ 13.  Moreover, Class Counsel's current unreimbursed

expenses are $397,933.87.  Klein Decl. at ¶¶ 23, 25; Zavareei Decl. at ¶ 23.  Accordingly, once

one subtracts this $397,933.87 in unreimbursed expenses and the $25,000 being sought (in total)

for the five Lead Plaintiff Service Awards of $5,000 each, only $927,066.13 of the $1,350,000

cap on GE's total fee, expense and service award exposure remains, which constitutes less than a

*0.25 multiple* of Class Counsel's lodestar based on work performed to date.

## IV.    THE COURT SHOULD APPROVE THE REQUESTED AWARD OF LITIGATION EXPENSES

Class Counsel incurred a total of $397,933.87 in expenses in prosecuting this litigation.

*See* Klein Decl. at ¶ 25.  All of the expenses were reasonable and necessary to the prosecution of

these actions and are of the type that law firms typically bill to their clients and that courts

typically approve for reimbursement.[9]  By far the largest single component (62.5%) of these

expenses involve payment of the cost of experts who spent innumerable hours examining

microwaves, reviewing documents and creating models for determining injury and damages.  *Id*.

---

[9] *See, e.g.*, *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *24 (S.D.N.Y. Feb. 1, 2007) (awarding expenses for "computer research, reproduction/duplication, secretarial overtime, phone/fax/postage, messenger/overnight delivery, local transportation/meals, filing fees and attorney services") (internal quotations omitted); *In re Veeco Instruments*, No. 05 MDL 01695(CM), 2007 WL 4115808, at *10 (S.D.N.Y. Nov. 7,  2007) (awarding expenses including "consultant and expert fees, photocopying of documents, mediation fees, court filing fees, deposition transcripts, fees for service of subpoenas to witnesses, on-line research, creation of a document database, messenger service, postage and next day delivery, long distance and facsimile expenses, transportation, [and] travel"); *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (same).

Accordingly, Class Counsel respectfully submit that the requested $397,933.87 award to cover Class Counsel's expenses is fair and reasonable.

## V.    THE COURT SHOULD APPROVE THE REQUESTED AWARD OF ATTORNEYS' FEES TO BE PAID BY DEFENDANTS TO CLASS COUNSEL

Plaintiffs respectfully submit that such their request for an award of $927,066.13 in attorneys' fees, which is consistent with the overall cap on fees, expenses and service award in the Settlement, is fair and reasonable.  Plaintiffs request that this Court award the requested amount.

### A.    Class Counsel Is Entitled to Compensation

Attorneys who successfully prosecute a class action are entitled to a "reasonable fee" and "just compensation." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (discussing that "attorneys whose efforts" led to successful resolution of class action "are entitled to a reasonable fee").  "Courts have also recognized that, in addition to providing just compensation," fee awards to class counsel "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature".  *In re Telik*, *Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008).  "Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by 'private attorneys general,' ***attorneys who fill that role must be adequately compensated for their efforts***."  *Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-CV-00738-RNC, 2014 WL 3778211, at *6-7 (D. Conn. July 31, 2014)  (emphasis added).  Accordingly, "[t]o make certain that the public is represented by talented and experienced trial counsel, the remuneration should be ***both fair and rewarding***."  *Hicks v. Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) (emphasis

11

added); *see also Maley v. Del Glob. Techs. Corp.,* 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) (finding it is "imperative that the filing of such contingent lawsuits not be chilled by the imposition of fee awards which fail to adequately compensate counsel for the risks of pursuing such litigation and the benefits which would not otherwise have been achieved but for their persistent and diligent efforts.").

## B.     The Court Should Use the Lodestar Method to Award Fees in This Case

As the Second Circuit has emphasized, "[w]hat constitutes a reasonable fee" that is fair but not excessive "is properly committed to the sound discretion of the district court." *Goldberger,* 209 F.3d at 47.  District courts in the Second Circuit may award attorneys' fees to prevailing class counsel under either a "percentage of the fund" or "lodestar" method.  *McDaniel v. County of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re Polaroid*, No. 03 Civ. 8335 (WHP), 2007 WL 2116398, at *2 (S.D.N.Y. July 19, 2007).  "The trend in this Circuit is toward the percentage method," even in claims-made settlements such as in this case.  *See Edwards v. North American Power & Gas, LLC,* No. 14-cv-01714 (VAB), 2018 WL 3715273, at *14-15 (D. Conn. Aug. 3, 2018) (awarding percentage fee in claims-made case); *see generally Wal-Mart*, 396 F.3d at 121; *Polaroid*, 2007 WL 2116398, at *2.  However, that rule is not absolute.

Specifically, when the maximum award to the Class is ***not*** readily calculable, it is proper to use the lodestar method to award fees.  *Simerlein v. Toyota Motor Corp.,* No. 17-cv-1091 (VAB), 2019 WL 2417404, at *24-25 (D. Conn. June 10, 2019) at *23.[10]  Such is the case here.

---

[10]  By contrast, it is appropriate to use the percentage method even in a claims-made settlement when (as in *Edwards)* the maximum size of funds available to the Class are ascertainable.  *See Simerlein*, 2019 WL 2417404, at *24-25 (awarding percentage fee where "the estimate provided

Although it would be proper under the percentage method to consider the *entire* amount available to the Class (rather than just the amount actually claimed by Class Members),[11] that analysis is impossible in this matter. The Parties do not and cannot know how many of the 68,000 Class Members experienced a shattering incident, and thus how much the Class would be entitled to if every Class Member filed a claim.[12]

---

by [a forensic accounting expert] gives the Court a clear denominator against which the fees can be assessed in applying the percentage method").

[11] As the Supreme Court has observed, where plaintiffs obtain a claims-made settlement, they "have recovered a determinate fund for the benefit of every member of the class whom they represent." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980). Absent class members' "right to share the harvest of the lawsuit upon proof of their identity, *whether or not they exercise it*, is a benefit in the fund created by the efforts of the class representatives and their counsel." *Id.* at 480 (emphasis added). This is true even where a defendant has the right "to the return of money eventually unclaimed[,] contingent on the failure of absentee class members to exercise their present rights" to the money. *Id.* at 482. Accordingly, the Second Circuit held in *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007), that "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available whether claimed or not. We side with the circuits that take this approach." The Court further noted that "[o]ur own cases refer to 'percentage of *the fund*,' and 'percentage of *the recovery*.' We take these references to be to the whole of the Fund." *Id.* (emphasis in original, citations omitted).

[12] Specifically, the parties know for certain that approximately 880 Class Members filed complaints with GE, and thus are entitled to $300. *See* Klein Decl. at ¶ 11. But approximately 68,000 microwaves are covered by the Settlement. *Id.* Of the approximately 67,000 remaining microwaves, the parties do not know how many experienced glass shattering and would be able to file a claim for $300, which would be essential to know the size of the total fund available to the Class. In theory, if all Class Members filed claims, the total recovery would be approximately $600,000 if *only* the 880 class members who filed complaints experienced glass shattering, whereas the total recovery would be close to $20 *million* if *all* class members had experienced glass shattering. The truth is somewhere between those two extremes, and although Plaintiffs acknowledge the actual number is likely much closer to the lower end, the range of possibilities is still very large.

Moreover, the lodestar method also is appropriate here because of the history of the case. Plaintiffs brought this action to remedy a serious issue: the spontaneous shattering of glass doors on microwaves.  Once Class Counsel accepted the case, they were committed, both as a matter of practicality and of their ethical duties, to fully and vigorously prosecute the claim, no longer how long it took.  Indeed, as recounted above, GE fought hard against Plaintiffs case for *six years*. There can be no question that GE was represented by capable counsel who vigorously and aggressively litigated this case through every step of the process.  Class Counsel enter every litigation with the full intent and expectation that they will put in as many hours as necessary to protect the interests of the clients and class they represent.  But they deserve to be compensated for the time.

The best evidence of the value of Class Counsel's time and work, wholly apart from the size of the ultimate recovery, is GE's ultimate agreement to not contest a fee and expense award of up to $1,325,000.  Plaintiffs refused to discuss the issue of fees and expenses until after the substantive relief for the Class was determined.  *See* Klein Decl. at ¶ 9.  At that point, GE had every incentive to fight to minimize its payment of fees to the extent possible.  GE's motivation to try to limit Class Counsel fees was especially strong where, as here, GE is paying Class Counsel out of separate funds, on top of and apart from GE's obligations to Class Members.  Yet GE ***agreed*** to pay $1,325,000 payment to Class Counsel, after an arms'-length negotiation with the assistance of a third-party mediator.   Accordingly, GE appears to accept that Class Counsel are entitled to a reasonable fee based on the extraordinary time and effort (totaling 6409.35 hours) that Class Counsel have dedicated to this case.  *See Kemp-DeLisser v. St. Francis Hospital and Medical Center Fin. Committee*, No. 15-cv-1113 (VAB), 2016 WL 6542707, at *14 (D. Conn. Nov. 3, 2016) (where "the parties agree to a fee that is to be paid separately by the

Defendant[] rather than one that comes from, and therefore reduces, the Settlement Fund available to the class, the Court's fiduciary role in overseeing the award is greatly reduced because the danger of conflicts of interest between attorneys and class members is diminished") (internal quotation marks and citation omitted).

### C.    The Fee Award Is Supported by the *Goldberger* Factors

In the Second Circuit, "'[i]rrespective of which method [lodestar or percentage] is used, the '*Goldberger* factors' ultimately determine the reasonableness' of an attorney's fee award in a class action settlement." *Simerlein,* 2019 WL 2417404 at *24 (quoting *Wal-Mart*, 396 F.3d at 121). Specifically, *Goldberger* directs district courts to consider: (1) the time and labor expended by counsel; (2) the magnitude and complexity of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50. These factors strongly support the $927,066.13 fee request here.

### 1.    Counsel's Time and Labor

There is no question that Class Counsel expended significant time and effort to bring this litigation to a successful resolution. As detailed above, counsel have devoted substantial time and effort to this case for over six years. Class Counsel's contemporaneous records indicate that they collectively spent 6,409.35 hours of attorney and paralegal time with an aggregate lodestar of $3,756,089.25.[13]  *See* Klein Decl. at ¶¶ 19, 22; Zavareei Decl. at ¶ 13.[14]  Class Counsel's

---

[13] The Supreme Court has approved the use of current hourly rates to compensate for inflation and loss of use of funds. *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *see also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163–64 (S.D.N.Y. 1989) (citing cases); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 n.25 (S.D.N.Y. 1998). Moreover, the hourly rates for Class Counsel's attorneys are the same as the regular current rates charged for services in non-contingent matters and/or that have been accepted and

$927,066.13 fee request is thus only **25%** (*i.e., **one-quarter***) of their lodestar.  This extreme

negative multiplier is plainly only a small fraction of the multipliers of three, four or even five

routinely approved in other cases.  *In re Telik*, 576 F. Supp. 2d at 590 (noting that a multiplier of

4.65 was "well within the range awarded by courts in this Circuit and courts throughout the

country").[15]  Indeed, Class Counsel effectively are seeking only one-quarter of their ordinary

hourly rates, and dividing the requested fee by the total number of hours devoted to this case to

date yields an effective hourly rate of only $145.  By the time the settlement process is

concluded, including addressing future Class Member communications, the multiplier will be

even more modest.  Under these circumstances, Plaintiffs respectfully submit that Class

Counsel's time and labor expended overwhelmingly support the requested fee.

### 2.    The Magnitude and Complexity of the Litigation

The requested fee award is reasonable considering the magnitude and complexity of the

litigation.  This case involved painstaking litigation of an alleged design defect that include

detailed and competing expert analyses.  The existence of over 360 entries on the ECF docket is

approved in class action litigation in other courts throughout the country.  *See* Klein Decl. at ¶ 21; Zavareei Decl. at ¶¶ 8-10.

[14] Class Counsel's full time records are available for Court review upon request.

[15] *See also Zeltser v. Merrill Lynch & Co., Inc.*, No. 13 Civ. 1531 (FM), 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (multiplier of 5.1 "falls within the range granted by courts"); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472 (DF), 2013 WL 1209563, at *9 (S.D.N.Y. Mar. 21, 2013) awarding lodestar multiplier of 3.8; holding it is "well within the range of multipliers that have been granted by courts in this Circuit and elsewhere" and noting that "Courts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers.") (collecting cases); *Spicer v. Pier Sixty LLC*, No. 08 Civ. 10240 (LBS), 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts.") (quoting *In re Telik*, 576 F. Supp. 2d at 590); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 0440 (DAB), 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar").

a testament to the extent and complexity of the Parties' motion practice, as also discussed above. If not for the Settlement, the need to research, brief, and develop factual submissions on the many issues that remained outstanding (including decertification of the Class and summary judgment) would increase the expense, complexity, and duration of the litigation even further. Moreover, trial preparation would have required countless hours of additional work, including preparing fact and expert witnesses, identifying exhibits, preparing proposed jury instructions, and preparing cross-examination outlines. The trial itself would consume significant judicial resources and would engender additional motion practice (including evidentiary motions and any dispositive motions filed during or at the close of trial). Further, an appeal would likely have added to the complexity of the litigation.

Accordingly, the magnitude and complexity of the litigation weigh heavily in favor of the requested fee award. *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation…the passage of time would introduce yet more risks…and would, in light of the time value of money, make future recoveries less valuable than this current recovery").

### 3.    The Risk of the Litigation

The *Goldberger* court identified "the risk of success as 'perhaps the foremost' factor to be considered in determining [a reasonable award of attorneys' fees]." *Goldberger*, 209 F.3d at 54 (citation omitted). Courts have noted that the *Goldberger* risk analysis overlaps with risk

17

analysis performed in evaluating the fairness of a settlement.  *See In re Priceline.com*, 2007 WL 2115592, at *3-5 (D. Conn. 2007) (noting that risk analysis concerning attorney fee award is similar to risk analysis with respect to settlement fairness).  As courts have noted, for purposes of assessing the reasonableness of attorneys' fees, the focus should be on the degree of risk the case presented at the outset.  *See, e.g., Fischel v. Equitable Life Assur. Soc'y of U.S.,* 307 F.3d 997, 1009 (9th Cir. 2002) ("there is no dispute that a court should consider risk at the "outset" of litigation"); *see also Homeward Bound, Inc. v. Hissom Mem'l Ctr.,* 963 F.2d 1352, 1356 (10th Cir. 1992) (viewing risk at outset of case); *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 974 (7th Cir. 1991) (same); *Lewis v. Coughlin,* 801 F.2d 570, 576 (2d Cir. 1986) (same).

This case provides a vivid demonstration of the type of risk class counsel bear in taking on large corporations that have engaged in culpable conduct of any kind.  At the outset of each case, counsel agree to not only provide representation free of charge for as long as the case will take, unless and until there is a favorable result, they also agree to assume all litigation expenses and write them off if the case is unsuccessful.  Before agreeing to take a case, Class Counsel have to evaluate the likelihood of success and the likely amount of damages if success is achieved without the benefit of "inside" information that can only be obtained in discovery.  Here, for example, there was no way to know at the outset how many of the subject MWO had been sold, or how many customers had made complaints about glass shattering.  Class counsel also do not know whether a defendant will approach a case from a pragmatic, case-specific perspective or decide to litigate every possible issue to the limit.  They have to assume, therefore, that even meritorious cases will require many years of hard-fought litigation before any result is achieved.

The six-and-a-half years of litigation in this case represent a realization of the risk that Class Counsel assume in every case. That risk was even greater in this case, because a defective product suit inevitably results in a battle of experts, with results difficult to predict. And, although Class Counsel believe that Plaintiffs' claims are meritorious, Defendant has raised significant issues concerning Plaintiffs' ability to prove legal liability and damages.

The Second Circuit has recognized that the risk involved in prosecuting a class action is an important consideration in determining an appropriate fee award. The case law contains many examples of unsuccessful class actions that provided no relief to the putative class and no fee for class counsel. *See, e.g.*, *In re Veeco Instruments*, 2007 WL 4115808, at *6 (collecting cases). This is clearly a case where "Settlement Class Counsel undertook a substantial risk of absolute non-payment in prosecuting this action, for which they should be adequately compensated." *In re Dun & Bradstreet Credit Serv. Customer Litig.,* 130 F.R.D. 366, 373 (S.D. Ohio 1990). *See also City of Detroit v. Grinnell Corp.,* 356 F. Supp. 1380 (S.D.N.Y. 1972), *aff'd in relevant part,* 495 F.2d 448 (2d Cir. 1974) ("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success"). Indeed, as discussed in Part V.C.1 above, courts have routinely held that successful class counsel is entitled to a risk *multiplier* of their normal rates to compensate for the risk inherent in a contingent litigation.

Although the record in this case would clearly support a risk multiplier, the requested fee represents only a fraction of Class Counsel's lodestar. Accordingly, this factor argues strongly in favor of Plaintiff's requested attorneys' fee award.

19

### 4.    The Quality of the Representation

The quality of Class Counsel's representation is reflected in the reputation of Class Counsel; the experience of the attorneys principally involved in these action; and above all, the way they prosecuted these actions from the pleadings, through motion practice and discovery, to the settlement negotiations and the instant motion for final approval.

Class Counsel enjoy a strong reputation in complex and class action litigation. Moreover, as demonstrated by their firm resumes, the various attorneys comprising Class Counsel have been appointed class counsel in numerous other cases and are highly experienced and knowledgeable in complex and class action litigation generally, and consumer rights energy litigation in particular. *See* Klein Decl. at Ex. G; Zavareei Decl. at Ex. A.

The Settlement is the direct result of the creativity, diligence, hard work, and skill brought to bear by Class Counsel at every stage of the proceedings. Throughout the litigation, Class Counsel put the best interests of the Class first, negotiating the most favorable settlement terms possible before discussing attorneys' fees at all. Klein Decl. at ¶¶ 8-9. Class Counsel's dedication to putting the Class' interests before their own weighs strongly in favor of the proposed fee award.

The high quality of the opposition that Plaintiffs' counsel faced is further testament to the quality of Plaintiffs' counsel's representation. GE is represented by skilled and highly regarded counsel from the prestigious firm of Robinson & Cole, which has a reputation for vigorous advocacy in the defense of complex civil cases that the firm's attorneys firmly lived up to here. Courts have repeatedly recognized that the caliber of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the plaintiffs' counsel's

performance, and in these cases, it supports final approval of the requested fee. *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010).

### 5.    Public Policy Considerations

Strong public policy supports rewarding counsel for bringing successful consumer protection litigation. *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02 Civ. 3400 (CM) (PED), 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002); *Hicks v. Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).  Where individual class members suffer real damages, but the amount at issue is too small in comparison to the costs of litigation to justify filing an individual suit, "the class action mechanism and its associate percentage-of-recovery fee award solve the collective action problem" and allow plaintiffs an opportunity to obtain redress. *Hicks*, 2005 WL 2757792, at * 9.  Moreover, beyond providing compensation to Class Members who purchased a microwave with a design defect that could cause spontaneous glass shattering, the Settlement provides benefits to the public at large.  The lawsuit served to alert the public to a potentially dangerous issue.  Moreover, not only is GE now well aware that consumers are prepared to bring suit over design defects, but this deterrent effect may carry over to other appliance manufacturers, who are on notice that they will suffer unwanted cost, inconvenience, bad publicity, and legal exposure.  All these public benefits are jeopardized if counsel in class actions are not fairly compensated. *See In re Abrams & Abrams, P.A.*, 605 F.3d 238, 246 (4th Cir. 2010) ("[p]laintiffs may find it difficult to obtain representation if attorneys know" the upside for successful prosecution of a class claim will not result in a reasonable fee, "while their downside [if they lose] is no payment whatsoever").

Finally, the fee request does not bestow a windfall on Class Counsel. As discussed above, Class Counsel are only requesting *one quarter* of their lodestar. Nor is the Class financially impacted by the fees requested, which GE has agreed to pay out of separate funds. Simply put, there is no reason to depart from the amount that Defendant has agreed to pay. Any reduction would be against public policy as it would discourage future class counsel from bringing similar cases and reward the alleged wrongdoers without any benefit to the Class or the public at large.

### 6.    The Requested Fee in Relation to the Settlement

This factor logically has less bearing with regard to a fee request reviewed pursuant to a lodestar analysis (as opposed to a percentage analysis). Where, as here, the Parties cannot calculate the total value available to Class Members (*see* Part V.B and n.12 above), Plaintiffs respectfully submit it has no bearing, and so should be considered as a "neutral" factor in the Court's fee analysis. Moreover, Plaintiffs respectfully submit that the other factors set forth above overwhelmingly favor the requested fee.

### 7.    Reaction of the Class

Although not a formal *Goldberger* factor, the reaction by members of the Class is also entitled to weight by the Court. *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 996 (D. Minn. 2005) (stating that number and quality of objections enables court to gauge reaction of class to request for award of attorneys' fees). The Notice specified that Class Counsel may seek up to $1,350,000 in fees and expenses (and Plaintiff service awards). *See* Azari Decl., Attachment 7 at p. 7 (¶ 11). Although objections and requests to opt out are not due until June 15, 2020, as of the date of this filing, *no* Class Member has filed an objection to any such request (or to any aspect of the Settlement), and *no* Class Member has

22

opted out.  Plaintiffs will update the Court by June 29, 2020 (the date set by the Court for Plaintiff to respond to any objections) as to the number of timely objections and opt-outs received by the Claims Administrator or filed with the Court.  However, to date, this factor appears to support the application for fees.

## VI.    THE COURT SHOULD APPROVE THE REQUESTED AWARD OF LEAD PLAINTIFF SERVICE AWARDS TO BE PAID BY DEFENDANTS

Plaintiffs and Class Counsel respectfully submit that each lead Plaintiff should receive a Service Award of $5,000 in recognition of the substantial time and effort they contributed to the prosecution of this litigation.  Pursuant to the Settlement Agreement, GE has agreed to pay this award using its own resources (subject to the overall $1,350,000 cap), which means, as with Class Counsel's request for attorneys' fees and expenses, this payment will not reduce the benefits provided to Class Members.  Moreover, as with the fee request, the service award request was subject to arm's length negotiations between parties and was adequately disclosed in advance to the Class.  The Notice provides that each Plaintiff will seek up to $5,000 (*see* Azari Decl., Attachment 7 at p. 7 (¶ 11)), and no objection has been received to date.

Providing named plaintiff contribution awards to consumers who come forward to represent a class is a necessary and important component of any class action settlement.  *See Hall v. ProSource Technologies, LLC*, No. 14 Civ. 2502 (SIL), 2016 WL 1555128, at *9 (E.D.N.Y. Apr. 11, 2016) ("Courts regularly grant requests for service awards in class actions to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs.") (internal quotations and citations omitted); *Viafara v. MCIZ Corp.*, No. 12 Civ 7452 (RLE), 2014 WL 1777438, at *16 (S.D.N.Y. May 1, 2014); *Elliot v.*

23

*Leatherstocking Corp.*, No. 10 Civ. 0934 (MAD) (DEP), 2012 WL 6024572, at *7 (N.D.N.Y. Dec. 4, 2012). Class action plaintiffs voluntarily submitted themselves to public scrutiny by bringing a class action claim.

Moreover, Plaintiffs have each been highly motivated and involved in prosecuting this litigation. Each Plaintiff responded to interrogatory and document production requests; sat for deposition against experienced and aggressive counsel; and consulted regularly with Class Counsel regarding the conduct of this case. Klein Decl. at ¶¶ 16-17; Zavareei Decl. at ¶¶ 26-30. The requested payments are well-deserved and fall well within the range of service awards approved in prior cases. *See, e.g., Polaroid*, 2007 WL 2116398, at *3 (citing *Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001)); *Karic v. Major Automotive Companies, Inc.*, No. 09 Civ. 5708 (CLP), 2016 WL 1745037 at *8 (E.D.N.Y. Apr. 27, 2016) (collecting cases and approving service awards of $20,000 each to seven named plaintiffs); *Puglisi v. TD Bank, N.A.*, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (approving service awards of $15,000 each for two named plaintiffs and $10,000 each for three others); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2013 WL 1209563, at *10 (S.D.N.Y. Mar. 21, 2013) (approving service awards of $15,000 and $13,000 to class representatives).

Without Plaintiffs' willingness to serve in this litigation and perform significant work on behalf of the Class, the favorable settlement for the entire class would not have been possible. Indeed, "public policy favors such an award. As already noted, were it not for this class action, many of the plaintiffs' claims likely would not be heard." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005). Plaintiffs' participation was substantial and indispensable. Accordingly, Plaintiff and Settlement Class Counsel respectfully request that this Court award Service Awards to Plaintiffs of $5,000 each.

24

## VII.    CONCLUSION

For the reasons set forth above, Plaintiffs and Class Counsel respectfully request that the Court enter an order approving (1) an award of Attorneys' Fees and in the amount of $927,066.13; (2) an award of litigation expenses in the amount of $397,933.87; and (3) a service award of $5,000 to each of Plaintiffs Glen Grayson, Doreen Mazzanti, Daniel Levy, David Mequet, and Lauren Harris, with all awards to be paid in accord with the terms of the Settlement Agreement.  Plaintiffs will submit a [Proposed] Order Awarding Attorneys' Fees and Expenses and Lead Plaintiff Service Awards for the Court's consideration no later than June 29, 2020 (the date set by the Court for Plaintiff to respond to any objections), in anticipation of the Final Approval Hearing scheduled for July 16, 2020.[16]

Dated:  April 30, 2020                          Respectfully submitted,

                                                PLAINTFFS

                                                By: /s/ Seth R. Klein _____
                                                Robert A. Izard (ct01601)

---

[16]  To the extent that COVID-19 prevents an in-person hearing on the scheduled date, Plaintiffs respectfully request that, pursuant to ¶ 2 of the "Superseding General Order Re: Court Operations" issued in this District on April 27, 2020, the hearing be held by videoconference. Indeed, multiple courts have decided to hold such hearings by telephone or videoconference due to the current pandemic. *See, e.g., Isolde v. Trinity Industries, inc.,* No. 15-cv-02093-K, slip op. at 1 (N.D. Tex. Mar. 24, 2020), ECF No. 174 (ordering that final settlement hearing in securities class action should proceed at date and time scheduled in the notice but be conducted telephonically); *City of Sunrise Gen. Emp. Ret. Plan v. FleetCor Techs., Inc.,* No. 17-cv-02207-LMM, slip op. at 1 (N.D. Ga. Mar. 24, 2020), ECF No. 104 (same); *In re Yahoo! Inc. Customer Data Security Breach Litig.,* No. 16-md-02752-LHK (N.D. Cal. Mar. 23, 2020), ECF No. 448 (ordering that final approval hearing for class action settlement be held telephonically); *In re McKesson Corp Derivative Litig.,* No. 17-cv-01850-CW, Communication from Court (N.D. Cal. Mar. 19, 2020) (ordering that final settlement hearing in shareholder derivative litigation should go forward as scheduled, but be conducted by teleconference); *Joshi Living Trust v. Akorn, Inc.,* Case No. 18-cv-0171, slip op. at 1 (N.D. Ill. Mar. 12, 2020), ECF No. 183 (ordering that final settlement hearing in class action should proceed as scheduled in the notice, but allowing counsel to participate by phone rather than attend in-person).

Seth R. Klein (ct18121)
**IZARD KINDALL & RAABE LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290
rizard@izardnobel.com
sklein@izardnobel.com


Hassan A. Zavareei
Anna C. Haac
**TYCKO & ZAVAREEI, LLP**
1828 L Street, N.W., Suite 1000
Washington, D.C.  20036
(202) 973-0900
(202) 973-0950 *facsimile*
hzavareei@tzlegal.com
ahaac@tzlegal.com

*Attorneys for Plaintiffs*