## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| GLEN GRAYSON, DOREEN MAZZANTI, DANIEL LEVY, DAVID MEQUET and LAUREN HARRIS, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL ELECTRIC COMPANY,<br><br>Defendant. | No. 3:13-cv-01799-MPS<br><br>(Consolidated Docket No.)<br><br><br>JUNE 29, 2020 |

**PLAINTIFFS' RESPONSE TO CLASS MEMBER OBJECTION AND MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

In accord with the Court's scheduling order [ECF No. 366], Plaintiffs[1] hereby respectfully submit this memorandum both in response to the objection of Edward W. Orr [ECF No. 375] (the "Orr Objection") and in further support of Plaintiffs' Motion for Certification of the Settlement Class and Final Approval of Class Action Settlement [ECF No. 368] (the "Final Approval Motion"). The proposed Settlement merits final approval for all of the reasons set out in Plaintiffs' Final Approval Motion and Memorandum of Law in support thereof [ECF No. 369]. In addition, only one class member (Mr. Orr) has filed an objection, and that objection did not relate to the substance of either Plaintiffs' Final Approval Motion or Plaintiffs' Motion for Award of Attorneys' Fees and Expenses and for Lead Plaintiff Service Awards [ECF No. 370]. The absence of any objections to the merits of the motions provides additional, strong support for

---

[1] Capitalized terms used herein are defined in the Settlement Agreement [ECF No. 358-1].

1

approval of the Settlement. *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 197 (S.D.N.Y. 2012).

## I. This Court Should Overrule Mr. Orr's Objection

Mr. Orr objects to the Settlement solely on the grounds that the Settlement website (the "Website") purportedly is inaccessible to visually impaired or blind Class Members who rely upon screen reader software and so is in violation of the Americans with Disabilities Act ("ADA"). *See generally* Orr Objection. Plaintiffs agree that website accessibility, including of settlement websites, is an important public policy goal. At the same time, the extent to which the ADA applies to settlement administration websites remains unresolved. *See Broomfield v. Craft Brew Alliance, Inc.,* No. 17-cv-01027-BLF, 2020 WL 1972505, at *18-19 (N.D. Cal. Feb. 5, 2020) (overruling objection by Mr. Orr because settlement administration websites not covered by ADA). However, the Court need not resolve that question in the context of Mr. Orr's objection because Epiq Class Actions & Claims Solutions, Inc. ("Epiq"), the claims administrator selected by the parties and appointed by the Court, took reasonable steps to make the Settlement website accessible to visually impaired Class members.

The ADA "prohibits discrimination on the basis of disability" with regard to "any place of public accommodation," and requires such public accommodations to "provide '*reasonable* modifications' or 'auxiliary aids and services' to disabled individuals." *Reed v. 1-800-Flowers.com,* 327 F. Supp. 3d 539, 544 (E.D.N.Y. 2018) (emphasis added). Congress charged the Department of Justice ("DOJ") with "develop[ing] standards that public accommodations must comply with under the ADA." *Id.* However, "[t]o date, the DOJ has not issued regulations setting forth the specific accessibility requirements imposed upon websites." *Id.* In the absence of official guidance, both website developers and courts have turned to the Web Content

Accessibility Guidelines 2.0 Level AA standard ("WCAG") developed by the World Wide Web Consortium (W3C), the main international standards organization for the internet.[2]  Although Mr. Orr argues that a different standard ("WAS") is "easier and simpler to deal with" (Orr Objection at ¶ 16), he appears to accept the WACG 2.0 Level AA standard as appropriate.  *See* Orr Objection at ¶¶ 15, 48 (reproducing article discussing court adoption of that standard).

Epiq actively and continuously seeks to implement WCAG best practices on all of the settlement websites it administers.  *See* Declaration of Zachary Lebovits (Senior Project Manager at Epiq) ("Lebovits Decl.") (submitted as Exhibit A hereto) at ¶ 5.  Indeed, Epiq researched and developed its current website template with the specific goal of furthering compliance with WCAG standards, and the template implements several features to this end.  *Id.* at ¶¶ 5, 7 (discussing features).  The Settlement Website here is built upon that template and incorporates these features.  *Id.* at ¶ 5.

Moreover, following the Website launch, Epiq as part of its routine internal audits of ADA compliance tested the Website using a Google testing protocol which gave the Website a

---

[2] *See, e.g.*, *Diaz v. Kroger Co.,* No. 18 Civ. 7953 (KPF), 2019 WL 2357531, at *2-5 (S.D.N.Y. June 4, 2019) (dismissing as moot ADA accessibility claim where "[p]rior to the inception of this lawsuit [defendant] has undertaken to comply with the Website Content Accessibility Guidelines and is compliant with WCAG 2.0 standards"); *Andrews v. Blick Art Materials, LLC*, 286 F.Supp.3d 365, 370 (E.D.N.Y. 2017) (concluding that "the Web Content Accessibility Guidelines (WCAG) 2.0 Level AA, [ ] are hereby determined by the court to be an appropriate standard to judge whether Defendant is in compliance with any accessibility requirements of the ADA"); *Hindel v. Husted*, No. 2:15-CV-3061, 2017 WL 432839, at *7 (S.D. Ohio Feb. 1, 2017) (ordering Defendant the Ohio Secretary of State to "conform[ ] with the Web Content Accessibility Guidelines 2.0 Level A and AA Success Criteria").

Google Accessibility Score of 100% (meaning that it did not detect *any* compliance issues). *Id.* at ¶ 8.[3]

Following receipt of the Orr Objection, and recognizing that different analytical tools can lead to different results, Epiq also tested the Website using another tool, the Web Accessibility Evaluation Tool ("WAVE") maintained by WebAIM (Web Accessibility In Mind) at the Center for Persons with Disabilities. *Id.* at ¶ 9.  That test has revealed only four accessibility warnings or alerts, just three of which relate to screen readers,[4] and none of which are critical failures. Rather, each issue relates to convenience of site navigation:

- **Broken Skip Link:** users using a screen reader and keyboard need to press the "tab" key to cycle past the navigation options at the top of the page rather than skipping them altogether.

- **Empty Headings:** page and section titles may be missing from underlying coding for screen reader purposes (although all relevant substantive text is present for screen readers).

- **Missing Form Labels:** some interactive elements of the site (such as click-boxes or user-entered text fields) do not have a "label" attached for screen reader purposes that clearly identify their purpose in advance of the screen reader software reaching the element (although each is attached to screen-reader accessible substantive text after the element explaining its purpose).

---

[3]  By contrast, the District of Connecticut's website at www.ctd.uscourts.gov received only 97% on the Google Accessibility Score, and also had several errors under the WAVE test discussed below.

[4]  The fourth issue concerns color contrast for users with impaired vision.

*Id.* at ¶ 10.  In other words, *none* of these issues prevent a Class Member using a screen reader from making full use of the site, and all portions of the Website are fully accessible via screen reader.  *Id.* at ¶ 9.

Epiq and Plaintiffs fully believe that the experience of all Class Members, including the visually impaired, should be as seamless and straightforward as reasonably possible, and ideally there would be no glitches at all.  However, computer software (including screen readers) and hardware can be complex and fickle.  They can give rise to problems localized to the end-user that, through no fault of either the Class Member or Epiq, result in individualized access difficulties.  Epiq cannot speak directly to Mr. Orr's personal experience with the Website.  However, recognizing that any Class Member (regardless of disability status) could encounter technical difficulties, Epiq and Class Counsel both provided their contact information in the Notice and on the Website, and are happy to provide assistance to any Class Member who needs it.[5]

There is no dispute that Mr. Orr received and understood the Settlement Notice.  Moreover, over 3,000 Class Members have filed claims to date, with several months to go before

---

[5]  Mr. Orr represents in his objection that he attempted to contact Epiq on multiple occasions, including by two separate paper letters, but that he never received a response.  *See* Orr Objection at ¶¶ 35-37 and Exhibits P and Q thereto (copies of letters from Mr. Orr to Epiq dated April 19, 2020 and May 14, 2020) (included in [ECF No. 375-1]).  Epiq has conducted a thorough review of all written correspondence it has received in this matter, as well of email correspondence and phone calls, but has no record of any communications from Mr. Orr.  Lebovits Decl. at ¶ 11.  In *Broomfield, supra,* Mr. Orr similarly represented that he had attempted to contact the claims administrator but never received a response.  *See* Dkt. No. 17-cv-01027-BLF (N.D. Cal) at [ECF No. 134] at ¶¶ 21-22 (Orr Objection).  CPT Group Inc., the claims administrator in that case, conducted a thorough search but, like EPIQ here, was unable to find any record of any such communications.  *See* Dkt. No. 17-cv-01027-BLF (N.D. Cal) at [ECF No. 141-2] (Declaration of Ani S. Sarich on Behalf of CPT Group, Inc.) at ¶ 12.  In any event, should Mr. Orr wish to reach out at any time, Epiq and/or Class Counsel would be happy to assist him.

the filing deadline (which will be 90 days after a final approval order).[6] Plaintiffs respectfully submit that these facts demonstrate that the overall Notice Plan (including the Website) accomplished its ultimate goal of informing Class Members of their options and rights, and Epiq's efforts in establishing an accessible website as part of the Notice process have been reasonable. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113-14 (2d Cir. 2005) ("the standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness"). Although Mr. Orr argues that the Website component of the Notice Plan was imperfect, "notice need not be perfect, but need be only the best notice practicable under the circumstances." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) (*citing Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir.1988)). Just as "each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members" (*id.*), Plaintiffs respectfully submit that each and every Class Member need not have an optimal experience with the Website in order for the Settlement to warrant final approval, given Epiq's reasonable efforts.[7]

---

[6] Indeed, Mr. Orr also completed a paper claim form, albeit with assistance from a non-handicapped person. Orr Objection at ¶ 8. As discussed above, Epiq and/or Class Counsel were likewise available to provide assistance upon request. In any event, Mr. Orr states that he submitted the claim form as an attachment to one of the letters he has represented he sent to Epiq. *See* Orr Objection at ¶ 8; [ECF No. 375-1] at Ex. Q. However, as discussed above, Epiq has no record of any such correspondence or of the claim being filed. Lebovits Decl. at ¶ 11. Epiq and Class Counsel remain available to assist upon request.

[7] Mr. Orr's Objection quotes at length from the oral argument conducted before Judge Tigar of the Northern District of California in *Edenborough v. ADT LLC* concerning Mr. Orr's objection to a class action settlement. *See, e.g.,* Orr Objection at pp. 35-47. However, Mr. Orr's objection in that case had to do with whether the settlement was substantively fair for disabled persons rather than any issues related to the accessibility of the settlement website, and the Court ultimately overruled Mr. Orr's objection. *See Edenborough v. ADT LLC,* Dkt. No. 16-cv-02233-JST, 2018 WL 9514899, at *1-2 (N.D. Cal. March 29, 2018). Likewise, Mr. Orr's reference to

## II. Plaintiffs Have Standing to Represent the Settlement Class

During the hearing on Plaintiffs' motion for preliminary approval of the Settlement, the Court inquired of counsel as to the adequacy under Fed. R. Civ. P. 23(a)(4) of the named Plaintiffs, all of whom suffered a glass-shattering incident, to represent Class Members who did *not* suffer glass breakage. *See, e.g.,* [ECF No. 362] at 3:19-23, 5:8-19. Plaintiffs thereafter explained in their Memorandum of Law in support of final approval of the Settlement that each named Plaintiff had incentive and motivation to pursue *all* Class Members' claims as aggressively as possible. *See* [ECF No. 369] at 18-19. Following submission of their final approval memorandum and in the course of preparing for the upcoming Final Approval Hearing scheduled for July 16, 2020, Plaintiffs' counsel identified additional authority that, although distinguishable, relates to this issue. *See In re Literary Works in Electronic Databases Copyright Litig.,* 654 F.3d 242 (2d Cir. 2011).

In *Literary Works,* the proposed settlement divided claims into three settlement "categories." *Id.* at 246. Although Category C was numerically the largest, all of the named plaintiffs had claims in Categories A and/or B (although they also had separate Category C claims as well). *Id.* at 246, 251. Under the terms of the settlement, claimants in Categories A and B would receive a much larger per-claim award than claimants in Category C. *Id.* at 246. Moreover, under the terms negotiated by the named plaintiffs, there was a cap on defendants' overall liability. *Id.* If that cap was exceeded, then any award reductions would first fall

---

the *In re: Comcast Corp Set-Top Cable Television Box Antitrust Ltiig,* matter in Pennsylvania (*see, e.g.,* Orr Objection at ¶ 59 n. 29) is not on point to the present issue. As in *ADT,* Mr. Orr in *Comcast* objected to a class action settlement on the ground that it did "not properly take into consideration the needs of handicapped Class Members," and also as in *ADT*, the Court overruled Mr. Orr's objection. *See* 333 F.R.D. 364, 381 (E.D. Pa. 2019).

*exclusively* on Category C claimants until their awards were wholly eliminated, before Category A and B claimants suffered any reduction of *their* awards.  *Id.*

Unsurprisingly, Category C class members objected and claimed that the named plaintiffs had not adequately represented them.  *Id.* at 249-50.  The Court *disagreed* with the objectors that the smaller size of the Category C per-claim awards in any way demonstrated inadequacy:

> That Category C claims recover less than Category A and B claims tells us little about adequacy of representation, however, because the Category C claims individually are indisputably worth less… It was not only appropriate but also necessary for Category C claims to recover less than Category A and B claims. We therefore disagree with objectors to the extent that they cite Category C's inferior recovery as determinative evidence of inadequate representation.

*Id.* at 253.

However, entirely apart from the size of the negotiated awards, the Second Circuit was concerned that the burden of the reductions negotiated by the Category A and B plaintiffs that would be imposed once the settlement cap was exceeded fell solely on Category C claimants. "Because the [s]ettlement capped recovery and administrative costs at $18 million, named plaintiffs owning claims in all three categories [A, B and C] cannot have had an interest in maximizing recovery for *every* category…. The 'C reduction' places the risk that total claims and fees exceed the $18 million cap exclusively on Category C."  *Id.* at 252-53.  Given this blatant conflict and self-favoritism by the Category A and B plaintiffs, the Second Circuit vacated the district court's certification ruling and ordered the district court to implement sub-classing to give Category C claimants separate representation.  *Id.* at 256-57.  The Court recognized, however, that it was important "to ensure that we are not asking the district court to carry out instructions that are impracticable to implement."  *Id.* at 257.

The principal infirmity that the Second Circuit identified in *Literary Works* simply does not exist here. There is no payment cap. There is no circumstance under which the benefits awarded to valid claimants who did not suffer a shattering incident will be reduced in order to preserve the recoveries of Plaintiffs and others who did experience shattering. In sum, there is no indicia, as there was in *Literary Works,* that the named Plaintiffs did not forthrightly discharge their duty to represent the *entire* Class. Indeed, they testified at deposition that they understood the scope of their responsibilities. *See* [ECF No. 369] at 18. Accordingly, there is no conflict that needs to be remedied by sub-classing and separate representation.

Moreover, subclassing would almost certainly be "impracticable to implement" here. No Class Member has objected to the adequacy of the named Plaintiffs' representation. Nor has any Class Member or attorney sought to represent a "non-shattering" subclass. No Class Member objected to the substance of the settlement, and only seven have opted-out. *See* [ECF No. 376] at 10. It is easy to understand why. The microwaves at issue are 13 to 25 years old. *See* [ECF No. 369] at 4, 12, 27. Defendants have vigorously argued that such aged appliances are well beyond any useful life a consumer could expect. Should this litigation proceed to summary judgment or trial, the factfinder in this case could easily agree. If a Class Member's unit has not shattered yet, that Class Member could face substantial difficulty proving they suffered any damages whatsoever in connection with an unmanifested latent defect in a microwave they have had full use of for decades. Absent the Settlement, they could easily get nothing.[8]

---

[8] Indeed, the fact that this case involves 20-year-old microwaves puts this case in stark contrast to *Literary Works.* Works of literature do not inherently become obsolete with time, and so the intellectual property rights at issue in *Literary Works* had ongoing potential value even for Category C claimants. The *Literary Works* court was concerned, however, that in the absence of separate subclass representation "[w]e know that Category C claims are worth less than [Category A and B] claims, but not by how much." 654 F.3d at 253. Here, Defendants have a

9

## III.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that Mr. Orr's objection be overruled and that the Court grant in full Plaintiffs' Motion for Certification of the Settlement Class and Final Approval of Class Action Settlement [ECF No. 368], as well as Plaintiffs' Motion for Award of Attorneys' Fees and Expenses and for Lead Plaintiff Service Awards [ECF No. 370].  In furtherance of those Motions, Plaintiffs respectfully submit as Exhibit B hereto a [Proposed] Order and Final Judgment for the Court's consideration.[9]

Dated:  June 29, 2020

Respectfully submitted,

PLAINTFFS

By: /s/ Seth R. Klein
Robert A. Izard (ct01601)
Seth R. Klein (ct18121)
**IZARD KINDALL & RAABE LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290
rizard@izardnobel.com
sklein@izardnobel.com

Hassan A. Zavareei
Anna C. Haac
**TYCKO & ZAVAREEI, LLP**
1828 L Street, N.W., Suite 1000
Washington, D.C.  20036
(202) 973-0900
(202) 973-0950 *facsimile*

---

strong argument that the value of a claim for an unmanifested latent defect in an appliance that has been used without issue for twenty years is inherently extremely low, and Plaintiffs respectfully submit that separate representation of a subclass of individuals whose units did not shatter would not moot this fundamental fact.

[9] A copy of the [Proposed] Order is available in Word format upon request from the Court.

                    hzavareei@tzlegal.com
                    ahaac@tzlegal.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

      I, Seth R. Klein, hereby certify that on this 29th day of June, 2020, the foregoing memorandum and its accompanying exhibits were filed electronically. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access these documents though the court's CM/ECF system.

      In addition, I certify that on this date I caused to be sent to Mr. Orr paper copies of the foregoing memorandum and exhibits by Federal Express, and PDF copies of the memorandum and exhibits by electronic mail, as follows:

      Edward W. Orr
      122 Ridge Road
      Terryville, CT 06786
      203-658-4977
      eanddorr2@gmail.com

      /s/ Seth R. Klein
      Seth R. Klein